LEARNING RIGHTS LAW CENTER
JANEEN STEEL (SBN 211401)
Janeen@learningrights.org
205 S. Broadway, Suite 808
Los Angeles, California 90012
Phone: (213) 489-4035
Fax:    (213) 489-4033

LAW OFFICE OF SHAWNA L. PARKS
SHAWNA L. PARKS (SBN 208301)
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, CA 90027
Phone/Fax: (323) 389-9239
sparks@parks-law-office.com

SEABORN LEGAL
STUART SEABORN (SBN 198590)
seabornlegal@outlook.com
2532 Santa Clara Ave., Suite 111
Alameda CA 94501
Telephone: (510) 473-6963
Facsimile: (510) 373-2583

Attorneys for Plaintiff J.R., by and through
her guardian ad litem Janelle McCammack

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R., a minor, by and through her guardian ad litem, Janelle McCammack,<br><br>                  Plaintiff,<br><br>      v.<br><br>OXNARD SCHOOL DISTRICT; CESAR MORALES, Superintendent of Oxnard School District, in his official capacity; ERNEST MORRISON, President of Board of Trustees, in his official capacity; DEBRA CORDES, Clerk of Board of Trustees, in her official capacity; DENIS O'LEARY, Trustee of Board of Trustees, in his official capacity; VERONICA ROBLES-SOLIS, Trustee of Board of Trustees, in her official capacity; MONICA MADRIGAL LOPEZ, Trustee of Board of Trustees, in her official capacity; and DOES 1 TO 10, inclusive.<br><br>               Defendants, | Case No.: 2:17-cv-04304<br><br>**Complaint for Violations of the Individuals with Disabilities Education Act, 20 U.S.C. §1400, *et seq.*; Americans With Disabilities Act, 42 U.S.C. § 12101, *et. seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et. seq.*; Government Code §11135; The Unruh Civil Rights Act, Cal. Civ. Code § 51, *et. seq.*; California Education Code § 56000**<br><br>**Demand for Jury Trial** |

## **JURISDICTION AND VENUE**

1.      The first three claims alleged herein arise under the Individuals with Disabilities Education Act, (20 U.S.C. §§1400 *et seq.*) ("IDEA"); Americans with Disabilities Act (42 U.S.C. §§ 12131 *et seq.*) ("ADA"), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 *et seq.*) ("Section 504"), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.  Through the same actions and omissions that form the basis of Plaintiff's federal claims, Defendants have also violated Plaintiff's rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.      Jurisdiction and venue are proper under 20 U.S.C. § 1391(b) because the Oxnard School District is located within Ventura County, the Defendants are located in Ventura County and all the acts and/or omissions giving rise to the claims in this action occurred in Ventura County, which is located within the geographical boundaries of the judicial district for the United States District Court for the Central District of California.

## **INTRODUCTION**

3.      Federal and state laws require that every California school district provide students with disabilities a non-discriminatory and free appropriate public education ("FAPE"). These laws place specific obligations on Defendants to timely locate, identify and evaluate schoolchildren who may have disabilities that impact their education and/or that require special education services. *This includes children in early elementary school.* The District must also respond appropriately to any referrals for evaluation. Further, it must evaluate those children suspected to have qualifying disabilities to determine their eligibility for special education and related aids and services. Finally, it must provide children who have qualifying disabilities the necessary special education and related aids, services and accommodations so that they can make appropriate progress in the general education curriculum.

4.      Oxnard School District systemically fails to meet these requirements. This is a result of the District's policy and practice of *not* referring students for special

education assessments – despite clear indications of disability-related academic struggles, information about actual disability diagnoses, and even requests for assessments from parents. Indeed, the District's standard policy when confronted with failing students who exhibit signs of possible disability, or otherwise indicate a need for assessment, is *not* to refer such students for special education assessments. Instead, District staff either do nothing, or rely on an alternate but illegal system the District has developed of using informal Student Success Teams ("SSTs") to discuss a student's lack of progress. These SST meetings, which exist under no education law, are provided *instead of* mandatory referrals for assessments, and result in little or no special education services or empty referrals that put the onus on parents to secure and pay for services for their children.

5.     In essence, while students, such as J.R., fail year after year, District staff stand idly by, or at most convene an SST meeting, through which little or no real services are provided. This "wait and see" approach for its students with disabilities is both illegal and disastrous for students.

6.     Indeed, the District allowed J.R. to fail for *years* without assessing her for much needed special education services and accommodations. As early as second grade, during the 2011-2012 school year, J.R. already had a track record of demonstrable difficulties performing academically, difficulty understanding new concepts and an exceptionally low reading level.

7.     Despite her ongoing and well documented struggles, the District failed to evaluate J.R. for special education and related services until after she filed an administrative complaint with the Office of Administrative hearings in September of 2016. That evaluation finally showed what had been evident in school for years, that J.R. had significant disabilities that severely impacted her ability to access educational material, and that J.R. was functioning academically years behind where she should have been – as if she had received no instruction at all for the last four to five years.

8.     J.R. is one of a number of students from working class, primarily Spanish-speaking families in Oxnard who have been denied their rights to required programs, supports and services under the IDEA, the ADA, Section 504 and related state laws. Collectively, these cases are representative of a widespread and systemic failure by the District to ensure that it identifies students in possible need of services and accommodations, timely evaluates for such services, provides related procedural safeguards, and ultimately provides needed services and accommodations so that these students can access their education in a meaningful way.

9.     J.R. seeks to remedy the District's broken system and its systemic failure to identify, evaluate and provide services and accommodations for students with disabilities in the District. She has exhausted her administrative remedies prior to bringing this suit. However, the administrative system cannot afford her complete relief given the nature of the systemic problems in the District, and its illegal policies and practices.

## **PARTIES**

10.     Plaintiff J.R. ("J.R." or "Plaintiff") is currently thirteen years old, and about to enter the eighth grade. She resides with her family in Oxnard, California, which is located within Ventura County. J.R. currently attends a special day class at Haydoc Academy of Arts and Sciences in Oxnard School District. J.R. was and is a student who requires special education services under the IDEA and California Education Code, and a qualified individual with a disability within the meaning of Section 504, the ADA, Government Code Section 11135 and the Unruh Civil Rights Act, who required accommodations, modifications and services in order to meaningfully access her education.

11.     The Oxnard School District (sometimes referred to as the "District") is a public school district organized and existing under the laws of the State of California, located within Ventura County.  It provides services to students from pre-school through the eighth grade. At all times relevant herein, the District was the local education agency

responsible for providing J.R. with special education services, and with full and equal access to its public education programs and activities in compliance with the requirements of state and federal law. The District receives both state and federal financial assistance.

12.  The District has a population of nearly 17,000 students, at twenty-one school sites. More than eighty percent of its student population is characterized as "socially disadvantaged," and more than half are classified as English Language Learners. Its students are more than ninety percent Hispanic.

13.  Cesar Morales is the Superintendent of Oxnard School District and is sued herein in his official capacity. Mr. Morales is responsible for establishing the policies and procedures within the District, and for oversight of the District. Mr. Morales is sued in his official capacity.

14.  Ernest Morrison, Debra Cordes, Denis O'Leary, Veronica Robles-Solis, Monica Madrigal Lopez are members of the Board of Trustees for the Oxnard School District. The Board is responsible for establishing policies and procedures within the District, and for oversight of the District and the Superintendent. The Board members are sued in their official capacities.

15.  Plaintiff is ignorant of the true names and capacities of the defendants named herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names.  Plaintiff will seek leave of Court to amend this Complaint to allege the true names and capacities of said defendants when they have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that DOES 1 through 10, inclusive, have or claim to have an interest in the controversy at issue in this Complaint and/or need to be joined to this action to give effect to the relief sought herein.

## FACTS APPLICABLE TO ALL CLAIMS

16.  J.R. has a severe language disorder that limits both her expressive and receptive language, as well as Attention Deficit Hyperactivity Disorder ("ADHD"). Her parents are both farmworkers, who work in the Strawberry fields of Oxnard. He family,

which includes two other siblings, is extremely low income. Neither of her parents completed an elementary school education.

17.     J.R. is a somewhat shy, but pleasant little girl, and most teachers agree that she has tried her best in school. However, J.R.'s academic difficulties manifested early, and were continuously ignored by the District. As a result, by the time she was in seventh grade J.R. was functioning academically like a student in the first or second grade.

18.     By the end of kindergarten, J.R. received grades of "below basic" (the lowest possible grade) in most of language arts and math. Her kindergarten teacher specifically noted that she had difficulty understanding new concepts. By first grade, she continued to be below basic in nearly all of language arts and math. Per the psychoeducational assessment later conducted by the District, after J.R. filed a complaint, she "needed a lot of support in reading," as early as the first grade.

19.     J.R. continued to struggle in the second grade as shown by low-test scores and consistently low grades. J.R.'s scores on the State's Standardized Test and Reporting (STAR) test were below standard in all areas, and she struggled in all areas of learning in the classroom, again receiving below basic grades in math and writing.

20.     According to J.R.'s third grade report card, she was below basic math and most of language arts. The report card also noted that J.R. was making "slow progress in reading," that she made careless errors, and that she had difficulty understanding new concepts.

21.     Again, J.R. struggled during fourth grade. According to J.R.'s fourth grade report card, she again had low test scores and needed improvement in nearly all academic areas. Again, she was below basic in math and most of language arts. Her report card noted that she was "easily distracted."

22.     After five years with the District, J.R. continued to fail in many areas. As shown by her September 2014 California English Language Development Test

("CELDT") scores, J.R. was functioning at the "beginning" level in reading, having actually regressed from her earlier testing in that category.

23.    J.R.'s grades made it even more apparent that she needed supports. By the end of fifth grade she received 1's (minimal mastery, the lowest grade on a scale of 1-4) in writing standards, language conventions, math concepts, operations and algebraic thinking, numbers and operations in base ten, and geometric measurement. Again, her report card noted that she had difficulty understanding new concepts, and had low test scores.

24.    By the end of J.R.'s fifth grade year, her teacher was concerned about J.R.'s performance. However, rather than evaluate J.R. for special education as legally required, the District held an informal, SST meeting on May 11, 2015 – a standard practice in the District when a student with possible disabilities is struggling in school.

25.    At this meeting, the District documented numerous red flags that should have prompted an assessment for special education services: 1) J.R. "has peer issues;" 2) Her reading level was at grade level 1.2 (despite being at the end of fifth grade); 3) "Word meaning inhibits her ability to complete comprehension tasks"; and 4) J.R. "[D]oes not seem to understand pragmatics and social skills."

26.    Despite these findings, the District did not conduct an evaluation to evaluate whether a J.R. had a qualifying disability. Rather, the District identified some vague, and undocumented support services that it purportedly provided to J.R.

27.    However, there is no record that the District provided J.R. any of the services, screenings, or supports that it documented in the SST. Rather than provide legally required evaluations and services, the District simply stood by and watched J.R. struggle with her social skills, academics and communication.

28.    In sixth grade, J.R. again scored low on her October 2015 CELDT. Her scores showed that she again did not make progress in overall performance, and actually regressed in speaking, reading and listening. Indeed, her scores in reading and speaking were actually *lower* than when she first tested in 2012-2013.

29.    In February of 2016, J.R.'s pediatrician diagnosed her with Attention Deficit Hyperactivity Disorder ("ADHD").

30.    By the end of her sixth grade year, J.R.'s records indicate that she "struggled in all academic subjects." She received a "D" in Language Arts and an "F" in math and science. At the end of sixth grade, her STAR test results showed that she had a grade equivalent of 2.8 in reading, and 2.2. in math – *nearly four years behind where she should have been.*

31.    Again, the District did not assess J.R., nor did it offer any services to her to address her disability-related educational needs.

32.    After retaining counsel, on September 22, 2016, J.R. filed a "due process complaint" under the Individuals with Disabilities Education Act with the Office of Administrative Hearings challenging the District's failure to assess and its failure to provide a FAPE for J.R.

33.    At no time prior to J.R.'s filing of her complaint did the District ever offer to assess her for special education or related services, provide her any such services or accommodations under federal nondiscrimination statutes, or provide her family with any information about their rights under IDEA or nondiscrimination statutes to evaluations, services or accommodations.

34.    After that filing, the District finally agreed to assess J.R. for purposes of determining special education eligibility. What those assessments found was striking:

- J.R. had severe deficits in receptive and expressive language, auditory processing, and auditory comprehension. These deficits impact every aspect of her learning and participation in the educational environment, including her ability to follow and comprehend lessons and directions; understand procedural information; express herself orally; take notes; understand written and oral material; and learn new vocabulary. For example, on tests of oral language, J.R. – who was then twelve years old – was performing between a pre-Kindergarten and second grade level.

- <u>J.R. was light years behind her peers academically</u>—testing at the second percentile in reading as a seventh grader, meaning she is below 98% of her peers, and testing so low in math that she did not score a percentile, meaning she was below 99.9% of her peers.

35.     The evaluation concluded that J.R. should be eligible for special education under the category of a severe speech or language disorder in the areas of receptive and expressive language. It also ruled out social and linguistic factors as the cause of J.R.'s academic delay, i.e. her academic collapse was due to her disabilities and not the result of her background or the fact that she was an English Language Learner.

36.     On December 13, 2016, the District held an Individualized Education Plan ("IEP") meeting, and found J.R. eligible for special education services as a student with a speech or language impairment.

37.     Though she is now eligible for special education services, J.R. languished for years without receiving any appropriate services to address her disability-related needs due to the District's unlawful policy of not referring students for special education assessments when they exhibit signs of possible disabilities.

38.     On February 9, 2016, the District entered into a stipulated decision, admitting to liability under IDEA for the two years preceding the date of J.R.'s complaint – namely that it had failed to timely identify and evaluate J.R. for special education services, and had consequently failed to provide a free appropriate public education (FAPE) to address J.R.'s needs. It also agreed to provide certain compensatory services to J.R. to address the admitted liability. The Office of Administrative Hearings issued a Decision by Settlement on March 13, 2017 adopting the findings and relief submitted by the parties. This Decision is attached hereto as Exhibit A, and finds that student was prevailing party on all claims on all issues decided.

39.     Although J.R. prevailed in this Decision, she cannot be afforded complete relief, as she continues to be educated in a District that systemically violates the law by failing to identify students with disabilities, under-identifying disabilities even when it

does assess students, failing to adhere to procedural protections, and otherwise violating the nondiscrimination mandates designed to ensure meaningful access to educational programs. The fundamental conduct of the District has not changed.

40.     She is also entitled to attorneys' fees and costs as the prevailing party in the underlying administrative proceeding, and requests those fees through this action.

## FIRST CAUSE OF ACTION

### Individuals With Disabilities Education Act

### 20 U.S.C. §14000, *et seq.*

41.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

42.     Under IDEA, as recipients of federal education funds, the Defendants have the duty to provide a Free Appropriate Public education (FAPE) to all students with disabilities. 20 U.S.C.§§ 1412(a)(l),(b), 1413(a).

43.     A FAPE consists of special education and related services that are consistent with curriculum standards set by the state of California and conform to the student's IEP. 20 U.S.C. § 1401(9). Special education is "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability." 20 U.S.C.§ 1401(29).

44.     IDEA's primary mandate is the guarantee that "all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

45.     To carry out this broad mandate, the District must have in effect policies, procedures and programs to ensure that all children who are in need of special education and related aids and services are identified, located, evaluated and provided a specially-designed Individualized Education Program ("IEP"). 20 U.S.C. §§ 1412(a)(1), (a)(3)-(7), (a)(16), 1413(a)(1), 1414(a)-(e); 34 C.F.R. §§ 300.111, .301, .304-.311; Cal. Educ. Code § 56337; Cal. Code Regs. tit. 5 §§ 3030(b)(10)(A)-(C) (2017).

46.     More specifically, Districts must ensure that "children with disabilities residing in the State and children with disabilities attending private schools . . . regardless of the severity of their disabilities, and who are in need of special education and related aids and services are identified, located, and evaluated . . . ." 20 U.S.C. § 1412(a)(3)(A). This is commonly known as the "Child Find Duty."

47.     The Child Find Duty requires school districts to timely identify, locate, and evaluate all children with suspected disabilities. Id. § 1412(a)(3); 34 C.F.R. §§ 300.101(c), .111. School districts, thus, must fulfill their Child Find obligation; otherwise, a child who has a disability or suspected disability under IDEA will not be identified and accordingly, will not receive appropriate special education.

48.     Thus, the Child Find Duty requires that a school district systematically seek out and find those students in need of special education and related services and evaluate those students in a timely manner, such that they can receive needed services and accommodations.

49.     Once a child is identified, school districts must promptly seek parental consent to evaluate him or her for special education, under mandated timeframes, including when the child has not made adequate progress after an appropriate period of time when provided with appropriate instruction. 20 U.S.C. §§ 1414(b)(6); 34 C.F.R. §§ 300.301, 300.309(c). School districts must evaluate a child who is referred for an evaluation by a parent unless they provide adequate written notice giving their reasons for refusal. 34 C.F.R. § 300.503; Cal. Educ. Code § 56500.4. IDEA requires school districts to conduct comprehensive "initial evaluations" to "determine whether a child is a child with a disability" and "determine the educational needs of such child." 20 U.S.C. §§ 1414(a)-(c); see also 34 C.F.R. § 300.301; Cal. Educ. Code § 56320.

50.     The evaluation must encompass all suspected areas of the child's disability. 20 U.S.C. § 1414(a)(3)(B). Evaluation results are then discussed with parents in an IEP team meeting to determine if the child is eligible for special education. *Id*. § 1414(a)(4).

51.     The results of these evaluations are used to determine the child's eligibility for special education and related aids and services as well as to make decisions about an appropriate educational program for the child.

52.     As a corollary to this, school districts must give parents prior written notice within a reasonable time before they propose or refuse to initiate or change the identification, evaluation, or educational placement or the provision of FAPE to the child. 34 C.F.R. § 300.503; Cal. Educ. Code § 56500.4. Thus, school districts must obtain informed written parental consent in order to support an initial evaluation of a student and an initial provision of special education services. Parental consent is further required to provide special education services and re-evaluations. Parental consent means that the parent is "fully informed of all information relevant to the activity for which consent is sought, in his or her native language, or through another mode of communication," and that the parent "understands and agrees" in writing to the carrying out of the activity for which his or her consent is sought. 34 C.F.R. § 300.9.

53.     By failing to identify, evaluate, recommend, and then provide a FAPE, Defendants have violated the protections of IDEA.

54.     As a result of the foregoing, J.R. suffered and continues to suffer injury, including, but not limited to, denial of meaningful access to the benefits of a public education.

55.     Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Plaintiff seeks injunctive relief and attorneys' fees as a result.

56.     Plaintiff seeks attorneys' fees both for this federal case, as well as the underlying administrative action, OAH Case No. 2016100053.

/  /  /

/  /  /

/  /  /

/  /  /

11
Complaint

## SECOND CAUSE OF ACTION

### Americans With Disabilities Act

### 42 U.S.C. §12131, *et seq.*

57.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

58.    Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. § 12101(a) (2).

59.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b) (1)-(2).

60.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

61.    Pursuant to Title II public entities are required to provide meaningful access to their programs, services and activities. Among the requirements to provide meaningful access, public entities must modify their policies and procedures when necessary to accommodate disability related needs, also known as "reasonable accommodation." 28 C.F.R. §35.130(b)(7). Public entities cannot provide programs, services or benefits to a person with a disability that are not equal to those provided to others or deny a person with a disability the opportunity to participate in programs, services or activities. 28 C.F.R. §35.130(b)(1)(iii). Moreover, public entities are required to administer their programs, services and activities in the most integrated setting appropriate. *Id.* at §35.130(d).

62.   At all times relevant to this action, the District is a "public entity" within the meaning of Title II of the ADA and provides a program, service or activity to the general public.

63.   At all times relevant, including at the time of each alleged violation of the ADA, J.R. was a qualified individual with a disability within the meaning of the ADA. J.R.'s disability substantially limits a variety of major life activities, including but not limited to, learning, reading, writing, and concentrating.

64.   At all times relevant, including at the time of each alleged violation of the ADA, the District provided services, programs and activities in its public schools, and was obligated to provide J.R. with reasonable accommodations that J.R. needed to enjoy meaningful access to the benefits of those services, programs and activities, and otherwise not exclude him from its educational program.

65.   Defendants acted in violation of Title II of the Americans with Disabilities Act through failing to provide a full and meaningful educational program to J.R.

66.   As a result of the foregoing, J.R. suffered and continues to suffer injury, including, but not limited to, denial of meaningful access to the benefits of Defendants' educational program.

67.   Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Plaintiff seeks injunctive relief and attorneys' fees as a result.

### THIRD CAUSE OF ACTION

### Section 504 of the Rehabilitation Act of 1973

### 29 U.S.C. § 794(a)

68.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

69.   Under Section 504, a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from

Complaint

participation in, or denied the benefits of, any program or activity receiving Federal financial assistance.  29 U.S.C. § 794(a).

70.     Under Section 504, the phrase "program or activity" includes a local educational agency.  29 U.S.C. § 794(b) (2) (B).

71.     Under Section 504 public entities are required to provide meaningful access to their programs, services and activities. Specifically, the aids, benefits and services provided must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement." 34 C.F.R. §104.4(b)(2). Further, public entities may not "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," *Id.* at §104.4(b)(1)(iii).

72.     At all times relevant, including at the time of each alleged violation of Section 504, Defendants received federal financial assistance as a public school.

73.     At all times relevant, including at the time of each alleged violation of Section 504, J.R. was a qualified individual with a disability within the meaning of Section 504 or was regarded as having a disability. J.R.'s disability substantially limits a variety of major life activities, including but not limited to, learning, reading, writing, and concentrating.

74.     Defendants acted in violation of Section 504 by failing to provide J.R. with meaningful access to their educational program.

75.     As a result of the foregoing, J.R. suffered and continues to suffer injury, including, but not limited to, denial of meaningful access to the benefits of a public education program.

76.     Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Plaintiff seeks injunctive relief and attorneys' fees as a result.

/ / /

## FOURTH CAUSE OF ACTION

### Government Code Section 11135

77.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

78.    California Government Code section 11135 sets forth a nondiscrimination policy for state programs.  It provides that in pertinent part:

> [n]o person in the State of California shall, on the basis of race, national
> origin, ethnic group identification, religion, age, sex, sexual orientation,
> color, genetic information or disability, be unlawfully denied full and
> equal access to the benefits of, or be unlawfully subjected to
> discrimination under, any program or activity that is conducted, operated,
> or administered by the state or by any state agency, is funded directly by
> the state, or receives any financial assistance from the state.

Cal. Gov't Code § 11135(a).

79.    It is a discriminatory practice for a recipient of state financial assistance, in carrying out any program or activity, on the basis of disability, (a) to deny a person the opportunity to participate in, or benefit from an aid, benefit or service; (b) to afford a person the opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded others; (c) to provide a person with an aid, benefit or service that is not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others . . . (g) to otherwise limit a person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving any aid, benefit or service resulting from the program or activity." 22 Cal. Code Regs. § 98101 (a)-(c), (g).

80.    It is also discrimination for a recipient of state financial assistance to utilize criteria or methods of administration that: "(1) have the purpose or effect of subjecting a person to discrimination on the basis of disability; [or] (2) have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the

recipient's program with respect to a person with a disability. . ." 22 Cal. Code Regs. § 98101(i).

81.     Additionally, the failure of a recipient of state financial assistance to comply with Title II of the Americans with Disabilities Act (at 42 U.S.C. § 12132) violates Section 11135. Cal. Gov't Code § 11135(b).

82.     Each Defendant was, at all times relevant to this action, and is currently operating or administering a program or activity that receives state financial assistance, within the meaning of Section 11135.

83.     Defendants have violated the rights of Plaintiffs secured by Cal. Gov't Code § 11135 *et seq.*

84.     Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Plaintiffs are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

85.     Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

## FIFTH CAUSE OF ACTION

### Unruh Civil Rights Act

86.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

87.     California's Unruh Civil Rights Act prohibits discrimination against individuals with disabilities and also prohibits discrimination based on a person's disability or perceived disability.

88.     Section 51 of the California Civil Code provides, in relevant part:  "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

89.     Under Unruh, "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section."  Civil Code §51(f).

90.     Unruh holds liable anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to" Section 51 of the California Civil Code for "each and every offense."  Cal. Civ. Code § 52.

91.     The District is a business establishment for the purposes of Unruh.

92.     Defendants violated Unruh by violating J.R.'s rights under the Americans with Disabilities Act and other Federal and State laws designed to ensure that minors have free access to public schools and all of their benefits and privileges.

93.     Defendants unlawfully denied J.R. "the full and equal accommodations, advantages, facilities, privileges, or services" of the District. Defendants thus violated the California Unruh Act with respect to J.R.

94.     As a result of the foregoing, J.R. suffered and continues to suffer injury.

95.     Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Plaintiffs are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

96.     Plaintiff seeks injunctive relief and attorneys' fees as a result.

## SIXTH CAUSE OF ACTION

### Education Code Section 56000 *et seq.*

97.     California state law implementing IDEA also requires educational instruction and services to a student "with exceptional needs" if "the degree of the [student's] impairment . . . requires special education . . . ." Cal. Code Regs. tit. 5 § 3030(a) (2017); *see* Cal. Educ. Code §§ 56000 *et seq.*

98.     Cal. Educ. Code § 56300 states, "A local educational agency shall actively and systematically seek out all individuals with exceptional needs, from birth to 21 years of age, inclusive, including children not enrolled in public school programs, who reside

in a school district or are under the jurisdiction of a special education local plan area or a county office of education." *See also* Ed. Code, §§ 56501, 56502, 56505; Cal. Code Regs., tit. 5, § 3082.

99.   J.R. is a student with exceptional needs pursuant to Cal. Educ. Code §§ 56000 *et seq.* Defendants have violated J.R.'s rights under Cal. Educ. Code §§ 56000 *et seq.* by failing to actively and systemically seek out all students with exceptional needs.

100.  As a result of the foregoing, J.R. suffered and continues to suffer injury.

101.   Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Plaintiff is suffering irreparable harm and therefore speedy and immediate relief is appropriate.

102.  Plaintiff seeks injunctive relief and attorneys' fees as a result.

## **PRAYER FOR RELIEF**

Plaintiff prays this Court enter judgment as follows:

1. A finding that Defendants' conduct violated the Individuals with Disabilities Education Act, 20 U.S.C. §1400, *et seq.*; Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 *et seq.* ("Section 504"); Government Code Section 11135; the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*, and California Education Code § 5600 *et seq.*

2. An injunction ordering Defendants to comply with the requirements of the IDEA, ADA, Section 504, Government Code 11135; Unruh Civil Rights Act; and California Education Code.

/ / /

/ / /

/ / /

/ / /

/ / /

3. Plaintiff's reasonable attorneys' fees and costs in this action and the underlying administrative proceeding OAH Case No. 2016100053, including, but not limited to under, 20 U.S.C. §1415(i)(3), 42 U.S.C. §12205, 29 U.S.C. §794(b), Cal. Civil Code §52 and Cal. Code Civ. Proc. 1021.5.

4. Such other and further relief as the Court deems just and proper.

Dated:   June 9, 2017                    LEARNING RIGHTS LAW CENTER

                                         LAW OFFICE OF SHAWNA L. PARKS

                                         SEABORN LEGAL


By:  

SHAWNA L. PARKS
*Attorneys for Plaintiff J.R.*

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated:   June 9, 2017                              LEARNING RIGHTS LAW CENTER

                                                   LAW OFFICE OF SHAWNA L. PARKS

                                                   SEABORN LEGAL

By:  _____
     SHAWNA L. PARKS
     *Attorneys for Plaintiff J.R.*

Exhibit A

BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
STATE OF CALIFORNIA

In the Matter of:

PARENT ON BEHALF OF STUDENT,

v.

OXNARD SCHOOL DISTRICT.

OAH Case No. 2016100053

## DECISION BY SETTLEMENT
### (Cal. Code Regs., tit. 5, § 3087)

Clifford H. Woosley, Administrative Law Judge, Office of Administrative Hearings, State of California, enters this Decision by Settlement pursuant to section 3087 of title 5 of the California Code of Regulations.

Student, by and through her Parent, filed a Due Process Hearing Request on September 22, 2016, with OAH, naming Oxnard School District. On November 4, 2016, OAH granted a continuance of the hearing to January 31, 2017.

ALJ Woosley started the hearing on January 31, 2017. Attorneys Janeen Steel and Shawna L. Parks appeared on behalf of Student. Mother attended the hearing. Attorneys Benifacio Bonny Garcia and Lawrence S. Joe appeared on behalf of District. Director of Special Education Services, Amelia Sugden, and Manager of Special Education, Nadia Villapudua, attended on behalf of District.

After hearing commenced, but before the entry of evidence, the parties announced that they had reached a stipulation to amended issues in favor of Student and that the only matters remaining for hearing were the remedies. The parties were granted an additional day to reach agreement as to remedies and, at parties' request, the matter was further continued to February 2, 2017.

On February 1, 2017, the parties submitted a proposed Stipulated Judgment, signed by the parties' attorneys, which OAH considered a request for a decision by settlement. ALJ Woosley continued the hearing to a telephonic status conference on February 3, 2017, at which time ALJ Woosley thoroughly discussed the parties' request for a Decision by

Settlement.[1]

The matter was continued to Friday, January 10, 2017, at which time the parties filed a fully executed, proposed Stipulated Decision in lieu of a decision on the merits. The matter was then submitted for decision by settlement, pursuant to the terms of the parties' agreement.

## STIPULATED AMENDED ISSUES IN FAVOR OF STUDENT

1.    Since September 21, 2014, District denied Student a free appropriate public education by not meeting its child find obligations, not evaluating Student in all areas of suspected disability, and not finding Student eligible for special education placement and related services.

2.    Since September 21, 2014, District denied Student a FAPE by failing to offer Student an individualized education program that met Student's unique needs.

3.    Since September 21, 2014, District denied Student a FAPE by failing to offer an individualized education program that was reasonably calculated to offer educational benefit to Student.

4.    Student is eligible for special education and related services as a student with a speech or language impairment. District should have found Student eligible for special education and related services as a student with a speech or language impairment as of September 21, 2014.

## FACTUAL FINDINGS

1.    The parties stipulate that Student is 13 years old and attends the seventh grade at Kamala Elementary School within the Oxnard School District.

2.    The parties stipulate that Student is eligible for special education and related services under the category of speech or language impairment. The parties stipulate that District is the local education agency responsible for Student's special education services. The parties stipulate that District should have found Student eligible for special education as of September 21, 2014

3.    The parties entered into a Stipulated Decision, which they and their attorneys fully executed and which is part of the official record and incorporated herein. The parties have stipulated to four issues in favor of Student. The parties have further agreed to related and compensatory services.

---

[1]  The recording of the status conference is part of this matter's official record.

4.      The stipulated issues in favor of Student have been set forth above.  The stipulated related and compensatory education services have been incorporated in the Order below.

5.      The Stipulated Decision does not contain any agreed-upon terms that are contrary to the law.

## LEGAL CONCLUSIONS

1.      The Individuals with Disabilities in Education Act and related state laws strongly encourage the settlement of special education disputes.  (See, e.g., 20 U.S.C. § 1415(f)(1)(B); Ed. Code, § 56501.5, subd. (a) [requirement of resolution session before due process hearing]; 20 U.S.C. § 1415(e); Ed. Code, § 56500.3 [availability of mediation before due process hearing]; 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(d)(2)(2006); Cal. Code Regs., tit. 5, § 4650, subd. (a)(4); *Wyner v. Manhattan Beach Unified Sch. Dist.* (9th Cir. 2000) 223 F.3d 1026, 1028-1030 [administrative enforcement of settlements of due process disputes].)

2.      Decision by settlement is authorized by California administrative law.  (Gov. Code, § 11415.60; *Rich Vision Centers, Inc. v. Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 115-116 [". . .we see no limitations on the conditions that may be included in a settlement except that such conditions must not violate public policy"].)  Government Code section 11415.60 does not apply to special education due process disputes (Cal. Code Regs., tit. 5, § 3089), but the State Board of Education has adopted a similar regulation. Section 3087 of title 5 of the California Code of Regulations provides:

> Notwithstanding Government Code section 11415.60 of the Administrative Procedure Act, a decision by settlement may be issued on terms the parties determine are appropriate so long as the agreed-upon terms are not contrary to the law.

3.      Based on Factual Finding 3 and Legal Conclusion 2, the parties have settled their dispute on terms they have determined are appropriate.

4.      Based on Factual Finding 5 and Legal Conclusion 2, the Stipulated Decision does not contain any agreed-upon term that is contrary to the law.

## STIPULATED ORDER

The parties stipulate that Oxnard School District shall provide to Student the following related and compensatory education services:

1.      Fund an assessment by Lindamood-Bell Learning Processes in Santa Barbara within one week of this Decision, or as soon thereafter as Lindamood-Bell's Santa Barbara office will schedule an assessment.

2.      Upon receipt of the Lindamood-Bell assessment, fund provision of Lindamood-Bell services that are recommended by Lindamood-Bell for a period of two years.  District will provide any appropriate venue or other supports for Lindamood-Bell to implement and provide its recommended services, including but not limited to any physical requirements, such as a location with the provision of any online services in classroom or on campus.  District will fund any re-evaluations that are suggested or required by Lindamood-Bell.  The Lindamood-Bell services will be provided during the regular school day and will be coordinated with Student's teacher.

3.      Student will be placed in a mild-moderate special day class at Oxnard School District's Haydoc Academy of Arts and Sciences that includes, but is not limited to, the following:

a.      30 minutes per week of individual speech services until the end of Student's eighth grade year;

b.      60 minutes per week of group speech services until the end of Student's eighth grade year;

c.      No fewer than 12 social skills sessions provided for one hour on a weekly basis, with the option of continuing if recommended by the supervising counselor; and

d.      Services by a Language and Academic Development ("LAD") credentialed teacher, as needed, to support the special day class teacher to provide writing instruction.

4.      If Lindamood-Bell recommends continued services during summer, District shall provide these services for the 2017 and 2018 extended school year.  If the Lindamood-Bell program is offered at the Ventura location, then District will provide round trip transportation.  If the Lindamood-Bell program is not offered at the Ventura location, District will provide the Lindamood-Bell services at a location where District offers Extended School Year.  (Extended School Year may not be available at Student's home school.)  If Lindamood-Bell does not suggest a summer program for Student, District will provide standard Extended School Year services in a District program.  For any summer programs, District will provide transportation if the location of service is more than a fifteen-minute walk from Parent's home.

5.      District is a kindergarten through eighth grade school district and Student will be enrolled in District through Summer 2018.  Thereafter, if any Lindamood-Bell services

4

required under by this decision remain, such services will be provided by District in coordination with the High School District and Parent.

      6.     If Parent moves more than a fifteen-minute walk from Haydoc Academy of Arts and Sciences, but remains within District, District will provide Student with transportation.  If Parent moves out of District in the next two years, the District will coordinate providing any remaining Lindamood-Bell services with the Parent and Student's new school district as follows:  (1) during school, if an arrangement can be reached with the new school district, or (2) after school, if no arrangements are able to be made with the new school district within sixty days of Student's enrollment.

      7.     Student withdraws and dismisses all other claims.

PREVAILING PARTY

Education Code section 56507, subdivision (d), requires that this Decision indicate the extent to which each party prevailed on each issue heard and decided in this due process matter.  Here, the parties stipulated that Student is the prevailing party on Issues 1, 2, 3, and 4.

RIGHT TO APPEAL THIS DECISION

This was a final administrative Decision, and all parties are bound by it.  Pursuant to Education Code section 56506, subdivision (k), any party may appeal this Decision to a court of competent jurisdiction within ninety (90) days of receipt.

DATED:  March 13, 2017

DocuSigned by:

_____
3EEE11185C8F48D

CLIFFORD H. WOOSLEY
Administrative Law Judge
Office of Administrative Hearings

5