ALBERT ERKEL (SBN 93793)
aerkel@ghslaw.com
NORMA NAVA FRANKLIN (SBN 266827)
nnava@ghslaw.com
JANET LY (SBN 211401)
jly@ghslaw.com
GARCIA HERNANDEZ SAWHNEY, LLP
801 N. Brand Blvd., Suite 620
Glendale, CA 91203
PHONE (213)-347-0210
FAX (213) 347-0216

Attorneys for Defendants Oxnard School District,
Cesar Morales, Ernest Morrison, Debra Cordes,
Denis O'Leary, Veronica Robles-Solis, and
Monica Madrigal Lopez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R., a minor, by and through her guardian ad litem, Janelle McCammack; M.B., a minor, by and through her guardian ad litem, F.B.; I.G., a minor, by and through his guardian ad litem, M.E., on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OXNARD SCHOOL DISTRICT; CESAR MORALES, Superintendent of Oxnard School District, in his official capacity; ERNEST MORRISON, President of the Board of Trustees, in his official capacity; DEBRA CORDES, Clerk of the Board of Trustees, in her official capacity; DENIS O'LEARY, Trustee of the Board of Trustees, in his official capacity; VERONICA ROBLES-SOLIS, Trustee of the Board of Trustees, in her official capacity; MONICA MADRIGAL LOPEZ, Trustee of the Board of Trustees, in her official capacity; and DOES 1 TO 10, inclusive<br><br>Defendant | Case No.: 2:17-cv-04304-JAK-FFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Supporting Declarations, Evidentiary Objections, and Proposed Order Filed Concurrently]**<br><br>**Date:  January 29, 2018**<br>**Time:  8:30 a.m.**<br>**Court:  10B**<br>          **First Street Courthouse** |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES……………………………………..………………iii

3

I.    INTRODUCTION……………………………………………………………1

4

II.   STATEMENT OF FACTS………………….…………...……………2

5

    A.    Plaintiffs' proposed class definition………..……………….……………2

6

    B.    Student Support Teams are permissible under the IDEA and supplement a

7

         school district's child find process…………………………….…….…...3

8

    C.    The District's policies and procedures for identifying and assessing students

9

         with suspected disabilities comply with federal and state law………………5

10

    D.    Whether a student is or should be referred for special education assessment

11

         depends on a number of factors and involves a fact specific inquiry for each

12

         student………………………………………………………….……6

13

    E.    The District has heavily invested in and prioritized its special education

14

         services to students………………………………………..………7

15

    F.    The representative plaintiffs have been assessed and are currently receiving

16

         services, and six of the seven purported class members have signed

17

         settlement agreements that release the Distract from liability under all claims

18

         at issue at issue in this action…………………………………………..……9

19

III.  LEGAL ARGUMENT……………….……………..…………….......………..9

20

    A.    REPRESENTATIVE PLAINTIFFS LACK STANDING TO SEEK

21

         EQUITABLE RELIEF UNDER THE IDEA ON BEHALF OF

22

         THEMSELVES AND THE CLASS………….……………....…….…..9

23

    B.    PLAINTIFFS MUST PROVE EACH ELEMENT OF RULE 23(a) BY A

24

         PREPONDERANCE OF ADMISSIBLE EVIDENCE…………………..…11

25

    C.    PLAINTIFFS FAIL TO PROVE THAT THE PROPOSED CLASS IS SO

26

         NUMEROUS THAT JOINDER WOULD BE IMPRACTICABLE………12

27

28

i

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

## TABLE OF CONTENTS (Continued)

i.      Plaintiffs' expert conclusion that the District under-identified 200 students for special education services fails to meet the evidentiary standards of Rule 702 and *Daubert* because it is based on an inferential gap between the data studied and the expert's ultimate conclusion……………………………………………………..…..13

ii.     Six of the seven potential class members settled their claims with the District and released the District from all liability under the IDEA, the ADA, and Section 504……………………………………………17

iii.    Not all 17,000 District students have a suspected learning disability such that they would be subject to the District's child find policies and evaluation procedures…………………………………………………18

iv.     Plaintiffs were unable to find putative class members despite Plaintiffs' counsel announcing this active litigation during a radio interview and holding two community meetings to recruit members to Plaintiffs' class………………………………………………………19

D.      THERE IS NO COMMON QUESTION OF LAW OR FACT APPLICABLE TO THE CLASS……………………………….……..20

E.      PLAINTIFFS M.B., I.G., AND J.R. CANNOT ADEQUATELY REPRESENT THE CLASS IN ITS REQUEST FOR RELIEF UNDER THE IDEA………………………………………………………………….23

IV.   CONCLUSION ……………………………………………………..…..24

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3   *A.P. ex rel. Powers v. Woodstock Bd. of Educ.,* 572 F.Supp.2d 221, 226 (D.Conn.2008)..4

4   *Bates v. UPS*, 204 FRD 440, 444 (N.D. Cal. 2001)...........................................................16

5   *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 867 (9th Cir. 2017 .......................12

6   *Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334,

7       346 (N.D. Cal. 2008). ...............................................................................................13, 17

8   *Celano v. Marriott International, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2017) ...................15,16

9   *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008),.............................17

10  *Ciarlante v. Brown & Williamson Tobacco Corp.*, 1995 WL 764579 at *2 (E.D. Pa.

11      1995) ................................................................................................................................17

12  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660, 1670 (1983)...........11,12

13  *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012).......................................3,4

14  *D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013)...........................................22

15  *D.L. v. District of Columbia*, 860 F.3d 713 (2017) .....................................................22,23

16  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993). .................1

17  *Davis v. Federal Election Comm'n,* 554 US 724, 734, 128 S. Ct. 2759, 2769 (2008) .....10

18  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)..........................14, 23

19  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014 ..............13, 14

20  *General Elec. Co. v. Joinder*, 522 US 136, 146, 118 S. Ct. 512, 519 (1997) ...................14

21  *In re Cooper Companies Inc. Sec. Litig.,* 254 F.R.D. 628, 634 (C.D. Cal. 2009).............16

22  *In re Hydrogen Peroxide Antitrust Litig.* (3rd Cir. 2009) 552 F.3d 305, 321 ..................12

23  *J.S. v. Scarsdale Union Free Sch. Dist.,* 826 F.Supp.2d 635, 661 (S.D.N.Y.2011)............4

24  *Jamie S v. Milwaukee Public Schools,* 668 F.3d 481 (7th Cir. 2012) ..............................21

25  *Javine v. San Luis Ambulance Services, Inc.*, 2015 WL 12672090 at * (C.D. Cal. 2015).
        ........................................................................................................................................17

26  *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) ..............................17

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

*Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 521, n. 83 (C.D. Cal. 2012) ........................................................................................................................12

*Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 143 (1999)...14

*Leyva v. Buley*, 125 F.R.D. 512 (E.D. Wa. 1989),......................................................19

*Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 512 (9th Cir.2013 ................................11

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d. 1018, 1022 (9th Cir. 2003) ..........10

*M.G. v. New York City Department of Educ.*, 162 F.Supp.3d 216, 236 (S.D.N.Y. 2016) 22

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Administration*, 860 F.3d 1228, 1233 (2017) ....................................................11

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.* 487 F3d 261, 269 (5th Cir. 2007)..........................................................................................................12

*O'Shea v. Littleton*, 414 US 488, 494, 94 S. Ct. 669, 675 (1974)...................................10

*Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). ..............................11,12,20

*Rawat v. Navistar Intern. Corp.*, 2011 WL 222131 at *6 (N.D. Ill. 2011) ....................17

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S.Ct. 1003, 1019 (1998).12

*Teamsters Local 445 v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) .................12

*United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001). .....................................14

*Updike v. Multnomah County*, 870 F.3d 939 0947-948 (9th Cir. 2017) .........................10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541 (2011 ................12,20

**Statutes**

20 U.S.C. § 1412(a)(3)(A) .........................................................................................3

Federal Rule of Civil Procedure 23(a) ...................................................................1

**Rules**

Fed. R. Civ. P. 23(a)(1)...........................................................................................13

Fed. R. Evid. 702 ....................................................................................................13

Fed.R.Civ.P. 23(b)(2)..............................................................................................12

Federal Rule of Evidence 702.....................................................................................1

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Treatises**

Newberg on Class Actions § 2.7 (5th ed. 2017); ............................................................... 11

**Regulations**

34 C.F.R. § 300.307(a)(2). ................................................................................................... 3

34 C.F.R. § 300.307(a)(3) ................................................................................................... 3

71 Fed. Reg. 46540, 46639 ................................................................................................. 4

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

## I.   INTRODUCTION

Plaintiffs move to certify a class that seeks to challenge the Oxnard School District's[1] ("The District") proper use of Student Support Teams ("SSTs") to evaluate students prior to referring them to special education assessments.  Plaintiffs claim that the District's use of SSTs violates their rights to a free appropriate public education ("FAPE") and fails to comply with the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").  Indeed, the crux of Plaintiffs' class action is a challenge to the District's child find policies and procedures.

Plaintiffs motion to certify a class of plaintiffs to broadly challenge the District's child find policies and procedures is fatally flawed.

First, the representative plaintiffs J.R., M.B., and I.G. (hereinafter, "representative plaintiffs") lack standing to assert IDEA claims for declaratory and injunctive relief on behalf of the class.  Pursuant to orders issued in their underlying administrative actions, J.R., M.B., and I.G. have been "found," have been assessed for special education services, and have received or are currently receiving all services ordered by the administrative tribunal.  They do not possess the requisite "injuries in fact" to assert claims under the IDEA on behalf of the class.

Second, Plaintiffs cannot establish each element of Federal Rule of Civil Procedure 23(a) by a preponderance of admissible evidence.  To establish numerosity, Plaintiffs rely on expert testimony that fails to meet the evidentiary standard of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).  Specifically, Plaintiffs' expert relies on flawed logic and inexplicable assumptions to conclude that the District is under-identifying students who need special

---

[1] For purposes of this Opposition, the "District" refers collectively to all Defendants including the Oxnard School District, Cesar Morales, Ernest Morrison, Debra Cordes, Denis O'Leary, Veronica Robles-Solis, and Monica Madrigal Lopez.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

education services.  Plaintiffs also rely on the declarations of seven purported putative class members.  However, six of the seven purported class members settled their claims with the District and released the District from all liability under the IDEA, ADA, and Section 504.  Finally, Plaintiffs attempt to establish numerosity through anecdotal evidence in the declaration of two District teachers. These declarations are replete with speculative conclusions and inadmissible hearsay.  The declarations also fail to identify the sufficient number of class members to deem joinder impracticable.

Third, Plaintiffs cannot establish a common question of law or fact applicable to the class.  Plaintiffs here challenge the District's "child find" process, which is an inherently individualized process that raises questions of fact and law unique to each student's particular situation.  Plaintiffs' proposed class fails to identify a common injury capable of class-wide resolution.

Finally, because the representative plaintiffs lack standing to seek declaratory and injunctive relief under the IDEA, their claims under this statute are limited to an appeal of the administrative decisions and claims for attorneys' fees.  These claims for relief are fundamentally different to those of the proposed class which seek injunctive and declaratory relief.  Accordingly, the representative plaintiffs cannot adequately represent the class claims under the IDEA.

Plaintiffs' proposed class suffers from justiciability issues and fails to meet the elements of numerosity, commonality, and adequacy of representation.  The Court should deny Plaintiffs' motion.

## II.   STATEMENT OF FACTS

### A. Plaintiffs' proposed class definition.

Plaintiffs filed this class action seeking declaratory and injunctive relief against the District for its alleged failure to provide its students with free appropriate public education ("FAPE") by failing to timely locate, identify and evaluate its students (hereinafter, "child find") who may have a need for special education services.  Second

2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Amended Complaint ("SAC"), ¶ 3-4, 1:13-38, Doc. 36.  Plaintiffs challenge the District's child find process by alleging that the District either ignores their duty to provide special education services to students with disabilities or implements an alternative review of the student through the use of student support teams ("SSTs") *rather than* engaging in child find.  Id.

> Based on these allegations, Plaintiffs seek to certify the following proposed class:  "All students in Oxnard School District who have or may have disabilities and who have been subject to District's policies & procedures regarding identification and evaluation of students for purposes of providing services or accommodations under the IDEA, Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act."

Mot. for Class Certification, 18:4-12, Doc. 39, SAC ¶¶ 115, 11:15, Doc. 36.

The crux of Plaintiffs' class is therefore a challenge to the District's child find policies and procedures.

## B. Student Support Teams are permissible under the IDEA and supplement a school district's child find process.

As part of a criteria to determine if a student has a specific learning disability, the IDEA mandates states to allow the use of a process based on the child's response to scientific or research based intervention. 34 C.F.R. § 300.307(a)(2).  States may also allow the use of alternative research based procedures to determine whether a student has a specific learning disability.  34 C.F.R. § 300.307(a)(3).  In California, school based SSTs provide a critical process to determine whether students who exhibit low academic performance or behavioral issues should be assessed for special education services.

Federal law requires school districts to determine whether a student has a specific learning disability.  To do so, schools must meet "child find" obligations by locating and identifying students suspected of having learning disabilities.  20 U.S.C. § 1412(a)(3)(A).  Child find does not demand that schools conduct a formal evaluation of every struggling student. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012)

3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

(citing *J.S. v. Scarsdale Union Free Sch. Dist.,* 826 F.Supp.2d 635, 661 (S.D.N.Y.2011) ("The IDEA's child find provisions do not require district courts to evaluate as potentially 'disabled' any child who is having academic difficulties.").) "A school's failure to diagnose a disability at the earliest possible moment is not *per se* actionable, in part because some disabilities 'are notoriously difficult to diagnose and even experts disagree about whether [some] should be considered a disability at all.'" *D.K.,* 696 F.3d at 249 (citing *A.P. ex rel. Powers v. Woodstock Bd. of Educ.,* 572 F.Supp.2d 221, 226 (D.Conn.2008).)

SSTs and Coordination Of Services Teams ("COST") provide an important initial review of the student in the pre-referral process.[2]  Barber Decl. ¶ 6.  COST teams are a group of school administrators and teachers that review a student's needs before a larger SST team is convened.  COST teams usually include a combination of a Principal, a counselor, a school psychologist, an outreach coordinator, a resource specialist, a Teacher on Special Assignment ("TOSA"), and/or the student's teacher.  Declaration of Dr. Andres Santamaria ("Santamaria Decl."), ¶ 9; Declaration of Bertha M. Anguiano ("Anguiano Decl."), ¶ 9; Declaration of Aracely Fox ("Fox Decl."), ¶ 9; Declaration of Carmen Serrano ("Serrano Decl."), ¶ 11; Declaration of Marlene Breitenbach ("Breitenbach Decl."), ¶ 9; Declaration of Sally Wennes ("Wennes Decl."), ¶ 8.  An SST

---

[2] Plaintiffs erroneously argue in their motion that SSTs are "illegal."  Mot. for Class Certification 1:10-18.  However, the Department of Education *confirmed* that pre-referral processes *are permissible* under the IDEA.  During the public comments period anticipating new federal regulations in 2006, the Department of Education received a comment that "recommended clarification regarding whether States can develop and implement policies that permit screening of children to determine if evaluations are necessary." *A.P. ex rel. Powers v. Woodstock Bd. of Educ.*, 572 F.Supp. 2d 221, 227, n. 2 (D. Conn 2008) (citing to 71 Fed. Reg. 46540, 46639.)  The Department of Education responded that "[t]here is nothing in the Act that requires a State to, *or prohibits a state from*, developing and implementing policies that permit screening children to determine if evaluations are necessary." *Id.* (emphasis added).  This response from the Department of Education confirms that SSTs are, and always were, permissible under the IDEA.  *Id.*

4

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

may be convened if the COST determines that they need more information to address a concern relating to the student.  Santamaria Decl., ¶ 9; Anguiano Decl., ¶ 8; Fox Decl., ¶ 10; Serrano Decl., ¶ 11; Breitenbach Decl., ¶ 10; Wennes Decl., ¶¶ 9 and 10.

When staff determines that a student needs an assessment, the student goes directly to an SST team in an expedited process to develop an assessment plan or a Multidisciplinary Assessment Plan ("MAP") for parental review within the required legal timelines.  Barber Decl., ¶ 6; Santamaria Decl., ¶ 10; Anguiano Decl., ¶ 8; Fox Decl., ¶ 9; Breitenbach Decl., ¶ 10; Wennes Decl., ¶ 8.  SSTs are comprised of the COST team but also include parents of students, teachers (if not already part of COST), other specialists, and sometimes even the students themselves.  Barber Decl. ¶ 6; Anguiano Decl., ¶ 10; Fox Decl., ¶ 9; Serrano Decl., ¶ 11; Breitenbach Decl., ¶ 6; Wennes Decl., ¶ 10; Declaration of Greg Brisbine ("Brisbine Decl."), ¶ 11.  COSTs and SSTs work together to identify the student's strengths and challenges, to develop an intervention plan for the student, and to evaluate the effectiveness of the plan in subsequent meetings.  Barber Decl. ¶ 6.  Accordingly, COSTs and SSTs are an important support for a school district's child find process.

### C. The District's policies and procedures for identifying and assessing students with suspected disabilities comply with federal and state law.

District procedure requires a student be referred for special education assessment upon Parent request or upon the request of a teacher or other staff person who believes that a student has a suspected learning disability.  Upon receiving a request from a parent for special education assessment, each school site is expected to respond to the request within the legal timeline of 15 calendar days with a proposed assessment plan. In some cases, a SST may be convened within 15 days of the request for assessment so that the SST may receive input from the student's parent, the student's teacher, and other school staff regarding any concerns relating to the student. This information is then used to generate a MAP, which is presented to Parent for consent to assess his or her student for

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

all areas of suspected disability. The same process and timeline is followed whether the request for assessment originates from a parent or from a school staff person.  Sugden Decl., ¶ 24; Santamaria Decl., ¶ 10; Anguiano Decl., ¶ 7; Fox Decl., ¶ 10; Brisbine Decl., ¶ 8; Serrano Decl., ¶ 10; Wennes Decl., ¶ 13; Breitenbach Decl., ¶ 8.

Sometimes a student's disability is not obvious and/or does not immediately raise a reasonable suspicion of its existence. In these instances, students who struggle in the general education setting may be referred to COST or SST. If a child who has been referred to COST or SST does not make adequate progress after general education interventions are utilized to attempt to address the concerns that were raised in the student's referral to COST or SST, the COST or SST may refer a student for special education assessment to determine whether the student qualifies for special education services and/or related services.  Sugden Decl., ¶ 25; Santamaria Decl., ¶¶ 9 and 11-12; Anguiano Decl., ¶¶ 7-9; Fox Decl., ¶ 8-9; Brisbine Decl., ¶¶ 10-11; Serrano Decl., ¶¶ 10-12; Breitenbach Decl., ¶¶ 10-11; Wennes Decl., ¶¶ 9 and 10.

### D. Whether a student is or should be referred for special education assessment depends on a number of factors and involves a fact specific inquiry for each student.

There are multiple factors that determine whether a student should be referred for special education assessment. These factors include whether a parent or staff person (including a teacher) expressly requests that a student be assessed, whether the COST or SST determines that an assessment is necessary after progress monitoring and response to intervention, or even whether a student manifests an obvious disability that interferes with his or her ability to participate in the general education setting. Accordingly, every decision to assess a student for special education is based on a highly individualized set of factors and is made on a case-by-case basis.  Sugden Decl., ¶ 26; Manwaring Decl, ¶ 20 (a)-(f); Neustadt Decl., ¶ 9-10; Barber Decl., ¶ 11.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### E. The District has heavily invested in and prioritized its special education services to students.

In 2011, the District entered into a resolution agreement with the U.S. Department of Education, Office of Civil Rights ("OCR").  As part of this resolution agreement, the District:

1. Developed and revised its Section 504 policies and procedures to ensure that students with disabilities are provided with a free appropriate public education (FAPE), including the timely referral, evaluation, identification, and placement of students with disabilities under Section 504, the full implementation of FAPE determination (i.e. all services and placement provisions) made for students with disabilities under Section 504, and the monitoring and periodic re-evaluation of students with disabilities as required under Section 504;

2. Revised its Uniform Complaint Procedures to include OCR's website information for parents/guardians to file a complaint if they are dissatisfied with the District's grievance process;

3. Trained administrators and staff on Section 504 and the District's legal obligations to provide a FAPE to students with disabilities and on the District's Section 504 grievance procedures;

4. Issued a letter to parents/guardians of students who were found not eligible for special education services under the Individuals with Disabilities Education Act (IDEA) in the 2009-10 or 2010-11 school year to inform parents/guardians of their right to request an evaluation under Section 504 or to appeal a denial of an evaluation through due process or fair hearing procedures;

5. Gave notice to parents/guardians of the District's revised Section 504 policies and procedures by posting them on the District website and including relevant information in the next publication of the District's student/parent handbook.

7

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Sugden Decl., ¶ 6.  As a result of implementing these measures, OCR determined that "the District… fulfilled all of its obligations under the [Resolution Agreement] and, accordingly, (closed) the monitoring of (the District) as of (October 7, 2011)."  Sugden Decl., ¶ 7.

Beginning in 2016, the District also trained school administrators, school principals, assistant principals, school psychologists, speech pathologists, and special education teachers on the District's responsibilities regarding the "child find" process, and their responsibilities regarding the pre-referral process and the importance of SSTs. Sugden Decl., ¶ 8.  At the beginning of the 2017-2018 school year, the Special Education Department also hosted a training for all general education teaching staff, paraprofessionals, aides, student study team members, school administrators, service providers, counselors, school psychologists, speech and language therapists, and any other school staff who worked with parents and students on their educational programs at Soria Elementary School, Elm Elementary School, and Sierra Linda Elementary School. The training addressed special education eligibility, child find duties, and the ability to directly refer a student for assessment, and provided guidelines to identify students who might have disabilities and might benefit from special education services. The Special Education Department plans to conduct a similar training to all of the staff at the other school sites between January and March 2018.  Id., ¶ 9.

In addition, the District added 22 new staff members, including special education managers, full time psychologists, translators, speech pathologists, and 5 specialist teachers to assist its special education student population.  Id., ¶ 11-12.  The District has also restructured and increased resources in its infant and pre-school programs and centralized and increased its inventory of assessments.  Sugden Decl., ¶¶ 14-18.  Finally, the District hired consultants to review IEPs, to provide professional development to speech and language pathologists, and to develop a comprehensive behavior support plan for the District.  Sugden Decl., ¶¶ 19-22.

8
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**F.  The representative plaintiffs have been assessed and are currently receiving services, and six of the seven purported class members have signed settlement agreements that release the District from liability under all claims at issue in this action.**

On March 13, 2017, the Office of Administrative Hearings ("OAH" or "administrative tribunal") issued a Decision by Settlement in the matter of J.R. v. Oxnard School District (OAH Case No. 2016100053). Pursuant to OAH's decision, OSD has provided or is in the process of providing J.R. with all remedies ordered by the administrative law judge in that matter.  Declaration of Lawrence Joe ("Joe Decl."), ¶ 9.

On May 12, 2017, OAH issued a Decision in the matter of I.G. v. Oxnard School District (OAH Case No. 2016091036). Pursuant to OAH's decision, OSD has provided or is in the process of providing I.G. with all remedies ordered by the administrative law judge in that matter.  Joe Decl., ¶ 10.

On May 25, 2017, OAH issued a Decision in the matter of M.B. v. Oxnard School District (OAH Case No. 2016100009). Pursuant to OAH's decision, OSD has provided or is in the process of providing M.B. with all remedies ordered by the administrative law judge in that matter.  Joe Decl., ¶ 11.

Moreover, proposed putative class members W.G., A.V., J.M., A.L., E.H., and Meli B. have settled their claims with the District, are receiving special education services, and have released the District from any and all liability for all claims under the IDEA, the ADA, and Section 504.  Joe Decl., ¶¶ 3-8.

## III.  LEGAL ARGUMENT

### A. REPRESENTATIVE PLAINTIFFS LACK STANDING TO SEEK EQUITABLE RELIEF UNDER THE IDEA ON BEHALF OF THEMSELVES AND THE CLASS.

The party purporting to represent the class must be able to prove actual injury to himself or herself. A claim of actual injury to other members of the class and potential

9

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

injury to the representative is not sufficient. *O'Shea v. Littleton,* 414 US 488, 494, 94 S. Ct. 669, 675 (1974). If none of the named plaintiffs purporting to represent a class establish the requisite case or controversy with the defendants, they cannot seek relief on behalf of themselves or any other member of the class. *Id.; See also, Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d. 1018, 1022 (9th Cir. 2003). Representative plaintiffs must demonstrate standing for *each claim* and *each form of relief sought*. *Davis v. Federal Election Comm'n,* 554 US 724, 734, 128 S. Ct. 2759, 2769 (2008); *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Administration*, 860 F.3d 1228, 1233 (2017).

In this case, representative plaintiffs J.R., M.B. and I.G. seek, among other things, declaratory relief that "Defendants' conduct violated the Individuals with Disabilities Education Act," a prospective injunction "ordering Defendants to comply with the requirements of the IDEA," and Plaintiffs reasonable attorneys' fees and costs in the underlying administrative proceedings OAH Case No. 20161000053, OAH Case No. 2016100009, OAH Case No. 2016091036 (collectively, "administrative decisions"). SAC, Prayer for Relief ¶¶ 1-5, 32:15-33:3, Doc. 36.

However, to be entitled to injunctive relief, the representative plaintiffs must demonstrate that they will be subjected to defendant's policy again in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660, 1670 (1983); *Updike v. Multnomah County*, 870 F.3d 939 0947-948 (9th Cir. 2017). In other words, they have to show that they would somehow be subject to Defendants' allegedly unlawful "policies and procedures regarding the identification of and evaluation of students for the purposes of providing services and accommodations under the IDEA."

The representative plaintiffs lack standing to seek prospective injunctive relief for violations of the IDEA on behalf of the prospective class. The administrative decisions ruled in favor of the representative plaintiffs' IDEA claims. See SAC Exh. A, pp. 2-5, Exh. B, pp. 32-39, Exh. C, pp. 32-37, Doc. 36. The representative plaintiffs have already been found, assessed, and have received or are receiving all the services ordered by each

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

administrative law judge.  See SAC ¶¶ 6, 46, 48-49, 56-57, 82-83, 105-107, 110-111 Doc. 36; Mot. for Class Certification, 9:6-11, 12:12-15, 14:13-15 Doc. 39; Joe Decl., ¶ 9-11.  They suffer no real or immediate injury to justify injunctive relief under the IDEA. *Lyons*, 461 U.S. at 111.

Moreover, claims for injunctive relief for potential future injuries or claims for attorneys' fees do not confer standing.  "When a named plaintiff in a class suit attempts to obtain an injunction due to the likelihood of future injury, that injury must be suffered personally by the named plaintiff,—potential future injuries to class members do not provide standing for the named plaintiff to seek injunctive relief."  Newberg on Class Actions § 2.7 (5th ed. 2017); see also *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S.Ct. 1003, 1019 (1998)) (holding that a claim for attorney's fees, standing alone, is insufficient to confer Article III jurisdiction "where none exists on the merits of the underlying claim.)

The representative Plaintiffs thus have no injury in fact under the IDEA and have no standing to seek injunctive relief or declaratory relief on behalf of themselves or the class under this statute.

## B. PLAINTIFFS MUST PROVE EACH ELEMENT OF RULE 23(a) BY A PREPONDERANCE OF ADMISSIBLE EVIDENCE.

Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(a), a party seeking certification of a class or subclass must satisfy four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).  The proposed class or subclass must also satisfy the requirements of one of the sub-sections of Rule 23(b), "which defines three different types of classes." *Parsons*, 154 F.3d at 674 (citing *Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 512 (9th Cir.2013).)  Here, Plaintiffs move for certification under Rule 23(b)(2) which requires "the party opposing the class [to have] acted or [have] refused to act on grounds that apply generally to the class, so that final injunctive

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).

"Rule 23 does not set forth a mere pleading standard." *Parsons*, 154 F.3d at 674 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350*,* 131 S.Ct. 2541 (2011).) A party seeking class certification must affirmatively demonstrate compliance with the Rule and must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality amongst the parties, and adequacy of representation. *Id.* Similarly, a party must affirmatively prove compliance with one of the three subsections of Rule 23(b). *Id.* Factual determinations supporting Rule 23 findings must be made by a preponderance of admissible evidence. *Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 521, n. 83 (C.D. Cal. 2012) (applying the preponderance of the evidence standard as the general standard of proof for civil cases); *See also*, *In re Hydrogen Peroxide Antitrust Litig.* (3rd Cir. 2009) 552 F.3d 305, 321 (holding that the court erred in certifying a class where Plaintiffs merely made a "threshold" showing); *Teamsters Local 445 v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *Oscar Private Equity Investments v. Allegiance Telecom, Inc.* 487 F3d 261, 269 (5th Cir. 2007)

Sometimes courts must probe behind the pleadings before coming to rest on a certification question. *Dukes*, 564 U.S. at 350. Certification is proper only once the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Id.* at 351. Often, the rigorous analysis will entail some overlap with the merits of plaintiff's underlying claim. *Id.*

## C. PLAINTIFFS FAIL TO PROVE THAT THE PROPOSED CLASS IS SO NUMEROUS THAT JOINDER WOULD BE IMPRACTICABLE.

Plaintiffs fail to show, by a preponderance of admissible evidence, that they meet the numerosity element of class certification. To meet this element, Plaintiffs must show that their class is "so numerous that joinder of all members is impracticable." Fed. R.

12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Civ. P. 23(a)(1).  Courts have found a class of 40 or more members to be sufficiently numerous for class certification but that a class of 21 or fewer members is not sufficiently numerous.  *Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

Plaintiffs assert three principal arguments to establish numerosity:  (1) The District is under-identifying "more than 200 students"; (2) The District's 17,000 students are currently being harmed by the District's child find policies; (3)  Joinder would be impracticable due to the population's lack of financial resources and limited English-language skills.

Each argument lacks merit.

> **i.  Plaintiffs' expert conclusion that the District under-identified 200 students for special education services fails to meet the evidentiary standards of Rule 702 and *Daubert* because it is based on an inferential gap between the data studied and the expert's ultimate conclusion.**

Plaintiffs offer statistical data to argue that the District is under-identifying 200 potential class members.  Specifically, Plaintiff's expert Peter E. Leone ("Leone") applies a "relative risk analysis" to compare state-wide special education data and total enrollment data to the District's special education data and total enrollment data for the years 2011-2017.  Leone's analysis then inexplicably concludes that the District is under-identifying students with suspected learning disabilities.  Leone's declaration fails to meet the evidentiary standard for expert testimony under Rule 702 of the Federal Rules of Evidence and *Daubert*.

Rule 702 requires expert testimony (1) to be based upon sufficient facts or data, (2) to be the product of reliable principles and methods, and (3) to apply principles and methods reliable to the facts of the case.  Fed. R. Evid. 702.  The Ninth Circuit requires that expert testimony be both "relevant and reliable."  *Estate of Barabin v. AstenJohnson,*

13
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Inc.*, 740 F.3d 457, 463 (9th Cir. 2014)(citing *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001).  Reliability of the expert testimony depends on whether the expert has a "reliable basis in the knowledge and experience of the relevant discipline." *Barbarin*, 740 F.3d at 463 (citing *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 143 (1999)).  "The duty falls squarely upon the district court to act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards."  *Barbarin*, 740 F.3d at 463 (*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).  Indeed, "a judge may properly exclude the expert's conclusions where there is too great an analytical gap between the data studied and the opinion proffered."  *General Elec. Co. v. Joinder*, 522 US 136, 146, 118 S. Ct. 512, 519 (1997) (internal quotations omitted).

Leone's conclusion that the District is under-identifying 200 students for special education services is based on an inferential gap between the data he studied and his ultimate finding.  Leone provides no factual information to make any conclusions about whether Oxnard School District has either under- or over-identified students for special education.  Declaration of Robert Manwaring ("Manwaring Decl."), ¶ 12.  Leone relies on a relative risk analysis of the probability of a student being identified for special education services. This analysis is basically a complicated way of explaining that the percentage of students in special education in Oxnard School District is less than the state average.  Manwaring Decl., ¶ 13.  Leone's analysis is flawed because he fails to even consider whether the Oxnard School District's proportion of students in special education is unusually low, or whether there are other reasons that have nothing to do with the district's special education child find policies that could result in Oxnard or any district having a different percentage of special education students than the state average.  Id.

Leone's analysis goes awry when it moves from finding that the district has a below average rate of students in special education in paragraph 19 to then concluding in

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

paragraph 20 that the district has under-identified students for special education. Leone suggests that there is a formula for the number of students that a district should be identifying for special education and that any district that has less than the state average is under-identifying students. Leone's Declaration asks us to believe that the only explanation for the variation is the District's policies and procedures. Manwaring Decl., ¶ 14. This is flawed logic based on an inexplicable assumption by Leone that **all districts** should be identifying exactly or at least the state average of students for special education. Manwaring Decl., ¶ 15. Under Leone's methodology, even if all Districts were actually over-identifying students as eligible for special needs, he would inaccurately conclude that some districts were under-identifying students just because they were below the state average. Manwaring Decl., ¶ 17. There is simply no basis from Leone's analysis to identify a class of students that may or may not have been impacted by the District's special education identification policies and procedures. Manwaring Decl., ¶ 6; Declaration of Sam Neustadt ("Neustadt Decl."), ¶ 14.

Leone's analysis also fails to account for factors that may impact variations amongst Districts in the percentage of students that school districts identify for special education. Manwaring Decl., ¶ 20; Neustadt Decl., at ¶¶ 9-10. For instance, identifying a student with learning disabilities, or suspected learning disabilities involves a complex process. See Sugden Decl., ¶ 26; Manwaring Decl, ¶ 20 (a)-(f); Neustadt Decl., ¶ 9-10; Barber Decl., ¶ 11. Failure to account for this variability ignores the complex process of identifying a basis knowledge that causes a District to identify a student with suspected disabilities. Neustadt Decl. at ¶¶ 9-10; Manwaring Decl., ¶ 19-20.

Courts have rejected similar spurious conclusions based on faulty inferences. *Celano v. Marriott International, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2017) (holding that although courts routinely allow statistical evidence to establish numerosity, inferences must make common sense and be "based upon something other than rank speculation untethered to real facts.") Plaintiffs in *Celano* sought to certify a class of mobility

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

impaired individuals who require an accessible golf cart to secure equal access to Defendant's golf courses.  *Id.* at 549.  In support of their numerosity argument, Plaintiffs submit 21 declarations of mobility impaired golfers and the following statistical data:

(1) Census statistics showing that 25 million individuals have ambulatory disabilities

(2) Paralyzed Veterans Association statistics showing that 21 % of its members are interested in golf and that 6% participate in golf

(3) Mobility Impaired Golf Association estimation that "two million people would be ready to enter game of golf if conditions were more amenable" and

(4) National Golf Foundations statistics that 28 million people play golf.

*Id.* at 549. Plaintiffs concluded that the number of Defendant's courses and the geographical diversity of disabled golfers yield in a sufficiently numerous class.  *Id.*

The Court disagreed.  It determined that Plaintiffs' census and statistics data were "too ambiguous and speculative to establish numerosity."  *Id.* at 549.  Plaintiffs data required the court to make a series of unsupported inferences and provided no insight on the number of disabled people who would like to play golf at Defendant's courses but are deterred from doing so because of the absence of single-rider golf carts.  *Id.* at 449-550.

Like the Plaintiffs' in *Celano*, Plaintiffs in this case fail to "link their data to the alleged violation and injury at issue."  Like the statistical evidence in *Celano*, Leone's conclusions fail to meet the evidentiary standards of Rule 702 and *Daubert*.[3]

---

[3] The cases that Plaintiffs cite are distinguishable and fail to support their numerosity argument.  Numerosity was undisputed in three of Plaintiffs' cited cases.  *See In re Cooper Companies Inc. Sec. Litig.,* 254 F.R.D. 628, 634 (C.D. Cal. 2009) (numerosity was undisputed); *Bates v. UPS,* 204 FRD 440, 444 (N.D. Cal. 2001) (Plaintiffs identified 460 potential nationwide class members and over 40 potential members of the proposed

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ii. **Six of the seven potential class members settled their claims with the District and released the District from all liability under the IDEA, the ADA, and Section 504.**

Plaintiffs offer the declarations of seven potential putative class members and two teachers as evidence of numerosity.

However, six of the seven purported putative class members executed settlement agreements and released the District from liability for all claims asserted in this lawsuit.[4] Joe Decl., ¶¶ 3-8.  Accordingly, six of the seven potential class members cannot be members of the putative class.  *See Javine v. San Luis Ambulance Services, Inc.*, 2015 WL 12672090 at * (C.D. Cal. 2015) (Plaintiff left with no more than a dozen members of the putative class as a result of current and former employees signing settlement and release agreements with Defendant.)  As a result, only E.M. would qualify as a potential member of the class.  Indeed, it would not be impractical to join E.M. as a plaintiff with the representative Plaintiffs.  Plaintiffs cannot demonstrate numerosity based on the submitted declarations of W.G., A.V., J.M., A.L., E.H., and Meli B.  *See, Rawat v. Navistar Intern. Corp.*, 2011 WL 222131 at *6 (N.D. Ill. 2011) ("It is undisputed that fifty-two of the fifty-five putative class members accepted payment from Navistar and released their claims.... That leaves one absent putative class member. It would not be impracticable to join her as a plaintiff with Rawat and Lyons."); *Ciarlante v. Brown & Williamson Tobacco Corp.*, 1995 WL 764579 at *2 (E.D. Pa. 1995) (class action

_____

subclass); *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (numerosity established by stipulation).  In other cases, numerosity was established without much explanation or after the Court drew inferences from Defendant's admissions.  *See Californians for Disability Rights, Inc. v. California Dept. of Transportation*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) and *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008), respectively.

[4] W.G., A.V., J.M., A.L., E.H., and Meli B. are receiving special education services from the District and have released the District from all liability under the IDEA, ADA, and Section 504.

17

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

allowed to proceed on behalf of class that did not sign release agreements but not on behalf of members that signed release agreements).

### iii. Not all 17,000 District students have a suspected learning disability such that they would be subject to the District's child find policies and evaluation procedures.

Plaintiffs make the extraordinary argument that all 17,000 District students "are being actively harmed by the District's policies and practices" because "they are not being identified as requiring (special education) services." Mot. for Class Certification, 20:6-10, Doc. 39. Plaintiffs fail to offer any evidence to support their argument. Instead, Plaintiffs offer anecdotal declarations of two District teachers that are replete with speculative conclusions and inadmissible hearsay.[5]

Evidentiary flaws notwithstanding, the teacher declarations identify, at most, four additional students that could be members of the putative class. Declaration of Tara Austin Scott ("Scott Decl."), ¶¶ 6(a)(i)), 6(b)(i), 6(d)(i), 6(e)(i).[6] These four students are not so numerous that joinder would be impracticable.

Although Plaintiffs may argue that the teacher declarations also describe a District pattern of ignoring parent and teacher requests for assessments, neither teacher provides specific information regarding when, in their 15+ years of teaching at the District, the alleged incidents occurred. See Austin Scott Decl., ¶ 2 (stating that she has taught at the District for 16 years); Declaration of Irma Vasquez-Garfield ("Vasquez-Garfield Decl."), ¶ 5 (stating that she has taught at the District for 24 years). The teachers also fail to state

---

[5] Defendants filed evidentiary objections to the Declarations of Irma Vazquez Garfield and Tara Austin Scott concurrently with this Opposition.

[6] Austin Scott also makes sweeping conclusions, without foundation, that several of her students were "never assessed" or that parent requests for assessments and doctor's notes were "ignored." Aside from lacking foundation, Austin Scott's conclusions are expressly contradicted by the declaration of Sally Wennes ("Ms. Wennes"), principal at Lemonwood School. See Declaration of Sally Wennes ("Wennes Decl."), ¶¶ 7(a)-(b), 8, 9, 15, and 16.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

exactly how many students were specifically impacted by the District's alleged failure to assess these students. Ultimately, the declaration of these two teachers may be sufficient to meet a pleading standard, but fail to prove by a preponderance of admissible evidence that there are sufficiently numerous parties for class certification.[7]

> ### iv. Plaintiffs were unable to find putative class members despite Plaintiffs' counsel announcing this active litigation during a radio interview and holding two community meetings to recruit members to Plaintiffs' class.

Plaintiffs' argue that the demographic characteristics of the student class make joinder in this case impracticable. Mot. for Class Certification, 20:23 (Doc. 39).  In support of their argument, Plaintiffs cite to *Leyva v. Buley*, 125 F.R.D. 512 (E.D. Wa. 1989), which is distinguishable from this case.  *Leyva* involved a putative class of 50, which does not exist in this case.

Moreover, although language and socio-economic factors influence whether joinder is feasible, the District's student population and their parents in this case have had access to the attorneys representing the prospective class.  Indeed, on September 14, 2017, a local radio station (KOXR 910 AM) interviewed Plaintiffs' counsel Janeen Steel. During this interview, she announced that Plaintiffs' counsel would meet with potential class members on Friday September 15, 2017 from 1-4 p.m. and Saturday September 16, 2017 from 1-5 p.m. at the Oxnard Performing Arts Center.[8]

---

[7] Plaintiffs also argue that future students will be harmed by the District's policies. Mot. for Class Certification, 20:10, Doc. 39.  Plaintiffs offer no evidence that the number of future class members is so large as to render their joinder impracticable and, instead, merely ask the court to broadly consider future class members in order to determine that a class exists.

[8] The Oxnard Performing Arts Center is located at 800 Hobson Way, Oxnard, CA 93030. A video of the radio interview can be viewed on public Facebook page of radio disc jockey Marco Benitez, https://www.facebook.com/marco.benitez.357/videos/10212049491766841/?pnref=friends.search  (last visited December 8, 2017).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Despite these meetings and their extensive community outreach efforts, Plaintiffs did not find sufficient putative class members to meet the numerosity requirements for the case.

### D. THERE IS NO COMMON QUESTION OF LAW OR FACT APPLICABLE TO THE CLASS.

To establish commonality, Plaintiffs must prove by a preponderance of admissible evidence that there are common questions of law or fact common to the class. *Wal-Mart*, 564 U.S. at 350; *Parsons*, 754 F.3d at 674-675.  Commonality requires the plaintiff to demonstrate that the class members have suffered the same *injury*, and not merely that they have all suffered a violation of the same law.  *Id.* Accordingly, the claims must depend upon a common contention that is capable of class-wide resolution such that the determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke.  *Id.*

The proposed class in this case cannot demonstrate that they have suffered the same injury.  As previously stated, a district's failure or success in locating, identifying, and assessing students for special education services depends on a variety of factors and on a factual inquiry unique to each student.  Sugden Decl., ¶ 26; Manwaring Decl, ¶ 20 (a)-(f); Neustadt Decl., ¶ 9-10; Barber Decl., ¶ 11.  Indeed, Plaintiffs admit that variations of injury exist even among the representative plaintiffs: J.R., who was diagnosed with a severe speech and language disorder, was subject to a series of SST meetings but was not assessed; M.B., who was diagnosed with ADHD and dyslexia, was subject to a series of SST meetings and ultimately assessed, though the assessment was allegedly deficient; and I.G., who was diagnosed with anxiety disorder, was not subject to SST and was not assessed.  Despite the variety of conditions and injuries among the representative members, Plaintiffs erroneously argue that there is commonality within the putative class.  Plaintiffs define their proposed class as:

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

> All students in Oxnard School District who have or may have disabilities and who have been subject to District's policies & procedures regarding identification and evaluation of students for purposes of providing services or accommodations under the IDEA, Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

A nearly identical class was found to lack commonality in *Jamie S v. Milwaukee Public Schools,* 668 F.3d 481 (7th Cir. 2012).  Plaintiffs in *Jamie S.* sought to certify "Those students eligible for special education services from the Milwaukee Public School System who are, have been or will be either denied or delayed entry or participation in the processes which result in a properly constituted meeting between the IEP team and the parents or guardians of the student."  *Id.* at 495.  The Court determined that such a class lacked commonality by posing the following hypothetical:

> To illustrate the commonality problem in the certified class, consider two hypothetical students within the class: one has a disability and would be eligible for special education but has never been identified as being disabled nor gone through the IEP process; another was identified as disabled and received a timely IEP meeting, but the child's parents did not attend the IEP meeting and were not notified of their right to do so. Both scenarios involve violations of the IDEA, but what common question can be answered that would assist the court in determining [the district's] liability for each? On the plaintiffs' theory, that question is something like this: Did [the district] fulfill its IDEA obligations to each child? But while that generic question is surely a part of both children's claims, it must be answered separately for each child based on individualized questions of fact and law, and the answers are unique to each child's particular situation.

*Id.* at 498.  Similarly, the challenged policy in this case also involves answers unique to each student's circumstances.

21

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The Court in *D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) also determined that a class similar to Plaintiffs' proposed class lacked commonality. The class in *D.L.* was defined as:

> "All children who are or may be eligible for special education and related services, who live in or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, or offer special education and related services to when the child was between the ages of three and five years old, inclusive or (2) whom defendants have not or will not identify, locate, evaluate, or offer special education and related services to when the child is between the ages of three and five years old, inclusive.

*Id.* at 123. The Court in this case properly determined that "the harms alleged to have been suffered by the plaintiffs involve different policies and practices at different stages of the District's Child Find and FAPE process." *Id* at 127.

Plaintiffs cite to *D.L. v. District of Columbia*, 860 F.3d 713 (2017) (hereinafter, "*D.L.* 2017") and *M.G. v. New York City Department of Educ.*, 162 F.Supp.3d 216, 236 (S.D.N.Y. 2016) in support of their commonality argument. These cases are highly distinguishable. In *D.L* 2017 and *M.G.*, the challenged policies were specific and detailed to individual circumstances. For instance, Plaintiffs in *D.L.* 2017 defined their class members as follows:

1. Disabled 3-5 year olds whom the district failed to identify for the purpose of offering special education services;

2. Disabled 3-5 year olds whom the district failed to give an initial evaluation within 120 days of being referred for special education services

3. Disabled 3-5 year olds whom the district failed to give eligibility determination within 120 days of being referred; and

4. All children who transitioned from early intervention to preschool programs, and whom the Distrcit denied a "smooth transition" by age three.

22

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Id.* at 721.

Plaintiffs in *M.G.*, defined their class and subclasses as follows:

1. "all children with disabilities under the meaning of the IDEA who (a) reside in New York City; (b) have IEPs; (c) were recommended for or attended an "NPS Program" and (d) have been subject to the NPS Directive and (ii) those who will, in the future, meet the criteria of (i).

2. "(i) members of the NPS Class who are, or were, receiving and will receive [Related] NPS Services; and (ii) who invoked or will invoke their due process [rights] and obtained stay-put rights under 20 U.S.C. § 1415(j).

3. "(i) are members of the NPS Class whose [Related] NPS Services were removed from their IEPs; and (ii) all those who will, in the future, meet the criteria of (i)."

*Id.* at 225-226. Unlike the proposed class in this case, the defined classes in *D.L.* 2017 and *M.G.* challenged common questions that were capable of class-wide resolution because they challenged specific policies tied to specific student populations.

The proposed class in this case is more like those proposed in *D.L.* and *Jamie S.*, which fail to identify a common injury amongst the class capable of class-wide resolution. Plaintiffs cannot prove commonality by a preponderance of admissible evidence.

### E.   PLAINTIFFS M.B., I.G., AND J.R. CANNOT ADEQUATELY REPRESENT THE CLASS IN ITS REQUEST FOR RELIEF UNDER THE IDEA.

Since M.B., I.G., and J.R. lack standing to seek equitable relief under the IDEA, their claims for relief are limited to an appeal of the administrative decisions (for M.B. and I.G.) and a claim for attorneys' fees. Accordingly, the class representatives' claims for relief are fundamentally different from those of the class for claims asserted under the IDEA. *See Ellis,* 657 F.3d at 986 (holding that former employees could not

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   adequately represent the class because they had no standing to pursue future injunctive

2   relief and would not share an interest with class members whose primary goal is to

3   obtain injunctive relief.)

4       M.B., I.G., and J.R. cannot adequately protect the interests of the class for claims

5   of prospective injunctive relief under the IDEA.

6   **IV.    CONCLUSION**

7       The District respectfully request that the Court deny Plaintiffs' motion to certify

8   the class under Federal Rule of Civil Procedure 23(a).

Dated: December 11, 2017           GARCIA HERNANDEZ SAWHNEY, LLP

By_____
                                    Norma Nava Franklin
                                    Attorneys for Defendants

24
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION