UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION TO CERTIFY CLASS (DKT. 39) AND PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT (DKT. 114)

I.    <u>Introduction</u>

Plaintiff J.R., through a guardian ad litem, brought this action advancing individual claims for alleged violations of certain disability rights against the following defendants: the Oxnard School District ("OSD" or the "District") and Cesar Morales, Ernest Morrison, Debra Cordes, Denis O'Leary, Veronica Robles-Solis and Monica Madrigal Lopez in their official capacity only (collectively, "Defendants"). Complaint, Dkt. 1. In an amended complaint, J.R. and two other minors, M.B. and I.G. (collectively, "Plaintiffs"), each acting through a guardian ad litem, presented class action allegations. First Amended Complaint ("FAC"), Dkt. 14. Plaintiffs then filed a second amended complaint, which is the operative one. Second Amended Complaint ("SAC"), Dkt. 36.

The SAC alleges that the policies and procedures of the District for addressing the needs of students with potential disabilities or for assessing such students are insufficient. A basis for this claim is that these policies and procedures do not include the timely and adequate referral for special education assessments that is required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 14000 *et seq.*, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*

The SAC defines the proposed class as follows:

> [A]ll students in Oxnard School District who have or may have disabilities and who have been or will be subject to the District's policies and procedures regarding identification and evaluation of students for purposes of providing services or accommodations under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

SAC ¶ 115.

J.R. is a thirteen-year-old, eighth grade student with severe expressive and receptive language disorder

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

and Attention Deficit Hyperactivity Disorder ("ADHD"). *Id.* ¶¶ 12, 26. M.B. is a ten-year-old, fifth grade student with the same conditions. *Id.* ¶¶ 13, 51. I.G. is a ten-year-old, fifth grade student with anxiety disorder and insomnia. *Id.* ¶¶ 14, 86. The SAC alleges that each of the Plaintiffs requires special education services under the IDEA, and that each is a qualified individual with a disability as defined by Section 504, 29 U.S.C. § 705(20), and the ADA, 42 U.S.C. § 12102. *Id.* ¶¶ 12-14.

The SAC alleges that Defendants fail to identify, evaluate and provide services and accommodations with respect to Plaintiffs and others who are similarly situated. *Id.* ¶ 11. The SAC alleges three causes of action based on claimed violations of the following statutes: (i) Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*; (ii) Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*; and (iii) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Plaintiffs seek to certify the proposed class as to all three causes of action.

On November 22, 2017, Plaintiffs filed a motion for class certification ("Motion"), in which the proposed class is defined as stated in the SAC. Dkt. 39 at 3. Defendants opposed the Motion (Dkt. 62) and Plaintiffs replied (Dkt. 96).[1] A hearing on the Motion was conducted on January 29, 2018, at which Defendants were granted leave to file a sur-reply addressing certain matters raised in Plaintiffs' reply. Defendants did so. Dkt. 107. The matter was then taken under submission. Dkt. 106.

On April 25, 2018, Plaintiffs filed a motion for leave to file an amended complaint. Dkt. 114. Defendants opposed that motion. Dkt. 118. Plaintiffs filed a reply in support of the motion. Dkt. 123. On May 15, 2018, an order issued taking that motion under submission.

For the reasons stated in this Order, the Motion is **DENIED**, without prejudice. Because the motion for leave to amend was filed prior to the issuance of this Order, the interests of judicial and party efficiency will be best served if Plaintiffs file a new motion for leave to amend, with a proposed amended complaint that they contend is sufficient to address the issues addressed in this Order. Accordingly, the motion for leave to amend is **DENIED,** without prejudice.

II.    **Background**

       A.    IDEA, ADA and Section 504

Under the IDEA, school districts which receive federal funding, including the District, are required to provide a "Free Appropriate Public Education" ("FAPE") to all students with disabilities. 20 U.S.C. §§ 1412(a)(1), 1412(b), 1413(a). A FAPE includes special education and related services that are consistent with curriculum standards set by the state. It must also conform with each student's Individualized Education Plan ("IEP"). 20 U.S.C. § 1401(9). Special education is "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29).

To be eligible under the IDEA, a child must have a qualifying disability. These include a speech or

---

[1] Each side submitted declarations in support of its position. Dkts. 40-56, 63-73, 76-77, 79-88, 97-99. Each side also filed evidentiary objections to the declarations submitted by the other. Dkts. 74, 90, 100, 101. Separate orders have been issued that address these evidentiary objections. Dkts. 126, 127.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

language impairment, emotional disturbance, orthopedic impairment, or autism. The student must also show that, as a result of this disability, he or she requires special education and related services. 20 U.S.C. §§ 1401(3), 1414(b)(4)(A). To comply with these requirements, districts must have in effect policies and procedures that ensure all students in need of special education and related services are "identified, located, . . . evaluated and" provided an IEP. 20 U.S.C. § 1412(a)(3)(A); *see also* 20 U.S.C. §§ 1412(a)(1), 1412(a)(4)-(7), 1413(a)(1), 1414(a)-(e); 34 C.F.R. §§ 300.111, 300.301, 300.304-311; *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1110 (9th Cir. 2016). A school district has a duty to evaluate a student after receiving notice that he or she may have a covered disability. *JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 794 (9th Cir. 2008). This process is called "Child Find." 20 U.S.C. § 1412(a)(3).

When a school proposes to change the identification, evaluation or educational placement of a student, or fails to make such a change, the parents "have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency by the local educational agency as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f). In California, the due process hearing is conducted by an Administrative Law Judge ("ALJ") in the California Office of Administrative Hearings ("OAH"). A "party aggrieved by the findings and decision" of the state agency "shall have the right to bring a civil action with respect to the complaint [adjudicated in the due process hearing]." 20 U.S.C. § 1415(i)(2)(A). Although there are certain exceptions, in general, completing the administrative process is a prerequisite to filing a civil action. 20 U.S.C. § 1415(l). The exhaustion of this administrative process is not required when "resort to the administrative process would be futile or inadequate," or when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303-04 (9th Cir. 1992) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)).

B.     The District's Policies and Procedures

When a parent or teacher requests that a student be assessed for possible disabilities, the District initiates its pre-referral process. That process uses Student Support Teams ("SST") and Coordination of Services Teams ("COST"). A COST is a group of school administrators and teachers that conducts the first review of the potential needs of a student. Dkt. 62 at 10. A COST often is comprised of a school principal, counselor, school psychologist, outreach coordinator, resource specialist, Teacher on Special Assignment ("TOSA"), and/or, on occasion, the student's teacher. Declaration of Andres Santamaria ("Santamaria Decl."), Dkt. 68 ¶ 11; Declaration of Bertha M. Anguiano ("Anguiano Decl."), Dkt. 69 ¶ 9; Declaration of Aracely Fox ("Fox Decl."), Dkt. 67 ¶ 7; Declaration of Carmen Serrano ("Serrano Decl."), Dkt. 70 ¶ 13; Declaration of Marlene Breitenbach ("Breitenbach Decl."), Dkt. 72 ¶ 9; Declaration of Sally Wennes ("Wennes Decl."), Dkt. 73 ¶ 8. If a COST determines that a student warrants an assessment, it may make a direct referral for that process. Santamaria Decl. ¶ 12.

An SST is formed if the COST determines that more information is needed to address a possible concern about the needs of the student. Fox Decl. ¶¶ 8-10; Anguiano Decl. ¶ 8; Serrano Decl. ¶ 14; Breitenbach Decl. ¶ 10; Wennes Decl. ¶¶ 9-10. The SST includes the members of the COST as well as the parent, student's teacher (if not already part of the COST) and other specialists. It may also include the student. Fox Decl. ¶ 7; Anguiano Decl. ¶ 10; Serrano Decl. ¶ 11; Breitenbach Decl. ¶ 6; Wennes Decl. ¶ 10. The SST may recommend additional classroom interventions or services, as well as a follow up meeting in six to eight weeks to evaluate any progress by the student. Santamaria Decl. ¶ 13. The SST may also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

determine that a student should be referred for a special education assessment and then facilitate it. The SST may make this determination either after its initial meeting, or upon the completion of any intervention recommended in that meeting.

Plaintiffs contend that by using the COST and SST processes instead of full special education assessments, the District has violated the IDEA. They also contend that even when such full assessments are initiated, they are not compliant because they have been unduly delayed by the COST and SST processes. It is also alleged that the District has violated the statutes when it has failed to take any action to evaluate certain students. *See, e.g.*, Decl. of L.O. re A.V. (no SST meetings or assessments were conducted during a several-year period); Decl. of M.A. re E.H. (no SST meetings or assessments during a two-year period); Decl. of O.M. re E.M. (no SST meetings or assessments during a four-year period).

C.    Named Plaintiffs' Educational History Within the District

1.    <u>J.R.</u>

J.R. is enrolled at the Haydoc Academy of Arts and Sciences ("Haydoc"). Dkt. 39 at 23. She previously attended Kamala Elementary School from kindergarten through the sixth grade. Declaration of M.A. ("M.A. Decl."), Dkt. 45 ¶ 4. During her first few years of elementary school, her performance reflected difficulty in understanding new concepts. It also showed that she was easily distracted, needed support in certain subjects and received low grades in several classes, including mathematics. Dkt. 39 at 23-24; *see* Dkt. 45, Exs. A-E. In fifth grade, J.R. received low grades in mathematics and other classes, and her report card noted that she had difficulty understanding new concepts. Dkt. 45, Ex. F. Her fifth grade teacher expressed concern about her performance and facilitated an SST meeting on May 11, 2015. Dkt. 45, Ex. G. During this meeting, the District concluded that J.R. had problems with reading, comprehension, social interactions and peer relations. *Id.* However, it did not evaluate J.R. for special education services. Dkt. 39 at 24. In sixth grade, J.R. regressed in her performance in speaking, reading, listening and mathematics. Dkt. 45, Exs. H, J. In February 2016, J.R. was diagnosed with Attention Deficit Disorder ("ADD"). M.A. Decl. ¶ 7. J.R. performed poorly in certain subjects during the sixth grade. Dkt. 45, Ex. I.

On September 22, 2016, shortly after J.R. started seventh grade, she filed a due process complaint with the OAH. *J.R. v. Oxnard Sch. Dist.*, Case No. 2016100053. In response, the District agreed to evaluate J.R. to determine if she would be eligible for special education services. Dkt. 39 at 25. This assessment included testing, and led to the conclusion that J.R. had severe deficits in numerous areas of skill and core competence. Dkt. 45, Ex. K. On December 13, 2016, the District held an IEP meeting at which it concluded that J.R. was eligible for special education and related services as a student with a speech or language impairment. Dkt. 45, Ex. L.

On February 1, 2017, an administrative hearing commenced as to the complaint brought by J.R. However, before any evidence was presented, J.R. and the District submitted to the OAH a proposed stipulated agreement to resolve the matter. Dkt. 45 at 104. On March 13, 2017, the OAH entered a Decision by Settlement, which incorporated the findings, legal conclusions and remedies to which the parties had stipulated. *Id.* at 108. These included that the District should have found J.R. eligible for special education services related to her speech or language impairments as of September 2014, *i.e.*, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

start of fifth grade, and that by failing to do so, it had failed its Child Find obligations under the IDEA and denied J.R. her FAPE. *Id.* at 105. The District was ordered to provide the following compensatory education services and related relief, all of which the District subsequently provided or is in the process of providing:

- An assessment by Lindamood-Bell Learning Processes ("LBLP") in Santa Barbara (completed);
- Two years of LBLP services to be provided during the regular school day and according to LBLP's recommendation (ongoing);
- Placement in a mild-moderate special day class at Haydoc, including 30 minutes per week of individual speech services until the end of J.R.'s eighth grade year; 60 minutes per week of group speech services until the end of J.R.'s eighth grade year; no fewer than 12 social skills sessions with the option to continue if recommended by the supervising counselor; and as needed services by a Language and Academic Development credentialed educator to support the special day class teach to provide writing instruction (completed, but ongoing);
- Transportation services and an extended school year in 2017 with LBLP (completed) and transportation services and extended school year in 2018 with LBLP or a District program (ongoing); and
- Coordination with the high school in the District or with J.R.'s new district (in the event that J.R.'s family moves out of the District) to provide any remaining LBLP services owed after J.R. transitions to high school or moves out of the District (not yet applicable).

*Id.* at 106-07.

2. <u>M.B.</u>

M.B. is a ten-year-old student enrolled at Rose Elementary. Dkt. 39 at 20. Over the course of four years, the District conducted seven SST meetings as to M.B. In 2012, M.B. started kindergarten at the Juan Soria Elementary School. Soon thereafter, M.B.'s mother informed her teacher that she believed M.B. had a disability that was affecting her education. Dkt. 47, Ex. A ("M.B. Order") ¶¶ 3-4. The District responded by holding an SST meeting. Dkt. 39 at 20. At the meeting, M.B.'s mother expressed several concerns about M.B.'s behavior and learning difficulties. M.B. Order ¶ 7. At the end of that school year, the District assessed M.B. However, it did not assess all areas of potential disability, including those identified by M.B.'s mother. M.B. Order ¶ 37. M.B. continued to struggle academically for the next three academic years. During that time period, M.B. showed deficiencies in memory, language and motor skills. Dkt. 39 at 20. In September 2016, at the beginning of M.B.'s fourth grade year, M.B. filed a due process complaint with the OAH. *M.B. v. Oxnard Sch. Dist.*, Case No. 2016100009. Declaration of Lawrence Joe ("Joe Decl."), Dkt. 76 ¶ 11; SAC, Ex. B. The District then completed a special education assessment.

On May 25, 2017, the OAH concluded that, at a minimum, the District should have reassessed M.B. for eligibility for certain services as of November 2013. This determination was supported by her failure adequately to progress academically, a parental report that M.B. had been diagnosed with ADD and her mother's expressed concerns of possible autism and fine motor skill deficits. M.B. Order ¶ 41. The OAH concluded that the SST team deferred assessments of M.B. with a "wait and see" mindset. *Id.* The OAH further concluded that the District ignored signs of autism and deficits in language and speech, fine motor skills and academic progress. *Id.* Accordingly, the OAH decided that the District had failed to satisfy its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|----------|--------------------------|------|--------------|
| Title | J.R. v. Oxnard School District, et al. | | |

IDEA obligation to reassess M.B. for special education eligibility. Instead, it relied on the SST process, which denied M.B. a FAPE. M.B. Order ¶ 42. Based on these determinations, the OAH ordered that the District to provide the following compensatory education services and related relief, all of which the District has provided, or is in the process of providing:

- Comprehensive independent educational evaluation by a licensed educational therapist or comparable agency of M.B.'s parents' choosing that shall evaluate M.B.'s academic needs at school and determine a reasonable number of compensatory hours needed to assist her in making progress toward grade level (completed);
- 72 hours of compensatory academic instruction by a licensed educational therapist or non-public agency of M.B.'s parents' choosing to be provided for three hours per week for six months (ongoing);
- Independent educational evaluation in autism (completed) and occupational therapy (ongoing);
- Reimbursement for Karen Schnee's January 2017 independent evaluation up to $4,050 (completed); and
- 120 hours of speech and language therapy by a nonpublic agency or licensed speech therapist chosen by M.B.'s parents focusing on M.B.'s IEP goals developed by her team (ongoing).

Joe Decl. ¶ 11.

The OAH also ordered the District to provide six hours of training to staff at the Elm Elementary School and Juan L. Soria School as to the following: (i) the general principles of the IDEA, including Child Find procedures; (ii) the special education assessment process under the IDEA; (iii) the statutory requirements for providing parents with prior written notice and procedural safeguards; and (iv) the rights of parents to participate meaningfully in the development of a child's education program during the assessment process and at IEP meetings, including determining whether the child is eligible for special education. *Id.* The District completed the six hours of training through sessions conducted on August 14, 2017 and August 22, 2017. *Id.*

       3.   I.G.

I.G. is enrolled at Sierra Linda Elementary School ("Sierra Linda"). Declaration of M.E. ("M.E. Decl."), Dkt. 46 ¶ 4. From the beginning of the 2012 school year through April 2013, I.G. attended kindergarten at Emilie Ritchen Elementary School ("Emilie Ritchen"). I.G. Order, Dkt. 46 at 8. I.G. was anxious and upset at school, was chronically absent and when he did attend, his mother regularly removed him from classes before the end of the school day. *Id.* At the request of I.G.'s mother, I.G. was transferred to Sierra Linda in May 2013 when there were approximately five weeks left in the school year. *Id.* The issues that arose while I.G. was enrolled at Emilie Ritchen were no longer present while he was at Sierra Linda, and I.G.'s teacher had no reason to conclude I.G. was in need of referral for special education assessment. *Id.* at 9.

I.G. remained enrolled in Sierra Linda through the first grade, and started second grade there in August 2014. *Id.* at 14. During the first month of that school year, I.G. regularly fell asleep in class and often had angry outbursts. In addition, he regularly missed class, which caused additional adverse effects on his learning and academic performance. *Id.* at 14-15. At this time, I.G.'s mother informed his teacher that I.G. had insomnia. His teacher believed that I.G.'s absences, lethargy and sleeping in class were the result of his insomnia, but improperly concluded that a medical issue such as insomnia could not be a basis for a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

special education assessment. *Id.* at 15, 25. Accordingly, I.G.'s teacher did not make a referral for such an assessment. *Id.* at 15. I.G. attended third grade at Sierra Linda, where he continued to present similar issues, including significant absences, early removals and anxious or frustrated conduct. *Id.* at 17. I.G.'s mother told his third grade teacher these issues were caused by his insomnia. However, the teacher did not agree, and thought that they were the result of I.G.'s poor attendance and his corresponding unusual attachment to his mother. *Id.* at 17. The teacher did not make a referral for a special education assessment.

In September 2016, I.G. filed a due process complaint. *I.G. v. Oxnard Sch. Dist.*, OAH Case No. 2016091036 (Dkt. 46 at 6, Ex. A). The District then offered to provide accommodations for I.G.'s insomnia and anxiety, and to assess whether I.G. should receive services available under the IDEA. *Id.* at 19-25. The conclusions of the assessment included that I.G.'s anxiety disorders caused him to miss approximately a quarter of classroom time since kindergarten, and that this impeded his ability to learn, particularly in mathematics. *Id.* at 18, 22. In November and December 2016, Sierra Linda held IEP meetings. They resulted in the determination that I.G. was eligible for services for emotional disturbance and other health impairments. As a result, specialized academic instruction, counseling services and social work services were among the services offered to I.G. *Id.* at 23-24.

On May 12, 2017, the OAH concluded that the District denied I.G. a FAPE. The basis for this finding was that, as early as November 2014, it had failed to fulfill its Child Find duties under IDEA or refer I.G. for a special education assessment. *Id.* at 7. The OAH ordered the District to provide the following compensatory education services and related relief, all of which are in process:

- 74 hours of school-based, one-on-one specialized instruction outside of the classroom at a rate of one hour per week by the School Resource Specialist (ongoing);
- 37 hours of additional home instruction beyond what is provided in I.G.'s IEP, by a special education teacher, at a rate of one hour per week by STAR-Haynes (ongoing);
- 37 hours of intensive academic instruction through STAR-Haynes (ongoing); and
- An independent educational evaluation to determine if I.G. is an appropriate candidate for cognitive behavior therapy to address his anxiety, with treatment recommendations (ongoing).

*Id.* at 42; Joe Decl. ¶ 10.

The OAH also ordered the District to provide six hours of training to all Sierra Linda general education teaching staff, paraprofessionals, aides, student study team members, school administrators, service providers, counselors, school psychologists, speech and language therapists and any other staff who work with parents and students on their educational programs. Dkt. 46 at 42. The District completed the six hours of training through sessions conducted on August 14, 2017 and August 22, 2017. Joe Decl. ¶ 10.

      D.      Other Students

Plaintiffs have submitted declarations about several students requiring special education and related services -- W.G., E.H., A.V., A.L., E.M., Meli B. and J.M. These students are currently enrolled or were previously enrolled in schools in the District. *See* Dkts. 48-54. Declarations provided by the parents of these students state that each of the students had academic, mental health and other issues in school

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

that were apparent. Thus, the declarants state that teachers and other school employees were aware of these issues. However, the declarants state that these employees did not timely refer each of the students for a special education assessment. The District held SST meetings for some, but not all, of these students. The students allegedly have a wide range of qualifying disabilities, including but not limited to ADHD, emotional disturbances, learning disabilities, autism and speech disorders.

W.G., E.H., A.V., A.L., Meli B. and J.M. each filed individual due process claims against Defendants with the OAH. All of these claims were settled. Joe Decl. ¶¶ 3-8; Dkt. 75, Exs. A-F. Each of these settlements includes a release of claims provision in which the student waived any right to bring subsequent claims under IDEA, ADA and Section 504. Joe Decl. ¶¶ 3-8; Dkt. 75, Exs. A-F.

E.M. is the only student identified in the declarations on behalf of current and former District students filed in support of the Motion who has not filed an administrative action against Defendants.

      E.      Injunctive Relief Requested

Plaintiffs seek an injunction ordering Defendants to comply with the requirements of the IDEA, ADA and Section 504, including but not limited to:

- Reform of policies and procedures within the District;
- Appropriate training for all staff;
- Initiation of new processes for identifying and evaluating those students in need of evaluations; and
- Monitoring by independent experts.

SAC at 34 ¶ 2.

**III.    <u>Analysis</u>**

      A.      Article III Standing

           1.      <u>Legal Standards</u>

Article III, Section 2 of the Constitution limits the federal judicial power to "cases" and "controversies." Accordingly, Article III standing "is a jurisdictional element that must be satisfied prior to class certification." *Nelsen v. King Cty.*, 895 F.2d 1248, 1249 (9th Cir. 1990) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985)). It "requires that a plaintiff show '(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) (citation omitted) (first quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and then quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

To have standing to seek injunctive relief, a plaintiff must show that "he has suffered or is threatened with a concrete and particularized legal harm" and that there is "a sufficient likelihood that he will again be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|----------|--------------------------|------|--------------|
| Title | J.R. v. Oxnard School District, et al. | | |

wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal citations and quotation marks omitted); *see also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (standing to seek injunctive relief requires plaintiffs demonstrate "a real or immediate threat" that defendants will subject plaintiffs to the same alleged wrong). A plaintiff "lack[s] standing to sue for injunctive relief from which she would not likely benefit." *Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates*, 511 F.3d at 985 (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)).

"[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) ("*Or. PDMP*") (emphasis in original) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). "In other words, Article III requires 'a plaintiff [to] demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.* (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

2.   Application

Defendants argue that Plaintiffs do not have standing to assert IDEA claims for declaratory and injunctive relief to mandate systemic reform of the District's policies and procedures. The premise of this contention is that Plaintiffs have been identified as students in need of special education services, assessed for such services and have received or are currently receiving such services pursuant to orders issued or settlement agreements approved by the OAH.[2] Accordingly, Defendants contend that Plaintiffs did not have any injury-in-fact when they commenced this action.

Plaintiffs respond that, when a party prevails in an underlying, required administrative proceeding, it is not precluded from bringing a corresponding civil action if the relief sought in the civil action has not been provided through the administrative process. Thus, although I.G. and M.B. prevailed at the OAH, they contend that the compensatory education they received was not the only relief they sought. They claim that their request for "relief addressing the systemic policy changes at issue for the class" was not provided in the administrative process Dkt. 96 at 10-11. Plaintiffs argue that they will continue to be harmed until the District institutes compliant Child Find processes. *Id.* at 12. Plaintiffs note that, in the I.G. and M.B. orders, the OAH *sua sponte* required that their respective schools provide additional training on IDEA procedures and requirements. Plaintiffs argue that "it is not unusual for the exhausted plaintiffs to have prevailed below" in class actions brought under IDEA. *Id.* at 11.

In support of this argument, Plaintiff cites only *D.L. v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017). *D.L.* was a class action brought under IDEA by parents of three-to-five-year-old students enrolled in public schools in the District of Columbia ("D.C."). Plaintiffs alleged that the D.C. schools had failed to

---

[2] During the hearing, Plaintiffs' counsel stated that certain named Plaintiffs seek individual relief as to the alleged inadequacy of the special education services they have received, but that the class-wide relief is limited to Child Find, and does not extend to the adequacy of services provided once a disability is identified.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|----------|--------------------------|------|--------------|
| Title | J.R. v. Oxnard School District, et al. | | |

identify, locate and evaluate students in need of special education services. They sought systemic reform of Child Find policies and procedures. At the outset of the litigation, the district court noted that four of the seven named plaintiffs had exhausted their respective administrative remedies, and had prevailed in those processes before the class action was filed. 450 F. Supp. 2d 11, 13-14 (D.D.C. 2006). However, the other named plaintiffs had not exhausted their respective administrative remedies. Further, several of the named plaintiffs, including those who had prevailed in the administrative proceedings, complained that D.C. schools continued to fail to meet their Child Find obligations as to their individual needs. *Id.* Accordingly, several of the named plaintiffs in *D.L.* had standing. If a single plaintiff has standing, a class can be certified. Therefore, *D.L.* did not have to consider the standing of the named plaintiffs who had prevailed administratively and were receiving compliant special education services.

Here, all of the Plaintiffs exhausted administrative remedies and either prevailed at the OAH or entered into settlement agreements. Because "Article III requires a plaintiff [to] demonstrate standing . . . for each form of relief that is sought," *Or. PDMP*, 860 F.3d at 1233, the question presented is whether the relief sought in this action would redress an injury-in-fact alleged by Plaintiffs. The SAC alleges, and the OAH orders conclude, that the District failed to meet its Child Find obligations as to Plaintiffs. Thus, Plaintiffs suffered an injury-in-fact that is fairly traceable to the conduct of Defendants. This does not, however, end the inquiry on standing. The requested injunctive relief -- systemic reform of the District's Child Find procedures -- is not responsive to Plaintiffs' alleged injuries. Plaintiffs have not cited any authority to support the proposition that a party, which has been identified and provided remedies by a school district, has standing to assert claims as to Child Find because that party attends a school within the same district.

Plaintiffs indicate that, should it be determined that Plaintiffs lack standing, other students who have neither exhausted administrative remedies nor been provided with a full special education assessment can be added as plaintiffs in an amended complaint. Dkt. 96 at 12; *see* Decl. of O.M. re E.M.; Reply Decl. of I.Z. re B.M.Z., Dkt. 99. However, Plaintiffs acknowledge that adding such plaintiffs would present standing issues because they may not have exhausted their administrative remedies. The exhaustion of administrative remedies is unnecessary only when "resort to the administrative process would be futile or inadequate" or when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Hoeft*, 967 F.2d at 1303. Under these exceptions, a plaintiff seeking "structural, systemic reform" is not required to exhaust the administrative process to have standing to bring a civil action. *Id.* at 1309.

Plaintiffs contend that there is not clear authority in the Ninth Circuit as to what types of relief are sufficient to constitute "structural, systemic reform." As a result, Plaintiffs argue that if new plaintiffs were brought into this action, they may lack standing. Plaintiffs' position fails to address whether there are one or more other potential plaintiffs who have exhausted their respective administrative remedies, but did not prevail in the administrative proceedings.

For the foregoing reasons, the Motion is **DENIED**, without prejudice to Plaintiffs seeking leave to amend the SAC to add one or more plaintiffs who satisfy the standing requirements of Article III. This determination is sufficient to resolve the Motion. However, in the interests of judicial and party efficiency, this Order addresses other relevant issues that are likely to arise if the SAC is amended.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
| Title | J.R. v. Oxnard School District, et al. | | |

B.    Class Certification

1.    <u>Legal Standards</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551. Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194-95 (2013). "Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

The first step in establishing the basis for class certification is for the putative class representatives to show that the proposed class meets each of the four requirements of Fed. R. Civ. P. 23(a). *Wal-Mart*, 131 S. Ct. at 2551; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Those requirements are: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *Wal-Mart*, 131 S. Ct. at 2550. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551.

If these four requirements are met, the next issue is whether the proposed class satisfies at least one of the independent requirements of Fed. R. Civ. P. 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs contend that certification is appropriate pursuant to Rule 23(b)(2). It provides that a class proceeding "may be maintained . . . if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

2.    <u>Application</u>

a)    Requirements of Fed. R. Civ. P. 23(a)

(1)    <u>Numerosity</u>

(a)    Legal Standards

Fed. R. Civ. P. 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). No specific number of members is needed to warrant a class action. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). "However, numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

(b)     Application

Plaintiffs have moved to certify a class of "all students in [the District] who have or may have disabilities and who have been or will be subject to the District's policies and procedures regarding identification and evaluation" regarding special education services. Plaintiffs contend that there are approximately 17,000 students enrolled in the District, all of whom are affected by the Child Find policies that are in place. Peter Leone ("Leone"), who has been engaged as an expert by Plaintiffs, estimates that at least 200 students with qualified disabilities have not been identified by the District as students who are qualified for special education and related services. Dkt. 39 at 31; Declaration of Peter Leone ("Leone Decl."), Dkt. 43 ¶¶ 19-20. Based on a review of enrollment data from the 2014, 2015 and 2016 school years, Leone states that 10.3% to 10.8% of students statewide were enrolled in special education programs, but the range within the District was lower, *i.e.*, 8.5% to 9.4%. *Id.* ¶ 17. Leone opines that if the rates of special education identification in the District were the same as the statewide identification rate, at least 200 additional students in the District would be enrolled in such services. *Id.* ¶¶ 18-19. Leone states that 200 students is a low-end estimate because he did not consider the factors that apply to the District's student population given its demographic composition. *Id.* ¶¶ 19-20.

Defendants contend that Leone's Declaration fails to meet the standards under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In support of this position they claim that he has drawn improper inferences from the data that he considered. These include the following: (i) Leone assumes that any school district which has a special education enrollment below the state average is under-identifying students with disabilities; (ii) Leone fails to consider any reasons other than the District's Child Find policies that might explain its enrollment level in special education programs; (iii) Leone provides no factual basis to support the opinion that the District's policies and procedures have resulted in the over- or under-identification of students with disabilities; and (iv) Leone failed to consider other explanations for the relative number of District students who have been identified as having disabilities. Dkt. 62 at 20-22.

Plaintiffs respond through Leone. He states that he applied "relative risk analysis," which is "a commonly used means of measuring disproportionate placement in special education," including by both the California Department of Education and U.S. Department of Education. Its purpose is to determine whether students are vulnerable to patterns of under-identification. Reply Declaration of Peter Leone ("Reply Leone Decl."), Dkt. 98 ¶¶ 4, 6. Leone adds that other factors may account for differences in identification rates across school districts. However, they are insufficient to account for the District's consistent, year-to-year identification rates that are lower than those across California. *Id.* ¶ 8.

Leone's opinions are admissible under Rule 702. Leone's declarations provide a sufficient basis to support his expertise and methodology. Therefore, they provide a basis to conclude that least 40 students are in the putative class. Other evidence also supports this conclusion. Declarations submitted by Defendants show that dozens of District students with disabilities did not timely receive a special education assessment; some never received one. *See* Santamaria Decl. ¶ 14 (approximately 15 students have been referred for special education assessments this year based on the SST process); Fox Decl. ¶ 12 (13 students have been referred for special education assessments this year based on the SST process); Serrano Decl. ¶ 16 (24 students have entered the COST/SST process over the past year and seven are being assessed for special education eligibility). E.M is also a member of the putative class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

The declaration of Tara Austin Scott, who is a teacher in the District, identifies another several students with disabilities who have not received timely assessments. Declaration of Tara Austin Scott ("Scott Decl."), Dkt. 56. This evidence supports the conclusion that the proposed class has at least 40 members.

(2)   Commonality

(a)   Legal Standards

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks omitted). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* For the purposes of commonality, "even a single common question will do." *Id.* at 2556 (internal markings omitted).

"[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Amgen*, 133 S. Ct. at 1194-95). In a civil-rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong*, 275 F.3d at. "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*

(b)   Application

Plaintiffs contend that the District has inadequate policies and procedures with respect to identifying, locating and then evaluating students with disabilities. Plaintiffs argue that these are common issues that can be resolved by changing the Child Find policies and procedures of the District. Defendants respond that Plaintiffs' claims are highly individualized. For example, Defendants note that each named Plaintiff suffers from different disabilities and has experienced a different alleged harm. Thus, J.R was subject to a series of SST meetings, but not assessed; M.B. was subject to a series of SST meetings and was ultimately assessed, although he contends that assessment was deficient; and I.G. was not subject to SST and was not assessed. Dkt. 62 at 26.

Defendants' position is unpersuasive. Plaintiffs do not propose an adjudication of every alleged failure to satisfy Child Find obligations on a case-by-case basis, including as to the condition of the student. Rather, they challenge system-wide policies and procedures that allegedly harm all putative class members. They seek common, adequate procedures to ensure that all of those who qualify are evaluated. This is consistent with *Parsons*. There, the Ninth Circuit affirmed the certification of class of prisoners in California who alleged systemic deficiencies in the conditions of their confinement. This included allegedly inadequate or improper isolation cells as well as inadequate medical, dental and mental health services. *Parsons*, 754 F.3d at 662. The defendants described the plaintiffs' claims as "little more than an aggregation of many claims of individual mistreatment." *Id.* at 676. *Parsons* held that this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|----------|--------------------------|------|--------------|
| Title | J.R. v. Oxnard School District, et al. | | |

description, "rests upon a misunderstanding of the plaintiffs' allegations" because "[t]he complaint does not allege that the care provided on any particular occasion to any particular inmate . . . was insufficient, but rather that [prison] policies and practices of statewide and systemic application expose all inmates in [prison] custody to a substantial risk of serious harm." *Id.*

In *Armstrong*, a putative class of disabled prisoners and parolees alleged that the state parole authority failed to provide them with adequate accommodations at certain parole hearings. 275 F.3d at 854. The parole authority argued that there was no commonality given the variation in the nature of the disabilities of the class members. *Id.* at 868. The Ninth Circuit rejected this position, explaining that "individual factual differences among the individual litigants . . . will not preclude a finding of commonality" because "the differences that exist here do not justify requiring groups of persons with different disabilities, all of whom suffer similar harm from the Board's failure to accommodate their disabilities, to prosecute separate actions." *Id.*

*D.L.*, does not warrant a different outcome. The putative class there was comprised of "[a]ll children [between three and five] who are or may be eligible for special education and related services, who live in, or wards of, the District of Columbia" and whom the District of Columbia had failed or would fail to "identify, locate, evaluate or offer special education and related services." The class was certified by the district court. *D.L.*, 860 F.3d 713, 718 (quoting 237 F.R.D. 319, 324-25 (D.D.C. 2006)). *D.L.* vacated certification in light of *Wal-Mart*, holding that a class defined only by reference "to the District's pattern and practice of failing to provide FAPEs speaks too broadly because it constitutes only an allegation that the class members 'have all suffered a violation of the same provision of law.'" 713 F.3d 120, 121 (D.C. Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 530). In light of that ruling, the district court certified, *inter alia*, the following distinct sub-classes: (i) disabled three-to-five-year-olds whom D.C. failed to identify as in need of special education and related services; (ii) disabled three-to-five-year-olds whom D.C. failed to give a timely evaluation; and (iii) disabled three-to-five-year-olds to whom D.C. failed to offer a timely determination of eligibility for special education and related services. 302 F.R.D. 1, 18 (D.D.C. 2013). These sub-class certifications were affirmed because each involved a "common harm" curable by a "single injunction." 860 F.3d at 724. The same reasoning applies here.

For the foregoing reasons, the commonality requirement has been satisfied as to the current named plaintiffs and the proposed class.[3] However, any amended complaint proposed by Plaintiffs should adequately address the distinctions among certain class members, including whether their alleged injuries arise from a delay in a special education assessment or the failure to provide one. Whether the same outcome will be warranted as to an amended complaint with different named plaintiffs will be assessed based on such allegations, something that cannot be determined at this time.

---

[3] Defendants rely on *Jamie S v. Milwaukee Pub. Schs.*, 668 F.3d 481 (7th Cir. 2012), which rejected a putative class definition substantially similar to the one proposed here. *Jamie S* vacated the certification of a class of students eligible to receive special education. That class was comprised of students who were, had been or would be denied access into the IEP process due to the applicable Child Find policies. However, *Jamie S* concluded that "the IDEA claims in this case highly individualized and vastly diverse, making this case unsuitable for class-action treatment." *Id.* at 485-86. *Jamie S* is not controlling in light of *Parsons* and *Armstrong*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

(3)     Typicality

(a)     Legal Standards

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defense of the representative parties" be "typical of the claims or defenses of the class." This requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Representative claims "need not be substantially identical." *Id.* The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

(b)     Application

Plaintiffs contend that their claims are typical of those of all members of the putative class because they arise from inadequate policies and procedures. Plaintiffs contend that, although each of them exhibited signs of disability and had ongoing and severe problems at school, none was evaluated adequately or in a timely manner. Dkt. 39 at 34. Because these experiences mirror those of the putative class members under the class definition, the typicality requirement is met. Whether the same outcome will be warranted after considering an amended complaint with different named plaintiffs cannot be determined at this time.

(4)     Adequacy of Legal Representation

Because the adequacy of the current Plaintiffs as class representatives is independent of that assessment as to the new plaintiffs named in an amended complaint, this factor is not addressed.

3.     Requirements of Fed. R. Civ. P. 23(b)(2)

a)     Legal Standards

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)); *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("As the Advisory Committee Notes explain, Rule 23(b)(2) was adopted in order to permit the prosecution of civil rights actions."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights.").

The requirement of Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *accord Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


| Case No. | LA CV17-04304 JAK (FFMx) | Date | June 6, 2018 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

b)    Application

Defendants do not argue that the standards of Fed. R. Civ. P. 23(b)(2) have not been satisfied. Plaintiffs challenge the policies and practices regarding identifying, locating and evaluating students with disabilities. These are issues that apply to all class members. Consequently, injunctive and/or declaratory relief can properly address them. *See Parsons*, 754 F.3d at 689 ("Contrary to the defendants' assertion that each inmate's alleged injury is amenable only to individualized remedy, every inmate in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in statewide [prison] policy and practice").

C.    Ascertainability

The Ninth Circuit has not expressly addressed whether this requirement applies to a proposed class under Rule 23(b)(2). However, some district courts concluded that "the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 596-97 (N.D. Cal. 2015) (quoting *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-CV-2907, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014)). The purpose of this requirement is to provide procedural safeguards for class members who must be located and contacted about the opportunity to opt out of the class. *Id.* at 597. However, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (citing *Wal-Mart*, 131 S. Ct. at 2557 (internal quotation marks omitted)).

Other Circuits as well as district courts in the Ninth Circuit have concluded that ascertainability is not required to warrant the certification of a Rule 23(b)(2) class. *See e.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many . . . other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief . . . ."). The analysis presented in these cases is persuasive and adopted.[4]

///

---

[4] Further, even if ascertainability were a requirement under Rule 23(b)(2), putative class members here may be readily identifiable. A review of the records of the District should name those students who were considered in the SST and COST processes and then were assessed and found to have had learning disabilities that warranted special education services. However, because the parties did not dispute this issue, and no such evidence has been presented, the issue is not addressed conclusively in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | | Date | June 6, 2018 |
|---|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | | |

**IV.**  **Conclusion**

For the reasons stated in this Order, the Motion and motion for leave to file an amended complaint are **DENIED**. These rulings are without prejudice to Plaintiffs filing a renewed motion for leave to amend the current complaint.

**IT IS SO ORDERED.**

:

Initials of Preparer          ak