UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
| Title | J.R. v. Oxnard School District, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Present |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION (DKT. 150); DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) OR IN THE ALTERNATIVE 12(B)(6) (DKT. 163)

**I.      Introduction**

Plaintiff J.R., who is a minor, brought this action through a guardian ad litem, advancing individual claims for alleged violations of certain disability rights. Complaint, Dkt. 1 The Complaint names the following defendants: the Oxnard School District ("OSD" or the "District") and Cesar Morales, Ernest Morrison, Debra Cordes, Denis O'Leary, Veronica Robles-Solis and Monica Madrigal Lopez in their official capacity only (collectively, "Defendants"). *Id.* In an amended complaint, J.R. and two other minors, M.B. and I.G., each acting through a guardian ad litem, presented class action allegations for which each was a proposed class representative. First Amended Complaint ("FAC"), Dkt. 14. The plaintiffs then filed a second amended complaint. Second Amended Complaint ("SAC"), Dkt. 36. However, there were certain deficiencies on the face of the SAC with respect to whether the named plaintiffs had Article III standing as to the claims for declaratory and injunctive relief. Dkt. 128. Accordingly, the parties stipulated to the filing of a third amended complaint in which the plaintiffs would seek to address that issue. Dkt. 142.

On November 12, 2018, the plaintiffs filed a third amended complaint, which is the operative one. Third Amended Complaint ("TAC"), Dkt. 145. The TAC added several new named plaintiffs: the organization Primero Los Ninos and four new minors, F.S., I.H., W.H. and I.B., each acting through a guardian ad litem. *Id.*[1] The TAC alleges that the policies and procedures of the District for addressing the needs of students with potential disabilities and for assessing such students are insufficient. One basis for this claim is that these policies and procedures do not include the timely and adequate referral of students for special education assessments as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 14000 *et seq.*, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*

The TAC defines the proposed class as follows:

---
[1] This Order refers to all named plaintiffs, *i.e.*, J.R., M.B., I.G., F.S., I.H., W.H., I.B. and Primero Los Ninos, collectively, as "Plaintiffs."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

> [A]ll students in Oxnard School District who have or may have disabilities and who have been or will be subject to the District's policies and procedures regarding identification and evaluation of students for purposes of providing services or accommodations under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

TAC ¶ 198.

J.R. is a 14-year-old, ninth grade student with severe expressive and receptive language disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). *Id.* ¶¶ 20, 39. M.B. is an 11-year-old, sixth grade student with the same conditions. *Id.* ¶¶ 21, 64. I.G. is an 11-year-old, sixth grade student with anxiety disorder and insomnia. *Id.* ¶¶ 22, 104. F.S. is a nine-year-old,[2] fourth grade student who has "catastrophically low" academic performance, speech and language impairments, and a suspected attentional disability. *Id.* ¶ 23, 146-48, 150. I.H. is an eight-year-old, third grade student with speech and language impairments, ADHD and disruptive disorder, and autism. *Id.* ¶ 24, 163, 168. W.H. is an eight-year-old, second grade student with expressive language delay; deficits in phonological processing, auditory comprehension and attention; and a learning disability. *Id.* ¶ 25, 169, 171, 174. I.B. is a nine-year-old, fourth grade student with issues of memory, attention, executive functioning, and auditory processing. *Id.* ¶ 26, 177, 180. Primero Los Ninos is an organization whose members are the parents of children with disabilities and/or difficulties learning English who are enrolled in the Oxnard School District. *Id.* ¶ 27. The TAC alleges that each of the Plaintiffs requires special education services under the IDEA, and that each is a qualified individual with a disability as defined by Section 504, 29 U.S.C. § 705(20), and the ADA, 42 U.S.C. § 12102. *Id.* ¶¶ 20-26.

The TAC alleges that Defendants have failed, and continue to fail to identify, evaluate and provide services and accommodations with respect to Plaintiffs and others who are similarly situated. *Id.* ¶ 19. Based on those allegations, the TAC advances three causes of action for separate, claimed violations of the following statutes: (i) Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*; (ii) Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*; and (iii) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Plaintiffs seek to certify the proposed class as to all three causes of action.

On November 22, 2017, Plaintiffs filed a first motion for class certification. It was denied based on a determination that the Plaintiffs lacked necessary Article III standing. Dkts. 39, 128. However, the denial was without prejudice to Plaintiffs seeking leave to amend the SAC to add one or more plaintiffs who would have standing under Article III. Dkt. 128 at 10. After the filing of the TAC, on November 26, 2018, Plaintiffs filed a new motion for class certification ("Motion for Class Certification"). Dkt. 150.[3] The Motion for Class Certification seeks the following: (i) certification of the proposed class claims as a class action

---

[2] Paragraph 132 of the TAC erroneously states that F.S. is eight years old. However, the TAC previously describes F.S. as a nine-year-old student, and the declaration of her mother confirms her age at nine. TAC ¶ 23; Declaration of E.L., Dkt. 157 ¶ 2.
[3] Plaintiffs base the Motion for Class Certification on several new submissions as well as their previous filings from the first motion for motion for class certification. *See* Dkt. 150 at 2-3. Accordingly, those filings, including the declarations filed in support of the prior motion, are considered in connection with the new motion for class certification which is addressed in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

under Fed. R. Civ. P. 23(b)(2); (ii) appointment of Plaintiffs I.H., F.S., W.H., I.B., and Primero Los Ninos as class representatives; and (iii) appointment of the Learning Rights Law Center, the Law Office of Shawna L. Parks, and Disability Rights Advocates as class counsel. *Id.* at 2. Defendants filed an opposition to the Motion for Class Certification, and Plaintiffs filed a reply. Dkts. 169, 178.[4] On the same date, Defendants filed a motion to dismiss the TAC pursuant to Fed. R. Civ. P 12(b)(1) or 12(b)(6) ("Motion to Dismiss"). Dkt. 163. Defendants seek dismissal of the class claims and the requests for prospective injunctive relief, but do not move to dismiss the named plaintiffs' individual, non-systemic claims. *Id.* at 2. Plaintiffs filed an opposition, and Defendants filed a reply. Dkts. 168, 177.

A hearing was held on these motions on February 4, 2019, and the matters were taken under submission. For the reasons stated in this Order, the Motion for Class Certification is **DENIED** without prejudice, and the Motion to Dismiss is **GRANTED** without prejudice.

**II.     Background**

       A.     IDEA, ADA and Section 504

Under the IDEA, school districts that receive federal funding, including the District, are required to provide a "Free Appropriate Public Education" ("FAPE") to all students with disabilities. 20 U.S.C. §§ 1412(a)(1), 1412(b), 1413(a). A FAPE includes special education and related services that conform to the curriculum standards set by the state. It must also conform with each student's Individualized Education Plan ("IEP"). 20 U.S.C. § 1401(9). Special education is "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29).

To be eligible under the IDEA, a child must have a qualifying disability. These include a speech or language impairment, emotional disturbance, orthopedic impairment and autism. The student must also show that, as a result of this disability, he or she requires special education and related services. 20 U.S.C. §§ 1401(3), 1414(b)(4)(A). To comply with these requirements, districts must have in effect policies and procedures sufficient to ensure that all students in need of special education and related services are "identified, located, . . . evaluated and" provided an IEP. 20 U.S.C. § 1412(a)(3)(A); *see also* 20 U.S.C. §§ 1412(a)(1), 1412(a)(4)-(7), 1413(a)(1), 1414(a)-(e); 34 C.F.R. §§ 300.111, 300.301, 300.304-311; *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1110 (9th Cir. 2016). A school district has a duty to evaluate a student after receiving notice that he or she may have a covered disability. *JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 794 (9th Cir. 2008). This process is called "Child Find." 20 U.S.C. § 1412(a)(3).

IDEA requires that the local education agency "ensure that . . . the child is assessed in all areas of suspected disability." 20 U.S.C. § 1414(b)(3)(B). Thus, "if a school district is on notice that a child may have a particular disorder, it *must* assess that child for that disorder, regardless of the subjective views of its staff members concerning the likely outcome of such an assessment." *Timothy O.*, 822 F.3d at 1121. In addition, if a parent disagrees with the evaluation of a child obtained by the school district, the parent can request an "independent educational evaluation" at public expense. 34 C.F.R. § 300.502(b)(1). The results of such an evaluation "[m]ust be considered . . . in any decision made with respect to the provision

---

[4] Plaintiffs and Defendants each filed evidentiary objections in connection with the Motion. Dkts. 180, 190. They are addressed in separate Orders. Dkts. 205, 206.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

of FAPE to the child." 34 C.F.R. § 300.502(c)(1).

When a school proposes to change the identification, evaluation or educational placement of a student, or fails to make such a change, the parents "have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). In California, the due process hearing is conducted by an Administrative Law Judge ("ALJ") in the California Office of Administrative Hearings ("OAH"). A "party aggrieved by the findings and decision" of the state agency "shall have the right to bring a civil action with respect to the complaint [adjudicated in the due process hearing]." 20 U.S.C. § 1415(i)(2)(A).

Although there are certain exceptions, in general completing the administrative process is a prerequisite to filing a civil action. 20 U.S.C. § 1415(l). The exhaustion of such administrative remedies is not required when "resort to the administrative process would be futile or inadequate," or when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303-04 (9th Cir. 1992) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). "Administrative remedies are generally inadequate where structural, systemic reforms are sought." *Id.* at 1309. "[A] claim is 'systemic' if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Doe By & Through Brockhuis v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997). The Ninth Circuit has read the exhaustion requirement of IDEA to "appl[y] differently to class actions than to suits brought by individuals, inasmuch as each class member need not exhaust before a suit is brought." *Hoeft,* 967 F.2d at 1309.

B.   The District's Policies and Procedures

When a parent or teacher requests that a student be assessed for possible disabilities, the District initiates its pre-referral process. That process uses Student Support Teams ("SST") and Coordination of Services Teams ("COST"). A COST is a group of school administrators and teachers that conducts the first review of the potential needs of a student. Dkt. 62 at 10. A COST often is comprised of a school principal, counselor, school psychologist, outreach coordinator, resource specialist, Teacher on Special Assignment ("TOSA") and/or, on occasion, the student's teacher. Declaration of Andres Santamaria ("Santamaria Decl."), Dkt. 68 ¶ 11; Declaration of Bertha M. Anguiano ("Anguiano Decl."), Dkt. 69 ¶ 9; Declaration of Aracely Fox ("Fox Decl."), Dkt. 67 ¶ 7; Declaration of Carmen Serrano ("Serrano Decl."), Dkt. 70 ¶ 13; Declaration of Marlene Breitenbach ("Breitenbach Decl."), Dkt. 72 ¶ 9; Declaration of Sally Wennes ("Wennes Decl."), Dkt. 73 ¶ 8. If a COST determines that a student warrants an assessment, it may make a direct referral for that process. Santamaria Decl. ¶ 12.

An SST is formed if the COST determines that more information is needed to address a possible concern about the needs of the student. Fox Decl. ¶¶ 8-10; Anguiano Decl. ¶ 8; Serrano Decl. ¶ 14; Breitenbach Decl. ¶ 10; Wennes Decl. ¶¶ 9-10. The SST includes the members of the COST as well as the parent, the student's teacher (if not already part of the COST) and other specialists. It may also include the student. Fox Decl. ¶ 7; Anguiano Decl. ¶ 10; Serrano Decl. ¶ 11; Breitenbach Decl. ¶ 6; Wennes Decl. ¶ 10. The SST may recommend additional classroom interventions or services, as well as a follow up meeting in six

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

to eight weeks to evaluate any progress by the student. Santamaria Decl. ¶ 13. The SST may also determine that a student should be referred for a special education assessment, and then facilitate it. The SST may make this determination either after its initial meeting, or upon the completion of any intervention recommended in that meeting.

Plaintiffs contend that by using the COST and SST processes instead of full special education assessments, the District violated the IDEA. They also contend that, even when such full assessments are initiated, they not meet the statutory requirements because of the undue delay caused by the COST and SST processes. It is also alleged that the District violated the statutes when it failed to take any action to evaluate certain students. *See, e.g.*, Declaration of L.O. re A.V., Dkt. 50 (no SST meetings or assessments were conducted during a several-year period); Declaration of M.A. re E.H., Dkt. 49 (no SST meetings or assessments during a two-year period); Declaration of O.M. re E.M., Dkt. 52 (no SST meetings or assessments during a four-year period). It is further alleged that, even when the District conducts assessments, it fails to assess students in all areas of suspected disability.

    C.    Named Plaintiffs' Educational History Within the District

        1.    <u>Current Proposed Class Representatives</u>

            a)    I.H.

I.H. is an eight-year-old student who is in the third grade. TAC ¶ 24. I.H. lives within the Oxnard School District, but is not currently placed at one of its schools. *Id.*; Declaration of C.C. ("C.C. Decl.), Dkt. 154 ¶ 2. I.H. attended Rose Avenue School for kindergarten and first grade. C.C. Decl. ¶ 13; Dkt. 151, Exs. 1-2. I.H. transferred to Cesar Chavez Elementary School for second grade, until he was moved to an interim education placement at CASA Pacifica Nonpublic School following an incident in which his behavior was placed at issue. C.C. Decl. ¶ 13, 23. Since kindergarten, I.H. exhibited behavioral issues that affected his academic performance and ability to participate in the classroom. C.C. Decl. ¶¶ 4, 8, 10, 12; Dkt. 151, Ex. 3. He also experienced others having difficulty understanding him, and had trouble with his attention and focus at school. C.C. Decl. ¶ 4; Dkt. 151, Ex. 3. He received poor grades, and his teacher described his school performance as "extremely low in all academic areas." C.C. Decl. ¶ 6; Dkt. 151, Exs. 1, 2; Dkt. 151, Ex. 8 at 14. In first and second grade, I.H. had repeated outbursts, including throwing chairs and other objects, hitting other students and staff, using profane language and running out of class. Dkt. 151, Exs. 4-7, 10. Over the course of one year, I.H. was suspended from school seven times. C.C. Decl. ¶ 19. On one occasion, the police were called in response to conduct by I.H. *Id.* ¶ 10.

The District responded to I.H.'s challenges with a series of SST meetings. The District held an initial SST meeting in February 2016. C.C. Decl. ¶ 5; Dkt. 151, Ex. 3. It held three additional SST meetings concerning I.H. over the next year and a half. C.C. Decl. ¶¶ 7-12; Dkt. 151, Exs. 4-6. I.H. was also referred to counseling at a community clinic. C.C. Decl. ¶ 8; Dkt. 151, Exs. 5-6. On May 10, 2017, I.H.'s mother requested a 504 Plan for I.H., although she mistakenly thought her request also constituted a request for a special education assessment. C.C. Decl. ¶ 11. The next week, the District held its fourth SST meeting. *Id.* ¶ 12. The District agreed to conduct a special education assessment of I.H. *Id.* ¶ 12. The District provided I.H.'s mother with an assessment plan, which I.H.'s mother signed and returned. *Id.* ¶¶ 12-14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

In November 2017, prior to performance of the assessment, I.H.'s mother had stated her view that I.H. might have autism. *Id.* ¶ 15. The initial assessment of I.H. was completed on January 10, 2018. *Id.* ¶ 16; Dkt. 151, Ex. 8. However, it is alleged that the assessment of I.H. was deficient in that it did not assess him for autism.[5] TAC ¶¶ 10, 163, 167. Following the assessment, the District found I.H. eligible for certain special education services under the categories of "Speech and Language Impairment" and "Other Health Impairment," "apparently due to his diagnoses of ADHD and disruptive disorder." C.C. Decl. ¶ 18; TAC ¶¶ 163. In February 2018, I.H.'s mother requested an independent autism evaluation for I.H. C.C. Decl. ¶ 22. In response, Dr. Betty Freeman conducted the independent evaluation of I.H. and made a diagnosis of autism. *Id.* ¶ 25; Dkt. 151, Ex. 9. The District has not "accepted" Dr. Freeman's autism diagnosis. C.C. Decl. ¶ 26.

On August 17, 2018, I.H.'s mother filed a due process complaint with the OAH on his behalf. *I.H. v. Oxnard Sch. Dist.*, OAH Case No. 2018080844. On October 4, 2018, an administrative hearing commenced as to the complaint brought by I.H. A written decision issued on December 18, 2018. The OAH decision determined that the District had violated its Child Find duties by failing to assess I.H. from October 25, 2016 to May 31, 2017, when the District sent an assessment plan to I.H.'s parents. Dkt. 196-1 at 45. However, it determined that I.H. "did not prove [the District] failed to assess [him] for autism" and for this reason did not find an additional violation after that time. *Id.* The OAH decision also determined that the District had denied I.H. a FAPE and failed to comply with certain of its IEP duties. *Id.* at 2-3. The OAH ordered that certain remedies be provided to I.H., including a new, independent psychoeducational assessment, an independent functional behavior assessment and an educationally-related social emotional services assessment. *Id.* at 54-55. The parties were further ordered to convene an IEP meeting to develop an interim educational placement for I.H. and to provide I.H. with 100 hours of intensive academic instruction and speech/language therapy as compensatory education. *Id.* at 55.

    b)  F.S.

F.S. is a nine-year-old student enrolled at Brekke Elementary School. Declaration of E.L. ("E.L. Decl."), Dkt. 157 ¶¶ 2, 4. She is currently in the fourth grade. *Id.* ¶ 4. In first and second grade, F.S. received very low grades and test scores. Dkt. 151, Exs. 14-17. In second grade, she received failing grades in all subjects. Dkt. 151, Ex. 15. In third grade, F.S. began receiving reading help before school. E.L. Decl. ¶ 8. However, her reading skills remained deficient, and she continued to fail English. *Id.* ¶ 9. F.S.'s mother noticed that her Spanish skills were deficient as well, that she did not play with other children, and that she had trouble with attention and focus. *Id.* ¶ 10. F.S.'s mother spoke with F.S.'s teacher about these concerns. *Id.* The school responded by convening an SST meeting concerning F.S. in February 2018. *Id.* ¶ 11; Dkt. 151, Ex. 18. F.S.'s mother explained that she was worried about F.S.'s language facility and academic performance. E.L. Decl. ¶ 11. The school offered interventions to target certain of F.S.'s challenges, but did not conduct an assessment. *Id.* ¶ 12.

---

[5] In the TAC, the pending motions, and the declaration of I.H.'s mother, Plaintiffs contend that I.H. was not assessed for autism. However, the basis for this conclusion is not apparent. The documents about the assessment state that I.H. was assessed for autism pursuant to the Childhood Autism Rating Scale-2 (CARS2), although the assessment did not result in a diagnosis of autism. Dkt. 151, Ex. 8. In the administrative process, the OAH similarly concluded that I.H. "did not prove Oxnard failed to assess Student for autism." Dkt. 196-1 at 45.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

In May 2018, F.S.'s mother submitted a request for an assessment of F.S.'s special education needs to the school. *Id.* ¶ 13. Several days later, the school held another SST meeting concerning F.S. *Id.* ¶ 14. F.S.'s mother again expressed her concerns about F.S.'s lack of progress. *Id.* At some point after the meeting, the school gave F.S.'s mother an assessment plan. *Id.* F.S.'s mother signed the assessment plan, although she declares that she did not understand what type of evaluation would be completed. *Id.*

On August 30, 2018, F.S.'s mother filed a due process complaint on behalf of F.S. with the OAH, because the District had failed to conduct an assessment. *F.S. v. Oxnard Sch. Dist.*, OAH Case No. 2018090070. Dkt. 151, Ex. 37. On October 9, 2018, the District completed its assessment of F.S. E.L. Decl. ¶ 16; Dkt. 151, Ex. 21. The assessment indicated that certain language, attentional and emotional issues were having adverse effects on F.S.'s learning ability. Dkt. 151, Ex. 21. The District held an IEP meeting at which it was determined that F.S. was eligible for services due to a specific learning disability and speech and language impairments. TAC ¶ 148, E.L. Decl. ¶ 16. The TAC alleges that a medical assessment of F.S.'s attentional issues should have been, but was not, conducted. TAC ¶¶ 147, 150; *see also* E.L. Decl. ¶ 19.[6]

At the OAH hearing as to the complaint by F.S., the District stipulated that it should have identified F.S. for evaluation for special education services as of October 31, 2016, approximately two years prior to the date of F.S.'s assessment. Dkt. 151, Ex. 23.

c) W.H.

W.H. is an eight-year-old student enrolled at Marshall Elementary School. Declaration of E.P. ("E.P. Decl."), Dkt 187 ¶¶ 2, 4. She is currently in the second grade. *Id.* ¶ 4. She continues to have low academic performance. *Id.* ¶ 16. Soon after W.H. began kindergarten, her mother noticed that she had difficulty learning to read, write and use language. *Id.* ¶ 5. In September 2016, W.H.'s mother requested that W.H. be assessed for special education. *Id.* ¶ 7. The District created an assessment plan, which W.H.'s mother reviewed and signed on October 14, 2016. *Id.* On December 6, 2016, the District completed its assessment of W.H. *Id.* ¶ 8; Dkt. 151, Ex. 31. Shortly thereafter, the District held an IEP meeting at which it informed W.H.'s mother than W.H. was not eligible for special education services. E.P. Decl. ¶ 9. Two additional IEP meetings were held concerning W.H. in February and May 2017. *Id.* W.H. was still not found eligible for special education services. *Id.* ¶¶ 9-10.

W.H.'s parents disagreed with the District's determination and requested an independent assessment. *Id.* ¶ 10. The District agreed to fund independent evaluations by a neuropsychologist and a speech pathologist. *Id.* The evaluations were completed by January 2018. *Id.* ¶ 11; Dkt. 151, Exs. 32-33. Each evaluator determined that W.H. had certain disabilities and recommended services/accommodations to address them. *Id.* The District held two further IEP meetings in March and April 2018, at which these evaluations were discussed. E.P. Decl. ¶ 12. The District informed W.H.'s mother that it disagreed with the findings of the two new assessments. *Id.* It continued to find W.H. ineligible for special education. *Id.* However, it provided Section 504 accommodations for W.H. *Id.* ¶ 13.

---

[6] The District's assessment considered the attention-related issues of F.S. *See* Dkt. 151, Ex. 21. However, Plaintiffs argue that the District should have conducted a "medical assessment" of these issues, and that the assessment was insufficiently thorough as to them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
| Title | J.R. v. Oxnard School District, et al. | | |

W.H.'s mother remained dissatisfied with the District's determinations and requested a third independent assessment of W.H. *Id.* ¶ 14. That assessment was completed on October 14, 2018. *Id.*; Dkt. 151, Ex. 34. It stated as a "recommendation" that W.H. "meets IDEA . . . criteria for Specific Learning Disability." Dkt. 151, Ex. 34. W.H.'s mother attended an IEP meeting on November 16, 2018 to discuss the latest assessment of W.H. E.P. Decl. ¶ 17. She declares that "[i]t is [her] understanding that [W.H.] will be eligible for special education because of a specific learning disability[,] [b]ut, the IEP was not finished and [W.H.] continues not to have the help through special education." *Id.*

d) I.B.

I.B. is a nine-year-old student enrolled at Driffil Elementary School. Declaration of F.B. ("F.B. Decl."), Dkt. 156 ¶ 2, 4. He is currently in the fourth grade. *Id.* ¶ 4. I.B. received low grades throughout elementary school. *Id.* ¶ 5. His mother also noticed that he had difficulty focusing, and she told those at his school about her concerns. *Id.* ¶¶ 5, 8. In April 2018, I.B.'s mother requested a special education assessment of her son. *Id.* ¶ 7. The school presented her with an assessment plan, which she signed at the end of April. *Id.* The District completed an assessment of I.B. in June 2018. *Id.*; Dkt. 151, Ex. 29. However, the TAC alleges that the assessment was deficient because it "failed to identify I.B.'s disabling conditions or fully evaluate for attention, behavior, and other learning disabilities."[7] TAC ¶ 180. Similarly, I.B.'s mother declares that the District did not, but should have, fully evaluated I.B.'s attention and behavioral disorders. F.B. Decl. ¶¶ 8-9.

In September 2018, the District convened an IEP meeting concerning I.B. *Id.* ¶¶ 9-10. Based on the meeting, the District determined that I.B. did not qualify for special education services. *Id.* I.B.'s parents disagreed with the District's conclusion and requested an independent assessment of I.B. *Id.* The District agreed to an independent assessment. *Id.* ¶ 10. However, the independent assessment had not been initiated as of the filing of the TAC. *Id.* ¶ 11.

e) Primero Los Ninos

Primero Los Ninos ("PLN") is an organization whose members are parents of children with disabilities and/or difficulties learning English who attend school in the Oxnard School District. First Declaration of Claudia Mercado ("First Mercado Decl."), Dkt. 162 ¶ 2. It was founded in 2014 for the purpose of "help[ing] parents of children with disabilities and/or difficulties learning English understand their rights and how to advocate for their children in light of the District's failure to address the needs of such students." *Id.*; TAC ¶ 17. At any given time, there are usually 15-20 families involved in the organization. *Id.* Its members include the parents of W.H. and I.B. Second Declaration of Claudia Mercado ("Second Mercado Decl."), Dkt. 179 ¶ 4; F.B. Decl. ¶ 12; E.P. Decl. ¶ 6. Plaintiffs estimate that at least 20 PLN members have been affected by the District's allegedly unlawful Child Find policies. TAC ¶ 191; First Mercado Decl. ¶ 17.

The mission of PLN is to "ensur[e] that children in the District have appropriate educational services." First Mercado Decl. ¶ 11. At PLN meetings, members "typically discuss common concerns affecting our children's education and options for addressing those concerns." *Id.* ¶ 4. The organization "provide[s]

---

[7] The assessment did consider attentional and behavioral issues of I.B. *See* Dkt. 151, Ex. 29. It appears that Plaintiffs' contention is that these issues were not fully and thoroughly evaluated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

parents with educational information about their rights as well as the procedures for filing complaints on a variety of issues, including special education, language access and school conditions' issues." *Id.*

Due to District's policies, the organization allegedly has expended "significant amounts of time and resources" on "fielding questions and complaints and seeking out referrals and options for advocacy regarding the District's failure to identify and serve the needs of children with Disabilities." *Id.* ¶¶ 13, 16. It has also expended resources making related public records requests and hosting events to assist parents who "have been unable to secure special education assessments from the District." *Id.* ¶¶ 14-15.

    2.    <u>Previous Proposed Class Representatives</u>

        a)    J.R.

J.R. is currently a student in the Oxnard Union High School District. TAC ¶ 20. Previously she was enrolled in the Haydoc Academy of Arts and Sciences ("Haydoc"), *id.*, and prior to that in Kamala Elementary School from kindergarten through the sixth grade. Declaration of M.A. ("M.A. Decl."), Dkt. 45 ¶ 4. During her first few years of elementary school, her performance reflected difficulty in understanding new concepts. TAC ¶¶ 40-41. It also showed that she was easily distracted, needed support in certain subjects and received low grades in several classes, including mathematics. Dkt. 150 at 20; *see* Dkt. 45, Exs. A-E. In fifth grade, J.R. received low grades in mathematics and other classes, and her report card noted that she had difficulty understanding new concepts. Dkt. 45, Ex. F. Her fifth grade teacher expressed concern about her performance and facilitated an SST meeting on May 11, 2015. Dkt. 45, Ex. G. During this meeting, the District concluded that J.R. had problems with reading, comprehension, social interactions and peer relations. *Id.* However, it did not evaluate J.R. for special education services. Dkt. 150 at 20. In sixth grade, J.R. regressed in her performance in speaking, reading, listening and mathematics. Dkt. 45, Exs. H, J. In February 2016, J.R. was diagnosed with Attention Deficit Disorder ("ADD"). M.A. Decl. ¶ 7. J.R. performed poorly in certain subjects during the sixth grade. Dkt. 45, Ex. I.

On September 22, 2016, shortly after J.R. started seventh grade, she filed a due process complaint with the OAH. *J.R. v. Oxnard Sch. Dist.*, OAH Case No. 2016100053. In response, the District agreed to evaluate J.R. to determine her eligibility for special education services. Dkt. 150 at 20. This assessment included testing, and concluded that J.R. had severe deficits in numerous areas of skill and core competence. Dkt. 45, Ex. K. On December 13, 2016, the District held an IEP meeting at which it concluded that J.R. was eligible for special education and related services as a student with a speech or language impairment. Dkt. 45, Ex. L.

On February 1, 2017, an administrative hearing commenced as to the complaint brought by J.R. However, before any evidence was presented, J.R. and the District submitted to the OAH a proposed stipulated agreement to resolve the matter. Dkt. 45 at 104. On March 13, 2017, the OAH entered a Decision by Settlement, which incorporated the findings, legal conclusions and remedies to which the parties had stipulated. *Id.* at 108. These included that the District should have found J.R. eligible for special education services related to her speech or language impairments as of September 2014, *i.e.*, the start of fifth grade, and that by failing to do so, it had failed its Child Find obligations under the IDEA and denied J.R. her FAPE. *Id.* at 105. The District was ordered to provide the following compensatory education services and related relief, all of which the District has provided or is in the process of providing:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
| Title | J.R. v. Oxnard School District, et al. | | |

- An assessment by Lindamood-Bell Learning Processes ("LBLP") in Santa Barbara;
- Two years of LBLP services to be provided during the regular school day and according to LBLP's recommendation;
- Placement in a mild-moderate special day class at Haydoc, including 30 minutes per week of individual speech services until the end of J.R.'s eighth grade year; 60 minutes per week of group speech services until the end of J.R.'s eighth grade year; no fewer than 12 social skills sessions with the option to continue if recommended by the supervising counselor; and as needed services by a Language and Academic Development credentialed educator to support the special day class teach to provide writing instruction;
- Transportation services and an extended school year in 2017 with LBLP and transportation services and extended school year in 2018 with LBLP or a District program; and
- Coordination with the high school in the District or with J.R.'s new district to provide any remaining LBLP services owed after J.R. transitions to high school or moves out of the District.

*Id.* at 106-07.

                b)      M.B.

M.B. is an eleven-year-old student enrolled at Haydoc. TAC ¶ 21. Over the course of four years, the District conducted seven SST meetings as to M.B. Dkt. 150 at 20. In 2012, M.B. started kindergarten at the Juan L. Soria Elementary School. Dkt. 47, Ex. A ("M.B. Order") at 8. Soon thereafter, M.B.'s mother informed her teacher that she believed M.B. had a disability that was affecting her education. *Id*. The District responded by holding an SST meeting. *Id.* at 9. At the meeting, M.B.'s mother expressed several concerns about M.B.'s behavior and learning difficulties. *Id.* At the end of that school year, the District assessed M.B. *Id.* at 9-10. However, it did not assess all areas of potential disability, including those identified by M.B.'s mother. *Id.* at 8-9, 11-12, 16. M.B. continued to struggle academically for the next three academic years. During that time period, M.B. showed deficiencies in memory, language and motor skills. *Id.* at 16-17. In September 2016, at the beginning of M.B.'s fourth grade year, M.B. filed a due process complaint with the OAH. *M.B. v. Oxnard Sch. Dist.*, OAH Case No. 2016100009. The District then completed a special education assessment. M.B. Order, Dkt. 47 at 18-19.

On May 25, 2017, the OAH concluded that, at a minimum, the District should have reassessed M.B. for eligibility for certain services as of November 2013. *Id.* at 30-31. This determination was supported by her failure adequately to progress academically, a parental report that M.B. had been diagnosed with ADD and her mother's expressed concerns of possible autism and fine motor skill deficits. *Id*. The OAH concluded that the SST team deferred assessments of M.B. with a "wait and see" mindset. *Id*. The OAH further concluded that the District ignored signs of autism and deficits in language and speech, fine motor skills and academic progress. *Id*. Accordingly, the OAH decided that the District had failed to satisfy its IDEA obligation to reassess M.B. for special education eligibility. Instead, it relied on the SST process, which denied M.B. a FAPE. *Id.* at 31. Based on these determinations, the OAH ordered that the District to provide the following compensatory education services and related relief, all of which the District has provided, or is in the process of providing:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

- Comprehensive independent educational evaluation by a licensed educational therapist or comparable agency of M.B.'s parents' choosing that shall evaluate M.B.'s academic needs at school and determine a reasonable number of compensatory hours needed to assist her in making progress toward grade level;
- 72 hours of compensatory academic instruction by a licensed educational therapist or non-public agency of M.B.'s parents' choosing to be provided for three hours per week for six months;
- Independent educational evaluation in autism and occupational therapy;
- Reimbursement for Karen Schnee's January 2017 independent evaluation up to $4050; and
- 120 hours of speech and language therapy by a nonpublic agency or licensed speech therapist chosen by M.B.'s parents focusing on M.B.'s IEP goals developed by her team.

First Declaration of Lawrence Joe ("First Joe Decl."), Dkt. 76 ¶ 11.

The OAH also ordered the District to provide six hours of training to staff at Elm Elementary School and Juan L. Soria School as to the following: (i) the general principles of the IDEA, including Child Find procedures; (ii) the special education assessment process under the IDEA; (iii) the statutory requirements for providing parents with prior written notice and procedural safeguards; and (iv) the rights of parents to participate meaningfully in the development of a child's education program during the assessment process and at IEP meetings, including determining whether the child is eligible for special education. *Id.* The District completed the six hours of training through sessions conducted on August 14, 2017 and August 22, 2017. *Id.*

        c)     I.G.

I.G. is enrolled at Freemont Middle School. TAC ¶ 22. I.G. previously attended Sierra Linda Elementary School ("Sierra Linda"). Declaration of M.E. ("M.E. Decl."), Dkt. 46 ¶ 4. From the beginning of the 2012 school year through April 2013, I.G. attended kindergarten at Emilie Ritchen Elementary School ("Emilie Ritchen"). Dkt. 46, Ex. A ("I.G. Order") at 8. I.G. was anxious and upset at school, was chronically absent and when he did attend, his mother regularly removed him from classes before the end of the school day. *Id.* At the request of I.G.'s mother, I.G. was transferred to Sierra Linda in May 2013 when there were approximately five weeks left in the school year. *Id.* The issues that arose while I.G. was enrolled at Emilie Ritchen were no longer present while he was at Sierra Linda, and I.G.'s teacher had no reason to conclude I.G. was in need of referral for special education assessment. *Id.* at 8-9.

I.G. remained enrolled in Sierra Linda through the first grade, and started second grade there in August 2014. *Id.* at 14. During the first month of that school year, I.G. regularly fell asleep in class and often had angry outbursts. *Id.* In addition, he regularly missed class, which caused additional adverse effects on his learning and academic performance. *Id.* at 14-15. At this time, I.G.'s mother informed his teacher that I.G. had insomnia. *Id.* at 15. His teacher believed that I.G.'s absences, lethargy and sleeping in class were the result of his insomnia, but improperly concluded that a medical issue such as insomnia could not be a basis for a special education assessment. *Id.* Accordingly, I.G.'s teacher did not make a referral for such an assessment. *Id.* I.G. attended third grade at Sierra Linda, where he continued to present similar issues, including significant absences, early removals and anxious or frustrated conduct. *Id.* at 17. I.G.'s mother told his third grade teacher these issues were caused by his insomnia. *Id.* However, the teacher did not agree, and thought that they were the result of I.G.'s poor attendance and his corresponding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

unusual attachment to his mother. *Id.* at 17-18. The teacher did not make a referral for a special education assessment. *Id.*

In September 2016, I.G. filed a due process complaint. *I.G. v. Oxnard Sch. Dist.*, OAH Case No. 2016091036. The District then offered to provide accommodations for I.G.'s insomnia and anxiety, and to assess whether I.G. should receive services available under the IDEA. I.G. Order, Dkt. 46 at 19-25. The conclusions of the assessment included that I.G.'s anxiety disorders caused him to miss approximately a quarter of classroom time since kindergarten, and that this impeded his ability to learn, particularly in mathematics. *Id.* at 22. In November and December 2016, Sierra Linda held IEP meetings. *Id.* at 23. They resulted in the determination that I.G. was eligible for services for emotional disturbance and other health impairments. *Id.* As a result, specialized academic instruction, counseling services and social work services were among the services offered to I.G. *Id.* at 23-24.

On May 12, 2017, the OAH concluded that the District denied I.G. a FAPE. *Id.* at 7. The basis for this finding was that, as early as November 2014, it had failed to fulfill its Child Find duties under IDEA or refer I.G. for a special education assessment. *Id.* at 7-8. The OAH ordered the District to provide the following compensatory education services and related relief, all of which are in process:

- 74 hours of school-based, one-on-one specialized instruction outside of the classroom at a rate of one hour per week by the School Resource Specialist;
- 37 hours of additional home instruction beyond what is provided in I.G.'s IEP, by a special education teacher, at a rate of one hour per week by STAR-Haynes;
- 37 hours of intensive academic instruction through STAR-Haynes; and
- An independent educational evaluation to determine if I.G. is an appropriate candidate for cognitive behavior therapy to address his anxiety, with treatment recommendations.

*Id.* at 42; First Joe Decl. ¶ 10.

The OAH also ordered the District to provide six hours of training to all Sierra Linda general education teaching staff, paraprofessionals, aides, student study team members, school administrators, service providers, counselors, school psychologists, speech and language therapists and any other staff who work with parents and students on their educational programs. I.G. Order at 42. The District completed the six hours of training through sessions conducted on August 14, 2017 and August 22, 2017. First Joe Decl. ¶ 10.

      D.    Other Students

In support of the Motion for Class Certification, Plaintiffs have submitted declarations about three other students requiring special education and related services – A.W., H.V. and M.Y. Dkts. 158, 159, 160. These students are currently enrolled or were previously enrolled in schools in the District. *See id.* The parents of these students have provided declarations about their respective children. Each states that the student had academic, mental health and other issues in school that were apparent. Thus, the declarants state that teachers and other school employees were aware of these issues. However, the declarants state that these employees did not timely refer each of the students for a special education assessment. The District held SST meetings for these students and conducted assessments of them only after a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

substantial delay.

      E.      Injunctive Relief Requested

Plaintiffs seek an injunction ordering Defendants to comply with the requirements of the IDEA, ADA and Section 504, including but not limited to:

- Reform of policies and procedures within the District;
- Appropriate training for all staff;
- Initiation of new processes for identifying and evaluating those students in need of evaluations; and
- Monitoring by independent experts.

TAC at 62 ¶ 2.

**III.**    **Requests for Judicial Notice**

In connection with the Motion to Dismiss, Defendants filed two requests for judicial notice ("RJNs" (Dkts. 176, 196)). The RJNs seek judicial notice of the following: (i) the Reporter's Transcript, dated May 9, 2018, of the Hearing on Plaintiffs' Motion for Class Certification in this action; and (ii) the final decision by the OAH in the matter of *Parent On Behalf of Student v. Oxnard Sch. Dist.*, OAH Case No. 2018080884.[8]

Pursuant to Fed. R. Evid. 201, a court may take judicial notice of facts that are either (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). District courts may take judicial notice of "records and reports of administrative bodies," *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (quotations omitted), as well as "undisputed matters of public record." *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). Such matters "includ[e] documents on file in federal or state courts." *Id*. Each document for which judicial notice is requested meets the requirements of Fed. R. Evid. 201. Accordingly, the RJNs are **GRANTED.**

**IV.**    **Analysis**

      A.      Article III Standing

            1.      Legal Standards

Article III, Section 2 of the Constitution limits the application of federal judicial power to "cases" and "controversies." Accordingly, Article III standing "is a jurisdictional element that must be satisfied prior to class certification." *Nelsen v. King Cty.*, 895 F.2d 1248, 1249 (9th Cir. 1990) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985)). To establish such standing "requires that a plaintiff show '(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural

---

[8] Neither the RJN nor the decision itself states the identity of the student to which this decision corresponds. However, it is clear from the content of the decision that it pertains to I.H.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
| Title | J.R. v. Oxnard School District, et al. | | |

or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) (citation omitted) (first quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and then quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

To have standing to seek injunctive relief, a plaintiff must show that "he has suffered or is threatened with a concrete and particularized legal harm" and that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal citations and quotation marks omitted); *see also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (standing to seek injunctive relief requires plaintiffs demonstrate "a real or immediate threat" that defendants will subject plaintiffs to the same alleged wrong). A plaintiff "lack[s] standing to sue for injunctive relief from which she would not likely benefit." *Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates*, 511 F.3d at 985 (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)).

"[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (emphasis in original) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). "In other words, Article III requires 'a plaintiff [to] demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.* (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

Although the conventional standing inquiry concerns individual plaintiffs, an association may also have standing to bring an action. "An association has standing to sue if it is itself injured by the complained of conduct." *Black Faculty Ass'n of Mesa Coll. v. San Diego Cmty. Coll. Dist.*, 664 F.2d 1153, 1156 (9th Cir. 1981). Thus, an association "can demonstrate organizational standing by showing that the challenged practices have perceptibly impaired [its] ability to provide the services [it was] formed to provide." *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241 (9th Cir. 2018) (internal quotations removed); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) ("An organization may establish a sufficient injury in fact if it substantiates by affidavit or other specific evidence that a challenged statute or policy frustrates the organization's goals and requires the organization to expend resources in representing clients they otherwise would spend in other ways.") (internal quotations removed). In the alternative, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
| Title | J.R. v. Oxnard School District, et al. | | |

      2.      <u>Application</u>

The parties present similar arguments to those raised in response to the prior motion for class certification. Defendants contend that Plaintiffs did not adequately amend their complaint to address the deficiencies identified in the Order on the first motion. It determined that the original class representatives lacked Article III standing to bring the class claims. *See* Dkt. 128. Defendants argue that the new proposed class representatives are no different as to Article III standing to bring the class claims and seek systemic injunctive relief. In support of this position they argue that, once again, each class representative has been "located, identified, and assessed" by the District. Thus, they argue that class representatives who have been "found" do not have standing to seek prospective injunctive relief on behalf of class members who have not been identified, located, and assessed. The harms inuring to the two groups are distinct. Although certain proposed class representatives experienced a failure to assess at all for specific time periods, each had been assessed by the time the TAC was filed. As the previous Order determined, such past injuries do not confer standing.

Defendants also point out that, although Plaintiffs claim there are at least 200 students within the District that have not been, but should have been, assessed, Plaintiffs have not included even one such student as a new, proposed class representative. Defendants add that the addition of PLN as a class representative does not cure this defect in standing. In support of this position, Defendants first argue that the members of PLN who have been identified, including W.H. and I.B., lack standing to sue for class-wide injunctive relief in their own right. Defendants then argue that PLN cannot demonstrate direct organizational standing because "advancing the District's compliance with the IDEA's Child Find requirement is part of PLN's core purpose" and the conduct alleged here does not impede that mission, but is consistent with it. Dkt. 177 at 19.

Plaintiffs argue that each proposed class representative has "ongoing, [C]hild [F]ind-related injuries-in-fact," in that the proposed class representatives "have not been fully 'found' under the IDEA." Dkt. 150 at 24. In support of this position, Plaintiffs argue that the District had not fully evaluated them in all areas of suspected disability as of the time that the TAC was filed. *Id.* Thus, each class representative has not only past injuries, *i.e.*, the District's failure to assess them at all for a certain period of time, but also present, ongoing ones, *i.e.*, the District's continued failure to assess them in all areas of suspected disability.

Plaintiffs next contend that Defendants "create an artificial dichotomy between the individual class representatives' injuries and those of the putative class," in that the District has failed to assess all the subject students in one or more areas of suspected disability. Dkt. 178 at 3. Thus, "[b]oth the student who has received no assessment and the student who has been partially assessed suffer the same injury: both are missing the opportunity to access special education services they need because the District isn't informed about their needs." *Id.* at 4. Plaintiffs further argue that "[t]his [common] injury is redressable by the same relief: a single injunction requiring District-wide compliance with federal law as to the identification and assessment of students with suspected disabilities." *Id.* at 5.

Plaintiffs also contend that, even if the individual class representatives do not have standing, PLN has standing to bring the class claims. They argue that PLN has both types of standing: (i) direct standing because PLN has expended substantial resources to assist parents and children in response to the District's alleged conduct; and (ii) associational standing because PLN's constituent members would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

have standing to sue in their own right, the interests implicated in this action are germane to PLN's purpose, and participation of the individual members is unnecessary. As to the first element of associational standing, Plaintiffs contend that PLN members W.H. and I.B. have standing in their own right, but that, in any event, Plaintiffs need not name the injured members "'[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected' by the District's conduct." Dkt. 168 at 18 (quoting *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015)).

Each individual class representative had been assessed by the District as of the filing of the TAC, despite experiencing a gap period between when the District allegedly should have assessed the child and when it did so. As noted in the previous Order, the delay in the District's initial assessment does not confer Article III standing on the class representatives to bring class claims for injunctive relief. Where the District's failure to assess was adequately addressed by the time of filing of the TAC, the injunctive relief sought would not redress the injury allegedly suffered. Nor does any of the class representatives demonstrate a likelihood that he would suffer the same injury in the future.

In light of these matters, the question presented is whether the class representatives have standing to bring the class claims based on the District's alleged failure to assess them fully in all areas of suspected disability. Plaintiffs contend that none of the class representatives was "fully 'found'" due to deficiencies in the assessments conducted. It is alleged that the District's assessment of I.H. was deficient in that it did not assess him for autism.[9] It is further alleged that the District did not "accept" the autism diagnosis made during a later independent evaluation of I.H. It is alleged that the District's assessment of F.S. was deficient in that it did not conduct a medical assessment of F.S.'s attention-related issues.[10] As to W.H., the allegations concern the parents' disagreement with the results of the initial assessment conducted and the District's alleged failure to give appropriate weight to the later, outside independent evaluations of W.H. As to I.B., it is alleged that the District's assessment was deficient because it "failed to identify I.B.'s disabling conditions or fully evaluate for attention, behavior, and other learning disabilities." TAC ¶ 180.[11]

The alleged injuries to the class representatives arise from the alleged inadequacy of the assessments performed by the District and/or the sufficiency of the District's consideration of outside independent evaluations. Each class representative has been assessed, although there are disagreements as to the thoroughness of those assessments. Further, it appears that the allegations regarding failure to assess in all areas of suspected disability are not based on the District's alleged failure to consider those areas in its assessments, but rather on its alleged failure to do so thoroughly. The class representatives would have standing to bring claims on behalf of a class that presents claims of this nature and seeks a suitable, corresponding remedy. However, the proposed class here is far broader. If certified, it would include "all

---

[9] As noted above, the basis for this conclusion is not apparent. The assessment paperwork indicates that I.H. was assessed for autism pursuant to the Childhood Autism Rating Scale-2 (CARS2), although the assessment did not yield an autism diagnosis. Dkt. 151, Ex. 8. In the administrative process, the OAH similarly concluded that I.H. "did not prove Oxnard failed to assess Student for autism." Dkt. 196-1 at 45.

[10] The District's assessment did consider the attentional issues of F.S. *See* Dkt. 151, Ex. 21. Therefore, it appears that Plaintiffs' argument is that the District should have conducted a "medical assessment" of these attentional issues, and/or that the assessment was insufficiently thorough as to them.

[11] The assessment did consider attentional and behavioral issues of I.B. *See* Dkt. 151, Ex. 29. It appears that Plaintiffs' contention is that these issues were not sufficiently evaluated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

students in Oxnard School District who have or may have disabilities and who have been or will be subject to the District's policies and procedures regarding" Child Find. TAC ¶ 198. The injunctive remedy sought here is couched in similar, broad terms.

The class representatives and the absent class members all may have suffered violations of the same statutes. However, that is not sufficient. The injury to the class representatives, and a corresponding remedy for that injury, is distinct from the injury to the absent class members. The class representatives present concerns about the adequacy of assessments performed by the District. The absent class members complain of the District's failure to identify and evaluate students in need of services, including by funneling students through the SST process in lieu of a formal assessment. These claims are distinct. Accordingly, the individual class representatives do not have standing to bring the class claims, as currently alleged.

The addition of PLN as a class representative does not change the outcome. Plaintiffs have not demonstrated that PLN has either direct or associational standing. As to direct standing, Plaintiffs have not shown that the challenged practices of the District "have perceptibly impaired [PLN's] ability to provide the services [it was] formed to provide." *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241 (9th Cir. 2018). As noted, PLN was formed to provide advocacy services to families to address the District's alleged failures to identify and then provide appropriate services to students with special needs. The challenged practices do not divert resources from PLN's core mission or otherwise impede its ability to perform the core services for which it was established. These include advocating on behalf of students who have not been properly assessed by the District.

As to associational standing, Plaintiffs have not demonstrated that PLN's members would have standing to sue in their own right. As discussed above, PLN members I.B. and W.H. do not have such standing. Plaintiffs identify two additional PLN members, M.Y. and H.V., who were affected by the District's Child Find policies but do not have standing to sue. Plaintiffs have not identified any other members of PLN whom they contend would have standing. PLN is a small organization whose members are approximately 15-20 families. Plaintiffs selected four of those families to provide declarations in support of the Motion for Class Certification. None of those families would have standing to sue in their own right. In light of the small membership of PLN, and the reasonable inference that Plaintiffs did not deliberately identify only those member families without standing in support of their associational standing argument, it has not been shown that any individual member of PLN would have standing to sue in his own right. Accordingly, Plaintiffs have not demonstrated that PLN has direct or associational standing.

For the foregoing reasons, the proposed class representatives do not have Article III standing to bring the class claims under the current class definition.[12] Any amended complaint shall address the deficiencies in Article III standing identified in this Order. Plaintiffs may consider narrowing the class claims and the class definition to correspond to the claims of the proposed class representatives, creating sub-classes, and/or adding new proposed class representatives with standing to bring the broader set of claims.

**V.     Conclusion**

For the reasons stated in this Order, the Motion for Class Certification is **DENIED** without prejudice, and

---

[12] The Motion to Dismiss did not concern the claims of the individual named plaintiffs. Those claims survive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | February 15, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

the Motion to Dismiss is **GRANTED** without prejudice. Any amended complaint shall be filed no later than March 8, 2019.

**IT IS SO ORDERED.**

 : 

Initials of Preparer    ak