LEARNING RIGHTS LAW CENTER
JANEEN STEEL (SBN 211401)
PATRICIA VAN DYKE (SBN 160033)
janeen@learningrights.org
patsy@learningrights.org
1625 W. Olympic Blvd, Suite 500
Los Angeles, CA 90015-4684
Phone: (213) 489-4030
Fax:   (213) 489-4033


DISABILITY RIGHTS ADVOCATES
STUART SEABORN (SBN 198590)
MELISSA RIESS (SBN 295959)
JESSICA AGATSTEIN (SBN 319817)
seaborn@dralegal.org
jagatstein@dralegal.org
2001 Center St., 4th Fl.
Berkeley, CA 94704
Phone: (510) 665-8644
Fax: (510) 665-8511

LAW OFFICE OF SHAWNA L. PARKS
SHAWNA L. PARKS (SBN 208301)
sparks@parks-law-office.com
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, CA 90027
Phone/Fax: (323) 389-9239

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| J.R., a minor, by and through her guardian ad litem, Janelle McCammack *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> OXNARD SCHOOL DISTRICT, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No.: 2:17-cv-04304-JAK-FFM

**Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint**

**Date:  June 17, 2019**
**Time: 8:30 a.m.**
**Court:10B**
        **First Street Courthouse**

# <u>TABLE OF CONTENTS</u>

I. Introduction.................................................................................................................1

II. New Parties...............................................................................................................3

III. Standard of review ..................................................................................................4

IV. Argument .................................................................................................................5

  A. The class representatives' claims fall under the IDEA's exceptions to administrative exhaustion in that it is demonstrably futile, inadequate, and without purpose to proceed yet again at OAH on these claims. ..........................................................5

   1. The Office of Administrative Hearings has refused to adjudicate the systemic claims brought in this case...........................................................................................6

   2. The class claims concern systemic legal allegations and require structural reforms, and do not need to be exhausted regardless of OAH's prior rulings.........................8

   3. The purposes of the IDEA's exhaustion requirement would not be served by dismissal, as this exact issue has been exhausted by named Plaintiffs and class members, and the District has long been on notice as to it. ....................................12

  B. If there is any question as to the scope of the Plaintiffs' exemption from exhaustion, this issue should be resolved through a summary judgment motion. ..................15

  C. Primero Los Niños has properly alleged direct standing, as clarified by more detailed information as to the scope of its work. ..................................................16

  D. M.B. and I.G. have live claims for attorneys' fees and so should not be dismissed.19

V. Conclusion...............................................................................................................20

Plaintiffs' Opposition to Defendants' Motion to Dismiss

# TABLE OF AUTHORITIES

**Cases**

*Albino v. Baca*,
   747 F.3d 1162 (9th Cir. 2014) ..................................................................15

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011) ....................................................................19

*D.L. v. District of Columbia*,
   302 F.R.D. 1 (D.D.C. 2013) ......................................................................14

*D.L. v. District of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) ....................................................................9

*E. Bay Sanctuary Covenant v. Trump*,
   909 F.3d 1219 (9th Cir. 2018) ..............................................16, 17, 18, 19

*Fair Hous. Council of San Fernando Valley v. Roomate.com, LLC*,
   666 F.3d 1216 (9th Cir. 2012) ........................................................16, 19

*Fair Hous. of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002) ....................................................................19

*Harris v. Cty. of Orange*,
   682 F.3d 1126 (9th Cir. 2012) ..................................................................14

*In re Oakland Unified Sch. Dist.*,
   OAH Case No. 2014060963, Jul. 22, 2014 ................................................7

*In re Oakland Unified Sch. Dist.*,
   OAH Case No. 2014100324, Oct. 28, 2014 ................................................7

*In re Placentia Yorba Linda Unified Sch. Dist.*,
   OAH Case No. 2014061022, Jul. 8, 2014 ..................................................7

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ....................................................................4

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
   297 F.3d 195 (2d Cir. 2002) ......................................................................5

*Northstar Financial Advisors Inc. v. Schwab Invs.*,
   779 F.3d 1036 (9th Cir. 2015) ....................................................................4

*P.V. v. Sch. Dist. of Phila.*,
   No. 2:11-CV-04027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) ..............................10

*Payne v. Peninsula Sch. Dist.*,
   653 F.3d 863 (9th Cir. 2011) ................................................................................5

*Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*,
   307 F.3d 1064 (9th Cir. 2002) ..............................................................................5

*S.B. v. Cal. Dept. of Educ.*,
   327 F. Supp. 3d 1218 (E.D. Cal. 2018) ................................................................9

*Student A. v. Berkeley Unified Sch. Dist.*,
   No. 17-CV-02510-JST, 2017 WL 4551514 (N.D. Cal. Oct. 12, 2017) ..................10, 15

*Timothy O. v. Paso Robles Unified Sch. Dist.*,
   822 F.3d 1105 (9th Cir. 2016) ..........................................................................1, 9

*Wade v. Kirkland*,
   118 F.3d 667 (9th Cir. 1997) ..........................................................................13, 14

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................................4

**Statutes**
20 U.S.C. § 1412 ...................................................................................................1

20 U.S.C. § 1413 ...................................................................................................1

20 U.S.C. § 1415 ...................................................................................................5

29 U.S.C. § 794 ....................................................................................................1

42 U.S.C. § 12132 ................................................................................................1

**Rules and Regulations**
28 C.F.R. § 35.130 ...............................................................................................1

30 C.F.R. § 300.111 .............................................................................................1

30 C.F.R. § 300.301 .............................................................................................1

30 C.F.R. § 300.302 .............................................................................................1

30 C.F.R. § 300.303 .............................................................................................1

30 C.F.R. § 300.304 ...................................................................................................1

30 C.F.R. § 300.305 ...................................................................................................1

30 C.F.R. § 300.306 ...................................................................................................1

30 C.F.R. § 300.307 ...................................................................................................1

30 C.F.R. § 300.308 ...................................................................................................1

30 C.F.R. § 300.310 ...................................................................................................1

30 C.F.R. § 300.311 ...................................................................................................1

34 C.F.R. § 104.4 ......................................................................................................1

Plaintiffs' Opposition to Defendants' Motion to Dismiss

# I. INTRODUCTION

The Oxnard School District ("the District") has an obligation under federal law, commonly referred to as "child find," to identify and evaluate children with disabilities so they can receive the special education services they need.  20 U.S.C. §§ 1412(a), 1413(a); 34 C.F.R. §§ 300.111, 300.301–11 ; 42 U.S.C. § 12132; 29 U.S.C. § 794(a); 28 C.F.R. § 35.130; 34 C.F.R. § 104.4; *see generally Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1109–11 (9th Cir. 2016).  Yet, for years, the District has systematically flouted this obligation—neglecting the education of hundreds of its students across classes, grades, and schools.

Indeed, as a matter of policy, the District takes a "wait and see" approach to its students with suspected disabilities: its teachers do not recognize and refer students with disabilities for assessments, its administrators regularly delay responding to parent requests for assessments, and its staff members use a pre-referral system to further delay children's assessments.  *See, e.g.*, Dkt. 232 ¶¶ 3–22, 38–44, 95–96, 129 (Fourth Amended Complaint); *see also* Dkt. 128 at 3–4, 12–13.  Often the District assesses students for disabilities it has known about for years only after the students retain lawyers.  *See, e.g.*, Dkt. 232 ¶¶ 90, 125, 147.  These policies and practices are not only severely detrimental to District students, but they also violate the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").  As the Fourth Amended Complaint demonstrates, these practices persist and persist on a systemic level.

Although this Court recognized that claims regarding the District's identification and evaluation procedures are generally appropriate for class treatment as to numerosity, commonality, and typicality, *see* Dkt. 128 at 8–17, it held that previously proposed class representatives lacked standing to seek injunctive relief on behalf of the class, *see id.* at 8–10; Dkt. 207 at 17.

Plaintiffs thus filed the Fourth Amended Complaint, Dkt. 232, which squarely addresses the concerns raised by the Court.  The Fourth Amended Complaint added three proposed class representatives, A.E., M.L., and D.C.  None of these three children

had been identified or assessed for special education services at the time the Complaint was filed, and each had either demonstrated flags for suspected disability, or parental requests for special education assessments. The Complaint also clarified the scope of the work of proposed organizational plaintiff Primero Los Niños.

Now, despite the fact that the California Office of Administrative Hearings ("OAH") has repeatedly found that the District's child find policies violate the law but that it does not have jurisdiction to hear or address systemic and class-based claims— *including for the precise issue and claims in this District*—the District has moved to dismiss the Fourth Amended Complaint based on failure to exhaust before OAH. Dkt. 245.

In addition to ignoring the practical realities of the limits on OAH's jurisdiction, the District's arguments run counter to Ninth Circuit precedent that allows actions such as this one to proceed without exhausting administrative remedies, where doing so would be inadequate or futile and thus serve no statutory purpose. Its arguments also run counter to the District's prior position, when it argued that the original three named Plaintiffs lacked standing *because* they exhausted, and that exhaustion is not required in cases such as this one seeking systemic relief. *See* Dkt. 61 at 10–11.

In addition, the District's arguments regarding the direct standing of Primero Los Niños both ignore further details alleged by Plaintiffs and rely on a theory of standing relegated to Ninth Circuit dissents. Further, its motion to dismiss Plaintiffs M.B. and I.G. ignores that neither resolved their claims to attorneys' fees from their underlying administrative cases nor received a final judgment.

The Court should thus deny the District's motion and allow the litigation to proceed so that the parties—and the proposed class of children throughout the District— can finally address their ongoing dispute as to the legality of the District's child find system.

## II. NEW PARTIES

As explained in the Fourth Amended Complaint, the three newly proposed class representatives A.E., M.L., and D.C. are experiencing failures in the District's child find system—the same failures about which previous and current Plaintiffs have complained.

A.E. is a seventh grader who started in the District in January 2019. Dkt. 232 ¶¶ 45–46 (Fourth Amended Complaint). When his mother asked that he be assessed for a suspected disability in February, the District instead held a pre-referral "SST" meeting the next month. *Id.* ¶¶ 51–52. At that meeting, District staff noted that while A.E. is "respectful" and "polite," he is also "easily distracted," "has poor testing scores," has "depression," and "does not complete work," and that he would benefit from common special education accommodations and services like "one-to-one assistance, reduced assignments, and extra time in the classroom." *Id.* ¶¶ 52–53. Rather than assess A.E. for a disability following this SST meeting, the District instead scheduled another SST meeting. *Id.* ¶ 54.

M.L., another seventh grader in the District, "performs academically somewhere in the kindergarten to second grade range"—despite attending District schools since 2015. *Id.* ¶¶ 56–57. "[H]is deficits are severe and obvious." *Id.* ¶ 58. However, District staff had never identified or assessed him for suspected disabilities at the time the Fourth Amended Complaint was filed. *Id.* ¶ 61.

And D.C., an eighth grader with low grades and test scores, also has experienced increasing difficulties in the District. *Id.* ¶¶ 62–63. Although her mother faxed in a request for a special education assessment to a District school, the District had not responded or provided an assessment at the time the Fourth Amended Complaint was filed. *Id.* ¶ 64.

A.E.'s, M.L.'s, and D.C.'s child find claims regarding the District's "wait and see" policy thus firmly cover the same ground as those raised in the administrative exhaustion proceedings of current and former Plaintiffs F.S., M.B., I.G., J.R., and I.H.

*See id.* ¶¶ 151 (F.S.), 95–97 (M.B.), 128–30 (I.G.); Dkt. 145 ¶ 61 (J.R.); Dkt 196-1 at 2 (I.H.).[1]

## III. STANDARD OF REVIEW

When considering a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), the trial court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (internal quotation marks omitted).

The same is true when considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Again, a trial court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) (internal quotation marks omitted). In other words, a complaint need only contain sufficient factual allegations that, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] In addition to adding parties, the Fourth Amended Complaint also includes more detailed allegations as to the scope of Primero Los Niños' advocacy and work. Dkt. 232 ¶¶ 32–34, 169–75. Primero Los Niños is a relatively small organization, but it still advocates for several distinct improvements to the education of children in the Oxnard School District, including for "more education funding, better use of existing funding for English learner programs, initiatives to combat discrimination against Mixtec children in English learner programs, improved quality of education in the general education population, and improvements to the condition of educational facilities and materials in the District." *Id.* ¶ 169. By engaging in education and outreach with regard to the District's child find system, among other activities, it has been "more challenging [for Primero Los Niños] to address the other issues central to its mission." *Id.* ¶ 34.

1  This standard is not a "probability requirement"; it simply "asks for more than a sheer

2  possibility that a defendant has acted unlawfully." *Id.*

3  **IV. ARGUMENT**

4      **A. The class representatives' claims fall under the IDEA's exceptions to
        administrative exhaustion in that it is demonstrably futile, inadequate,**

5      **and without purpose to proceed yet again at OAH on these claims.**

6      Plaintiffs do not need to exhaust their class claims.  "Judicial review under the

7  IDEA is ordinarily available only after the plaintiff exhausts administrative remedies,"

8  *Doe v. Ariz. Dept. of Educ.*, 111 F.3d 678, 680–81 (9th Cir. 1997); *see* 20 U.S.C.

9  § 1415—"consistent with the traditional exception to exhaustion requirements based on

10  futility or inadequacy," *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*, 307

11  F.3d 1064, 1073 (9th Cir. 2002) (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)).

12  "[T]his exhaustion requirement is not a rigid one, and is subject to certain exceptions."

13  *Hoeft v. Tuscon Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992).  In other words, the

14  IDEA's exhaustion requirement "is not a check-the-box kind of exercise"; determining

15  its boundaries can sometimes "prove an inexact science."  *Payne v. Peninsula Sch. Dist.*,

16  653 F.3d 863, 870 (9th Cir. 2011) (en banc) *overruled on other grounds in Albino v.*

17  *Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

18      Courts have identified several circumstances in which plaintiffs need not exhaust:

19  "if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency

20  has adopted a policy or pursued a practice of general applicability that is contrary to the

21  law; or (3) it is improbable that adequate relief can be obtained by pursuing

22  administrative remedies."  *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d

23  195, 199 (2d Cir. 2002); *accord Hoeft*, 967 F.2d at 1303–04.  As to the second and third

24  circumstances, "Administrative remedies are generally inadequate where structural,

25  systemic reforms are sought."  *Hoeft*, 967 F.2d at 1309.

26      And, as to all questions regarding exhaustion, "In determining whether these

27  exceptions apply, [the Court's] inquiry is whether pursuit of administrative remedies

28

under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." *Id.*, at 1303.

Here, the Plaintiffs seek structural, systemic reforms to the District's special education system, which several former and current Plaintiffs have been unable to achieve through individual administrative proceedings. They do so through challenges to the District's child find practices of general applicability, which the District defends as a legal matter. Plaintiffs do so after a number of them, both current and former parties to this litigation, put the District on notice as to the systemic failures of its child find system through OAH proceedings—and thus allowed California's administrative experts to examine the evidence through administrative exhaustion. They thus need not further attempt to exhaust their claims.

### 1.    The Office of Administrative Hearings has refused to adjudicate the systemic claims brought in this case.

As a preliminary matter, OAH has ruled that it will not reach the systemic claims pled in this case and has otherwise demonstrated that the class cannot obtain relief through that body. Multiple current and former Plaintiffs, including F.S., I.G., M.B., I.H., and J.R., as well as organizational Plaintiff Primero Los Niños, attempted to secure relief on the identification and evaluation policies here through due process complaints to OAH. Although they were able to prevail on individual claims regarding the District's failure to meet its child find duties, none were able to secure systemic relief that would change the policies at issue going forward. *See* Dkt. 232 ¶¶ 151 (F.S.), 95–97 (M.B.), 128–30 (I.G.); Dkt. 145 (Third Amended Complaint), Ex. A (J.R.), Ex. B (M.B.), Ex. C (I.G.); Dkt. 151, Exs. 22–23 (F.S.); Dkt. 196-1 (I.H.).

As for F.S. and Primero Los Niños, OAH specifically held that child find class claims are outside the scope of its jurisdiction, reasoning:

> OAH does not have jurisdiction to hear Student's claims of systemic violation and/or claims on behalf of similarly situated students.
> (Student v. Oakland Unified School Dist. (July 22, 2014) OAH Case

No. 2014060962 (Motion to Dismiss).)  This would also include

claims brought by an organization on behalf of its members.

Therefore, the class action claims and claims raised by Primero Los

Ninos in Issue 1 are dismissed.

*See* Dkt. 151, Ex. 22.

OAH further held that Plaintiffs' claims, other than IDEA, were similarly outside
of its jurisdiction:

Student's complaint in Issues 2 and 3 alleges that Oxnard violated

provisions of the ADA and Section 504, which OAH does not have

jurisdiction to hear.  Accordingly, Student's claims that Oxnard

violated the ADA and Section 504 are dismissed.

*Id.*

A clearer case of futility and inadequacy of the administrative proceedings could
not be had.  Moreover, this refusal of OAH to hear systemic or class claims on
jurisdictional grounds is confirmed by myriad other cases in which OAH has issued the
same ruling as with F.S and Primero Los Niños.  *See, e.g.*, *In re Placentia Yorba Linda
Unified Sch. Dist.*, OAH Case No. 2014061022, Jul. 8, 2014 (dismissing ADA and
Section 504 claims because "[s]tudent's systemic claims on behalf of other students are
not only outside of OAH's jurisdiction, but run contrary to the express purpose of a due
process proceeding to focus on the individual child and his or her unique educational
needs"); *In re Oakland Unified Sch. Dist.*, OAH Case No. 2014060963, Jul. 22, 2014
(granting school district's motion to dismiss all of student's "systemic" claims, including
a Section 504 claim, as being outside of OAH's jurisdiction, because "OAH's
jurisdiction is limited to due process proceedings between a student, parent or guardian
and the public agency involved in the education of the student, that seek to provide relief
for the particular student with respect to the matters enumerated in [IDEA]," and does
not extend to "structural and systemic District-wide deficits"); *In re Oakland Unified
Sch. Dist.*, OAH Case No. 2014100324, Oct. 28, 2014 (granting school district's motion

to dismiss "systemic" claims by students as outside of OAH jurisdiction because they did not allege claims under IDEA and were on behalf of a class of students rather than the complainant, and noting that "OAH does not have jurisdiction to entertain claims based on Section 504, Section 1983, or other related state and federal civil rights laws, or class action claims related to those violations").

> ### 2. The class claims concern systemic legal allegations and require structural reforms, and do not need to be exhausted regardless of OAH's prior rulings.

Even had Plaintiffs not previously obtained rulings demonstrating the futility of further exhaustion, proposed class representatives A.E., D.C., and M.L., among other Plaintiffs, need not exhaust their class claims because their claims are systemic—and, to resolve them, they require structural reforms throughout the District.

Plaintiffs allege class-wide child find claims that "involve statutory violations so serious and pervasive that basic statutory goals are threatened." *Hoeft*, 967 F.2d at 1304. Again, they allege that the District's child find system systematically shuts children with disabilities like themselves out of the special education system, using a "wait and see" approach to disability that prevents students across the District from accessing any special education services, supports, or accommodations (at least, until they hire lawyers). *See, e.g.*, Dkt 232 ¶¶ 1–20. Unlike other varieties of IDEA violations, this District-wide child find policy has thus rendered is entire special education program institutionally unavailable to students across the District, in a manner that the administrative system has already indicated it cannot fix at a systemic level. *See* Dkt. 232 ¶¶ 176–77.

Indeed, on several occasions, the Ninth Circuit has emphasized the special structural role child find systems play in school districts and in the IDEA's "basic statutory goals." *Hoeft*, 967 F.2d at 1304. "That [a special education] evaluation is done early, thoroughly, and reliably is of extreme importance to the education of children. Otherwise, many disabilities will go undiagnosed, neglected, or improperly treated in the

classroom." *Timothy O.*, 822 F.3d at 1110.  In the context of child find systems for children with autism, the Court noted "once again," "[s]o that there may be no similar misunderstanding in the future": "the failure to obtain critical and statutorily mandated medical information about an autistic child and about his particular education needs 'render[s] the accomplishment of the IDEA's goals—and the achievement of a FAPE—*impossible*.'"  *Id.* at 1126 (quoting *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1210 (9th Cir. 2008)). As explained in *D.L. v. District of Columbia*, 860 F.3d 713, 731 (D.C. Cir. 2017), "When Congress enacted the legislation that became IDEA, it was responding to the pervasive and tragic failure to serve all children with disabilities, which is why it imposed on states accepting IDEA funding an obligation to identify, locate, and evaluate all [students] with disabilities."  (Internal quotation marks and citations omitted).

The District's failed child find policies and practices are thus categorically different from other IDEA violations that must still be exhausted.  IDEA violations regarding class claims that still must be exhausted often concern one "particular component of [the District's] special education program."  *Hoeft*, 967 F.2d at 1305; *see Doe*, 111 F.3d at 681.  For example, a challenge to one kind of special education service, like the summer program and its eligibility criteria at issue in *Hoeft*—or a challenge to the education provided to students in a specific adult detention facility, at issue in *Doe*—must still be exhausted because such claims are not truly district-wide, systemic claims. *Hoeft*, 967 F.2d at 1301, 1308; *Doe*, 111 F.3d at 682–83.  And, of course, an individual student's technical claims regarding their own services and accommodations must also be exhausted, absent other special circumstances.  *See, e.g.*, *S.B. v. Cal. Dept. of Educ.*, 327 F. Supp. 3d 1218, 1253–59 (E.D. Cal. 2018) (collecting cases to that effect).

By contrast, this case does not concern one student, one school, or a particular special education service.  Instead, for hundreds of unidentified students across the District, "the gravamen of the suit [is] that the [District's] entire special education system [i]s infirm. . . ."  *Doe*, 111 F.3d at 682.  The District's child find policy and

practice failures—implemented by general education and special education teachers, staff at all levels, and administrators—leave hundreds of students, across programs, grades, and schools, with no access whatsoever to the entirety of the District's special education program.

The class claims are thus much more like those in two cases in which district courts excused exhaustion from IDEA claims at the pleading stage or later, *Student A. v. Berkeley Unified Sch. Dist.*, No. 17-CV-02510-JST, 2017 WL 4551514 (N.D. Cal. Oct. 12, 2017), and *P.V. v. Sch. Dist. of Phila.*, No. 2:11-CV-04027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011). *Student A.* denied a motion to dismiss the policy-focused complaint of four students with specific learning disabilities, although none had exhausted his or her claims through any administrative process. 2017 WL 4551514, at *1, *4. The Court noted that another entity had already pursued an administrative process regarding the current plaintiffs' challenges, and that, in any event, the plaintiffs challenged "systemic violations that, under pertinent case law, bring Plaintiffs' complaint outside individualized FAPE issues" to the District's child find and FAPE policies regarding students with specific learning disabilities. *Id.* at *4 (internal quotation marks omitted).

Similarly, in *P.V.*, four students with autism were excused from exhausting their challenge to a school district's system-wide "Automatic Autism Transfer Policy," regarding the placement of students with autism in particular schools in the district. 2011 WL 5127850, at *7. Relying on *Doe*, 111 F.3d at 682, among other cases, *P.V.* held that this challenge was a sufficiently systemic legal challenge to be excused from IDEA exhaustion requirements. *Id.* at *7–*9.

So too here. As alleged, A.E., M.L., and D.C.'s claims concern the District's "wait and see" child find policies—which render entirely off-limits the District's special education system. Their IDEA, ADA, and Section 504 claims thus need not be exhausted under the IDEA.

The District made a similar point—that exhaustion of Plaintiffs' systemic claims is not required—at the first argument on class certification on January 29, 2018. At that

hearing, counsel for Defendants stated:

> And there are cases both throughout the United States and in the Ninth
> Circuit that allow them to come directly into federal court by arguing
> precisely what plaintiff's counsel argued here, that their remedy—the
> remedy that they seek at the administrative level is not available.  So that is
> an exception to the exhaustion of administrative remedy.  If the remedy is
> not available at the administrative level, i.e., a system-wide remedy, they can
> come to federal court. And there are cases that cite that.

Counsel for Defendants, Tr. at 18-2:11, Dkt. 116, 176-1.  Counsel made this
statement in the context of the District's arguments that the original Plaintiffs lacked
standing *because* they exhausted their administrative remedies.

However, in its argument to the contrary in its Motion to Dismiss, the District's
attempt to analogize to Ninth Circuit cases like *Doe* actually highlights differences
between (i) claims involving omissions at a single facility, which can be easily remedied
by a willing district, and (ii) claims involving a district-wide policy dispute, which are
systemic in nature and cannot be resolved by administrative bodies.  In *Doe*, for
example, the school district took steps to identify and assess students with disabilities it
had overlooked at a particular adult detention facility, once it became aware of that
omission.  By contrast, here, the District has been on notice of its failed system across
each of its schools for years—yet it has not been able to make, and has not made, the
modifications necessary to that system to ensure it will identify children with suspected
disabilities going forward.  *See Doe*, 111 F.3d at 680–82.

Indeed, rather than modifying its child find system in response to repeatedly being
made aware of Plaintiffs concerns, the District defends its use of that system.  In its
Motion to Dismiss, in arguing that Plaintiffs' claims are not pure issues of law, the
District inexplicably defends against Plaintiffs' claims with its *own* legal argument
regarding the appropriateness of its pre-referral procedures.  *See* Dkt. 245 at 18–19.
That argument, if anything, provides further evidence that Plaintiffs' claims are systemic

legal ones under *Hoeft* and *Doe*, suitable to judicial resolution without further
exhaustion.

> **3.    The purposes of the IDEA's exhaustion requirement would not
> be served by dismissal, as this exact issue has been exhausted by
> named Plaintiffs and class members, and the District has long
> been on notice as to it.**

The guiding inquiry for IDEA exhaustion questions is "whether pursuit of
administrative remedies under the facts of a given case will further the general purposes
of exhaustion and the congressional intent behind the administrative scheme." *Hoeft*,
967 F.2d at 1303. As to those specific purposes and intent: "Exhaustion of the
administrative process allows for the exercise of discretion and educational expertise by
state and local agencies, affords full exploration of technical educational issues, furthers
development of a complete factual record, and promotes judicial efficiency by giving
these agencies the first opportunity to correct shortcomings in their educational programs
for disabled children." *Id.* (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).

Here, none of the above purposes are served through further exhaustion of A.E.'s,
M.L.'s, and D.C.'s class claims in light of the many opportunities the District and OAH
have had to address these exact issues in prior administrative proceedings. Current
named plaintiffs F.S., I.G., M.B., and Primero Los Niños, as well as former plaintiffs
J.R. and I.H., each pursued and completed administrative due process proceedings
before OAH with regard to the District's child find policy failures. Dkt. 232 ¶¶ 43, 95–
105, 128–33, 151, 176–77; *see also* Dkt. 145 Ex. A (J.R.), Ex. B (M.B.), Ex. C (I.G.);
Dkt. 151, Exs. 22–23 (F.S. and Primero Los Niños); Dkt. 196-1 (I.H.).

As a result, both OAH and the District have had six opportunities in due process
proceedings with respect to the Plaintiffs in this case alone to exercise discretion and
technical expertise with regard to the District's child find policies. The District has had
extensive notice as to—and a first, and second, and ultimately sixth opportunity to
correct—systemic shortcomings in its child find system. Yet, despite being alerted as to

1    these problems, it has time and again failed to correct them, as documented in the Fourth

2    Amended Complaint.  Dkt. 232 ¶¶ 3–23, 43.

3         Further, the Court is now presented with an extensive, fully developed

4    administrative record as to the District's child find policies and practices.  The Fourth

5    Amended Complaint incorporates by reference the OAH orders in named Plaintiffs

6    M.B.'s, I.G.'s, F.S.'s,[2] and Primero Los Niños' OAH proceedings, which cumulatively

7    involved ten days of evidentiary hearings.  Dkt. 232 ¶¶ 43, 95–105, 128–33, 151, 176–

8    77.  Administrative records and evidence from former named Plaintiffs J.R.'s and I.H.'s

9    OAH proceedings are also before the Court as relevant evidence in support of Plaintiffs'

10   operative motion for class certification.  *See* Dkt. 233 at 5–8 (citing various teachers'

11   testimony from I.H.'s administrative proceedings); *id.* at 25 (citing J.R.'s OAH order,

12   among others).[3]

13        In light of the extensive administrative exhaustion pursued by current and former

14   named Plaintiffs and class members—in which there was ample "application of agency

---

[2] F.S. sufficiently exhausted her claims regarding the District's child find failure in her
case, Dkt. 232 ¶ 151, the District does not appear to dispute this fact.  Instead, the
District only argues that F.S. has not sufficiently exhausted as to her individual
remedies.  Dkt. 245 at 17 n.3.  F.S. continues to have a stake in the denial of Plaintiffs'
second class certification motion when she was a proposed class representative, and thus
cannot simply be dismissed by Plaintiffs.  *See, e.g.*, *Wade v. Kirkland*, 118 F.3d 667,
669–70 (9th Cir. 1997) (even after mootness proposed class representative continues to
have standing to challenge class certification decision on appeal, and remanding to
determine outcome of class certification, including application of relation back doctrine).
If the Court wishes Plaintiffs to file an individual administrative matter in the meantime
to determine F.S.'s remedies, Plaintiffs can certainly do so.  However, the fact that OAH
did not provide her with *any* remedies, including individual remedies, upon a finding of
a child find violation demonstrates the continued futility of resolving this issue through
OAH.

[3] Of course, these administrative proceedings are in addition to those previously before
the U.S. Department of Education's Office of Civil Rights, filed nearly a decade ago by
different parties.  Dkt. 232 ¶¶ 3, 42.

expertise and the development of an administrative record," *Hoeft*, 967 F.2d at 1310—there is simply no additional purpose served by requiring exhaustion of the child find class claims by the newly added class representatives A.E., M.L., and D.C.[4]

This conclusion is also in line with the "single filing" exhaustion rule, also known as the "vicarious exhaustion" rule.  Under that rule, "federal courts have found that so long as one plaintiff timely files an administrative complaint, a class of similarly-situated plaintiffs may 'piggyback' on that complaint, thereby satisfying the exhaustion requirement."  *Harris v. Cty. of Orange*, 682 F.3d 1126, 1136 (9th Cir. 2012).  The single filing rule is often applied in state and federal courts in Title VII, ADEA, and FEHA class actions, *id.* at 1136–37, and it has been applied in the IDEA child find class action in the District of D.C, *D.L. v. District of Columbia*, 302 F.R.D. 1, 21 (D.D.C. 2013).  As here, such a "piggybacking" process is reasonable and appropriate "based on the observation that it would be duplicative and wasteful for complainants with similar grievances to have to file identical notices of intent to sue with a governmental agency." *Harris*, 682 F.3d at 1136.[5]

---

[4] Defendants' arguments that these new Plaintiffs somehow raise distinct issues requiring exhaustion is without merit.  The claim brought by these children involves challenges to the same District child find policies—the same claim for injunctive relief brought by the previous children and the claim brought by the proposed class.  There is no distinct legal claim for children who are English Language Learners, nor does one exist under the IDEA or the other claims pled in this case.  Moreover, many Plaintiffs in this case have been classified as English Language Learners, *see, e.g.*, Dkt. 232 ¶¶ 19 (M.B.), 134 (F.S.), and thus prior OAH proceedings addressed those issues as well, *see, e.g.*, Dkt. 145, Ex. B (M.B.). Thus, there is nothing to be gained through further proceedings here.

[5] Plaintiffs note that W.H. and I.B. continue to have a stake in the denial of Plaintiffs' second class certification motion when they were proposed class representatives, and thus cannot simply be dismissed by Plaintiffs.  *See, e.g., Wade*, 118 F.3d at 669–70.  However, if the Court wishes to direct Plaintiffs to file their claims for individual compensatory remedies with OAH, Plaintiffs can certainly do so.

**B. If there is any question as to the scope of the Plaintiffs' exemption from exhaustion, this issue should be resolved through a summary judgment motion.**

Finally, if the Court is uncertain as to whether the allegations in the Fourth Amended Complaint are sufficient to establish satisfaction of the IDEA's exhaustion requirements and exemptions, it should consider the question of exhaustion in a motion for summary judgment, rather than through this motion to dismiss.

As recently clarified in the context of the Prison Litigation Reform Act ("PLRA"), administrative exhaustion is an "affirmative defense the defendant must plead and prove." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) (overruling *Payne v. Peninsula Sch. Dist*, 653 F.3d 863, 881 (9th Cir. 2011) (en banc)). As a result, it should "rare[ly]" be decided through motions to dismiss; it is a "rare care[]" in which a failure to exhaust—and a lack of valid excuse regarding exhaustion—is "clear from the face of the complaint." *Id.* at 1169. Instead, if exhaustion (or an excuse as to it) is at issue, whether in the context of the PLRA or the IDEA, among other federal statutes, the proper procedure is for "a party [to] move for summary judgment on the exhaustion question, followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion." *Id.* at 1171.

Here, to the extent that the Court is unsure as to whether Plaintiffs have established an appropriate excuse as to exhaustion, it should consider that question based on further evidence produced by the District, as well as Plaintiffs' evidence regarding the systemic nature of the District's policies and practices and the existing administrative records of current and former named Plaintiffs. In *Student A. v. Berkeley Sch. Dist.*, for example, the Court took a similar approach, holding that whether the plaintiffs there met the systemic claim exception to the IDEA's exhaustion requirement was ultimately a question of disputed fact. 2017 WL 4551514, at *3–*4. If appropriate, the Court could take the same approach here.

### C. Primero Los Niños has properly alleged direct standing, as clarified by more detailed information as to the scope of its work.

As properly alleged in the Fourth Amended Complaint,[6]  the District's failed child find policies have frustrated the mission of organizational plaintiff Primero Los Niños and forced it to divert resources to address those failures, making it more difficult for Primero Los Niños to dedicate resources to the other components of its work that it conducts in furtherance of its mission.  Primero Los Niños has thus sufficiently alleged direct injury redressable by injunctive relief to satisfy Article III standing requirements.

"[A]n organization has 'direct standing to sue [when] it showed a drain on its resources from both a diversion of its resources and frustration of its mission.'" *Fair Hous. Council of San Fernando Valley v. Roomate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). Specifically, organizations must allege "that the challenged practices have perceptibly impaired [an organization's] ability to provide the services [it was] formed to provide"— or, in other words, a showing "that, independent of the litigation, the challenged policy frustrates the organization's goals and requires the organization to expend resources in representing clients they otherwise would spend in other ways." *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241 (9th Cir. 2018) (internal quotation marks omitted).

---

[6] When Primero Los Niños joined this litigation in November 2018, it provided broad, general allegations with respect to its mission and the scope of its work in furtherance of that mission.  In response, the Court held that the organization had not provided sufficient allegations that the District's child find policies "divert[ed] resources from PLN's core mission or otherwise impede[d] its ability to perform the core services for which it was established." Dkt. 207 at 17.  To address the Court's concerns regarding the scope of Primero Los Niños's work, as well as the manner in which the organization's work has been impaired, Plaintiffs provided additional allegations in the Fourth Amended Complaint to clarify, with more specifics, the variety of core services it performs in furtherance of its mission and how it has had to divert resources to address the District's child find failures that, in light of its limited resources as a small organization, could have been focused on those other core services. *See* Dkt. 232-1 at ¶¶ 32–34, 167–75 (redline comparison of Third and Fourth Amended Complaints); Dkt. 232 at ¶¶ 32–34, 167–75 (Fourth Amended Complaint).

As more clearly explained in the Fourth Amended Complaint, Primero Los Niños meets this standard. The organization's mission is to "ensur[e] that children in the District have appropriate educational services." Dkt. 232 at ¶ 169. It was thus formed to provide advocacy and support for children facing several distinct issues in the District, including "special education, language access, and school conditions." *Id.* at ¶ 33. As a result, since its founding in 2014, Primero Los Niños has advocated for "more education funding, better use of existing funding for English learning programs, initiatives to combat discrimination against Mixtec children in English learner programs, improved quality of education in the general education population, and improvements to the condition of educational facilities and materials in the District." *Id.* at ¶ 169. However, "[b]ecause it has had to dedicate so much of its limited time and resources to the District's failure to timely identify and thoroughly evaluate children with disabilities, it has been more challenging for Primero Los Niños to address the other issues central to its mission." *Id.*; *accord id.* at ¶¶ 34, 169–75.

Examples of Primero Los Niños' use of its limited resources to address the District's child find failures, which made it more challenging to address other issues core to its mission, include: its work to educate its members about their rights to have their children assessed for appropriate disability-based services and the procedures for challenging the District's failures to conduct such assessments, the time it spent issuing public records act requests to obtain information about this issue, and the time and resources it utilized in making referrals to advocates and lawyers for affected members. *Id.* at ¶¶ 34, 170–75.

Primero Los Niños is thus comparable to, if admittedly smaller than, the four legal aid organizations that represented asylum seekers and that sufficiently alleged a diversion of resources in *East Bay Sanctuary Covenant*. There, the organizations challenged a new rule and proclamation prohibiting asylum applications from people who did not enter the country through a port of entry. *E. Bay Sanctuary Covenant*, 909 F.3d at 1230–31. The federal government's policies did not require three out of the four organizations to fundamentally alter the core advocacy they provided to asylum-seekers;

despite the government's policies, the organizations continued furthering their mission of providing legal aid to asylum-seekers and submitting asylum applications on their behalf.  *Id.* at 1241–42.  Yet the policies required that these three organizations pursue both *more* and *different* immigration advocacy for each client than they otherwise would pursue, absent the policies.  Each organization had "undertaken, and [would] continue to undertake, education and outreach initiatives regarding the new rule, efforts that require the diversion of resources away from other efforts to provide legal services to their local immigrant communities."  *Id.* at 1242.  Some of the organizations also noted that they would need to pursue other forms of immigration relief for their clients that were more time-intensive for certain kinds of clients than asylum.  *Id.*  Although the organizations also suffered other harms (for example, a possible loss of funding), their diversions of resources through education, outreach, and seeking different immigration relief in response to the new asylum policies were independently sufficient to establish direct organizational standing.  *Id.*

Similarly, Primero Los Niños has had to engage in *more* and *different* education, outreach, and advocacy for its members facing child find issues than it otherwise would, absent the District's "wait and see" child find policies and practices.  As a result, "Primero Los Niños has used its very limited resources—its members' time and energy—to address the District's identification and assessment policies and practices, which has made it more challenging to address other issues central to its mission, including issues related to school conditions, language access, and the myriad of other substantive special education issues its members face."  Dkt. 232 ¶ 34.  As explained in these more particular, clarified allegations, the District has "frustrate[d] the organization's goals and require[d] the organization to expend resources in representing clients they would spend in other ways."  *E. Bay Sanctuary Covenant*, 909 F.3d at 1241 (internal quotation marks omitted).

In fact, the Ninth Circuit has long accepted that an organization may be directly injured by a defendant's illegal policies if it has to advocate against those policies through education and outreach—even if that education and outreach is within the

organization's core advocacy mission.  For example, in *Roomate.com*, 666 F.3d at 1219,

two fair housing councils investigated Roomate.com's possible fair housing violations

and conducted outreach and education as to them—in line with its mission to investigate

fair housing violations and educate the public to eliminate them.  That activity was

enough of a "diver[sion of] resources independent of litigation costs" to establish

organizational standing.  *Id.  Accord Comite de Jornaleros de Redondo Beach v. City of

Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (a day laborer organization staff

member's outreach with day laborers affected by a city ordinance, along with her

assistance to individual day laborers following arrests related to that ordinance, were

sufficient to establish organizational injury); *Fair Hous. of Marin*, 285 F.3d at 905 (fair

housing organization had direct standing based on "design, printing, and dissemination

of literature aimed at redressing the impact [the private landlord's racial] discrimination

had on the Marin housing market").

　　　In arguing to the contrary, the District relies on dissents in the Ninth Circuit that

question the Court's line of cases allowing such organizations and others like them to

establish injury through pursuing advocacy in line with their mission.  *See* Dkt. 245 at 11

(citing *Fair Hous. Council*, 666 F.3d at 1226 (Ikuta, J., dissenting)).  Yet, as *East Bay

Sanctuary Covenant* noted, these criticisms regarding the scope of the Circuit's

organizational standing jurisprudence are neither here nor there.  Ultimately, "we are not

free to ignore 'the holdings of our prior cases' or 'their explications of the governing

rules of law.'"  *E. Bay Sanctuary Covenant*, 909 F.3d at 1243 (quoting *Miller v.

Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).

　　　Primero Los Niños has thus properly clarified and alleged the direct injuries to the

organization itself, and thus has standing to challenge the District's child find policies.

### D. M.B. and I.G. have live claims for attorneys' fees and so should not be dismissed.

　　　Finally, the District incorrectly claims that M.B. and I.G. no longer have live

claims in this case.  *See* Dkt. 245 at 9.  As explained in the Fourth Amended Complaint,

M.B. and I.G. still have unresolved claims for attorneys' fees from their underlying administrative hearings and this case. *See* Dkt. 232 ¶¶ 104 n.2, 132 n.3. Further, at the time the operative complaint was filed, neither had received final judgments as to their claims, although the substance of their administrative appeals was indeed decided by the Court. Plaintiffs thus retained their allegations in the amended complaint to ensure that M.B. and I.G.'s attorneys' fees issues are resolved and to ensure that they would receive a final judgment as to all issues alleged.

Plaintiffs made clear in the Fourth Amended Complaint the current procedural status of these Plaintiffs. Like W.H. and I.B., these Plaintiffs continue to have a live stake in the denial of their class certification motion. It would thus be inappropriate to dismiss those parties at this time.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny the Defendant's Motion to Dismiss the Plaintiffs' Fourth Amended Complaint.


DATED: May 14, 2019                    LEARNING RIGHTS LAW CENTER

                                       LAW OFFICE OF SHAWNA L. PARKS

                                       DISABILITY RIGHTS ADVOCATES


                              By:    /s/ Shawna L. Parks
                                     Shawna L. Parks
                                     Stuart Seaborn
                                     Jessica Agatstein
                                     Attorneys for Plaintiffs