ALBERT ERKEL (SBN 93793)
aerkel@ghslaw.com
NORMA NAVA FRANKLIN (SBN 266827)
nnava@ghslaw.com
JANET LY (SBN 211401)
jly@ghslaw.com
GARCIA HERNANDEZ SAWHNEY, LLP
801 N. Brand Blvd., Suite 620
Glendale, CA 91203
PHONE (213)-347-0210
FAX (213) 347-0216

Attorneys for Defendants Oxnard School District, Cesar Morales, Ernest Morrison, Debra Cordes, Denis O'Leary, Veronica Robles-Solis, and Monica Madrigal Lopez

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.R., a minor, by and through her guardian ad litem, Janelle McCammack, et al,<br><br>                    Plaintiffs,<br>v.<br><br>OXNARD SCHOOL DISTRICT; CESAR MORALES, Superintendent of Oxnard School District, in his official capacity; ERNEST MORRISON, President of the Board of Trustees, in his official capacity; DEBRA CORDES, Clerk of the Board of Trustees, in her official capacity; DENIS O'LEARY, Trustee of the Board of Trustees, in his official capacity; VERONICA ROBLES-SOLIS, Trustee of the Board of Trustees, in her official capacity; MONICA MADRIGAL LOPEZ, Trustee of the Board of Trustees, in her official capacity; and DOES 1 TO 10, inclusive<br><br>                    Defendant | Case No.: 2:17-cv-04304-JAK-FFM<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:  June 17, 2019**<br>**Time: 8:30 a.m.**<br>**Court: 10B**<br>         **First Street Courthouse** |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. The Court may consider Plaintiffs' failure to exhaust their administrative remedies in this motion to dismiss because their failure to exhaust is clear from the face of the Fourth Amended Complaint. ............................................. 2

    B. The OAH and the CDE will appropriately address Plaintiffs' claims which are based on a denial of FAPE. ...................................................................... 3

    C. Plaintiffs' extraordinary claim that the District's child find policies render its entire special education system infirm conflicts with their history of failed attempts to present class representatives with Article III standing ................. 5

    D. Prior proposed class representatives lacked standing because they *prevailed* in their administrative hearings before the OAH, not simply because they exhausted their administrative remedies. ........................................................ 8

    E. PLN cannot acquire Article III standing by simply alleging that it disproportionately devotes its resources to one of its core programs over others. .......................................................................................................... 9

    F. MB and IG's claims for attorneys' fees do not require a repetition of allegations previously addressed by this court. ............................................ 11

III. CONCLUSION ................................................................................................. 11

1

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Cases

*A.P. ex rel. Powers v. Woodstock Bd. of Educ.*,
   572 F.Supp.2d 221 (D.Conn.2008) .................................................................7

*Albino v. Baca*,
   747 F. 3d 1162 [9th Cir. 2014]..........................................................................3

*Beth v. Carroll*,
   87 F.3d 80 (3rd Cir. 1996)................................................................................6

*Chirstopher S. ex rel. Rita S. v. Stanislaus County Office of Educ.*,
   384 F.3d 1205 (9th Cir. 2004) ..........................................................................4

*Christopher S., ex rel. Rita S. v. Stanislaus Cty. Office of Educ.*,
   384 F.3d 1205 (9th Cir. 2004) .....................................................................4, 5

*D.K. v. Abington Sch. Dist.*,
   696 F.3d 233 (3d Cir. 2012) .............................................................................7

*D.L. v. D.C.*,
   450 F.Supp. 2d 11, n.2 (D.D.C. 2006) .............................................................5

*East Bay Sanctuary Covenant v. Trump*,
   909 F.3d 1219 (9th Cir. 2018) ........................................................................10

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review,*
   959 F.2d 742 (9th Cir. 1991) ..........................................................................10

*Fair Hous. Council of San Fernando Valley v. Roommate.com*,
   666 F.3d 1216 (Ninth Cir. 2012)....................................................................10

*Fry v. Napoleon Cmty. Sch.*,
   137 S. Ct. 743 (2017) .......................................................................................3

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed. 2d 214 (1982) .................................10

*Heldmen v. Sobol*,
   962 F.2d 148 (2d Cir. 1992).............................................................................7

*Hoeft v. Tucson Unified School Dist.*,
  967 F.2d 1298 (9th Cir. 1992) .................................................................................. 3, 4, 8
*J.G. v. Board of Educ.*,
  830 F.2d 444 (2d Cir. 1987) ................................................................................................ 6
*J.S. v. Scarsdale Union Free Sch. Dist.*,
  826 F.Supp.2d 635 (S.D.N.Y.2011) ..................................................................................... 7
*McBride v. Lopez*,
  807 F.3d 982 (9th Cir. 2015) ............................................................................................... 3
*P.V. v. Sch. Dist. of Phila.*,
  2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) ....................................................................... 7
*Paul G. v. Monterey Peninsula Unified Sch. Dist.*,
  2018 WL 2763302 (N.D. Cal. 2018) .................................................................................. 6
*S.B. v. California Dept. of Educ.*,
  327 F.Supp.3d 1218 (E.D. Cal. 2018) ................................................................................. 3
*Spokeo, Inc. v. Robins*,
  -- U.S. --, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ..................................................... 10
*Student A v. Berkeley Unified Sch. Dist.*,
  2017 WL 4551514 (N.D. Oct. 12, 2017) ............................................................................ 7

Statutes

20 U.S.C. § 1401 ........................................................................................................................ 3
20 U.S.C. § 1415 ..................................................................................................................... 3, 4
34 C.F.R. § 300.660 ................................................................................................................... 4
34 C.F.R. § 300.662 ................................................................................................................... 4
34 C.F.R. § 76.781 ..................................................................................................................... 4
Cal. Code Regs., tit. 5 § 4600 .................................................................................................... 4
Cal. Code Regs., tit. 5 § 4670 .................................................................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In yet another failed attempt to assert a class action against Defendants, Plaintiffs propose the appointment of class representatives A.E., D.C., and M.L. who have all failed to exhaust their administrative remedies. In addition, Plaintiffs W.H., I.B., and F.S. have also failed to exhaust their administrative remedies. Plaintiffs' failure to exhaust these remedies is apparent on the face of their Fourth Amended Complaint ("Fourth AC").

Plaintiffs do not dispute that they failed to exhaust their administrative remedies. Rather, they argue that they should be excused from this exhaustion requirement simply because they *allege* that the District's purportedly deficient "child find" policy results in "systemic" harm to all students within the District. Under Plaintiffs' theory, they essentially argue that they discovered a loophole for the IDEA's administrative exhaustion requirement: a Plaintiff who pleads systemic or injunctive relief gets to bypass the IDEA's exhaustion requirement because the Office of Administrative Hearings ("OAH") has no authority to grant systemic relief. Plaintiffs' theory is unsupported by Ninth Circuit law and fails to consider the role of the California Department of Education ("CDE") as an alternative forum for exhaustion.

In addition, Plaintiffs unsuccessfully argue that the District's entire special education program is infirm and inaccessible to all students because of its allegedly deficient "child find policies." This argument, however, is undermined by Plaintiffs' two year quest to secure class representatives with Article III standing.

Contrary to the arguments raised in Plaintiffs' opposition, Plaintiffs and their counsel know that the District has in place mechanisms to locate, identify, and assess students with known or suspected disabilities. Were this not the case, Plaintiffs counsel would not have refused to disclose the identity of the proposed class representatives to the District prior to filing the Fourth AC.

Plaintiffs' Fourth AC, therefore, fails to plead a truly "systemic" wrong that merits excusing the IDEA's exhaustion requirement. On these grounds, the Court should dismiss A.E., M.L., D.C., W.H., I.B. and F.S.'s claims because they failed to exhaust their administrative remedies.

In addition, Defendants request that the Court dismiss Plaintiffs Primero Los Niños ("PLN") for lack of standing. Plaintiffs' argument that PLN suffers harm by devoting more time to one component of its core mission rather than other components of its core mission does not confer standing on PLN.

Finally, Defendants request that the Court dismiss M.B.'s and I.G.'s claims and request for compensatory educational services because this court properly resolved these claims when ruling on their respective administrative appeals. The only claims that should remain are M.B.'s and I.G.'s claims for attorneys fees incurred in their respective administrative cases.

## II. ARGUMENT

**A. The Court may consider Plaintiffs' failure to exhaust their administrative remedies in this motion to dismiss because their failure to exhaust is clear from the face of the Fourth Amended Complaint.**

Plaintiffs' concede that A.E., M.L., D.C., W.H., and I.B. failed to exhaust administrative remedies by failing to first seek relief with the OAH or the CDE. Dkt. 232 Fourth AC, ¶ 176 (stating that it would have been futile to attempt to seek relief from the OAH since the OAH dismissed Primero Los Niños and F.S.'s claims for systemic relief); see also Fourth AC, ¶ 23 (stating that "the administrative system cannot afford Plaintiffs complete relief given the nature of the systemic problems in the District.")

Plaintiff F.S. also failed to exhaust her administrative remedies as to her requested relief for compensatory educational services alleged in this action. To preserve F.S.'s Article III standing, counsel for F.S. refused to include a request for compensatory educational services in her underlying due process complaint, despite several requests by the ALJ to do so. Dkt. 246-1, Request for Judicial Notice ("RJN"), Ex. E, OAH Pre-

Hearing Conference Order, ¶ 2. Accordingly, the OAH could only rule on the sole issue before it: whether the District failed to meet its Child Find Obligations.[1]

Plaintiffs' failure to exhaust is undisputed. There is no need for further factual development as to this issue. This complaint, therefore, "falls into the category of 'rare cases' noted in (*Albino v. Baca*, 747 F. 3d 1162 [9th Cir. 2014]) where the (Plaintiffs') failure to exhaust is clear from the face of the complaint and the result would not be altered by discovery." See *McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015).

The Court may properly consider Plaintiffs' failure to exhaust administrative remedies on this motion to dismiss.

**B. The OAH and the CDE will appropriately address Plaintiffs' claims which are based on a denial of FAPE.**

There is no dispute that Plaintiffs' allegations are based on the District allegedly denying FAPE to its students by failing to meet its child find obligations. Dkt. 232, Fourth AC, ¶¶ 199 and 211. In instances where Plaintiffs allege a denial of FAPE, the IDEA requires Plaintiffs to exhaust administrative remedies. Plaintiffs may exhaust administrative remedies by filing a due process complaint with the OAH that proceeds to a due process hearing before an impartial hearing officer. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017); *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing 20 U.S.C. § 1415(b)(1)(E).); *S.B. v. California Dept. of Educ.*, 327 F.Supp.3d 1218, 1244 (E.D. Cal. 2018) (citing 20 U.S.C. § 1415(f)(1)(A).) The hearing officer may order the educational agency to provide a FAPE or to reimburse the parent for the cost of acquiring necessary services, among other relief. *S.B.*, 327 F.Supp. 3d at 1244 (citing 20 U.S.C. §§ 1401(22), 1412(a)(10)(C)(ii).)

Plaintiffs, however, are dissatisfied with this procedure. Plaintiffs argue that requiring them to exhaust this procedure would be futile because the OAH cannot order

---

[1] Plaintiff F.S. confirms in opposition to this motion that she did not seek administrative remedies regarding compensatory educational services when stating: "If the Court wishes Plaintiffs to file an individual administrative matter in the meantime to determine F.S.'s remedies, Plaintiffs can certainly do so. Dkt. 249, Pls' Opp'n. to Defs' Mot. to Dismiss ("Pls' Opp'n"), 13, n. 2.

3

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

the District to reform its allegedly deficient child find policies and procedures. Dkt. 232, Fourth AC, Prayer for Relief, ¶ 2; see also Dkt. 249, Pls' Opp'n 6:3-20.

The OAH, however, is not the exclusive forum for exhausting administrative remedies. In fact, either concurrently or in the alternative, Plaintiffs may also exhaust administrative remedies by initiating a complaint resolution procedure ("CRP") with the California Department of Education. Federal regulations provide an administrative mechanism for ensuring state and local compliance with federal funded educational programs including the IDEA. *Hoeft*, 967 F.2d at 1300 (citing 20 U.S.C. § 1415(b)(1)(E).); see also *Chirstopher S. ex rel. Rita S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1210 (9th Cir. 2004) These regulations, originally part of the Education Division General Administrative Regulations ("EDGAR"), require a state to adopt a CRP for claims that a state or local agency is violating the IDEA. *Christopher S.*, 384 F.3d at 1210 (citing 34 C.F.R. §§ 300.660, 300.662). The state EDGAR complaint procedure includes a time limit of 60 days for the state to investigate and resolve complaints. *Hoeft*, 967 F.2d at 1300 (citing 34 C.F.R. § 76.781(a), (b).) A complainant dissatisfied with the state's disposition of an EDGAR complaint may request review of the state's decision by the U.S. Secretary of Education. *Id.* (citing 34 C.F.R. 76.781(c).)

California adopted a complaint procedure as required by EDGAR. Cal. Code Regs., tit. 5 § 4600, et seq. (2019). Specifically, the CDE may require the District to correct its child find policies and procedures if, after an investigation into Plaintiffs' complaints, it determines that the District is failing to comply with the IDEA. Id., § 4670(a). To ensure compliance with the IDEA, the CDE may withhold funds from the District, condition eligibility for funds on compliance with the IDEA, or even commence a court proceeding against the District for a court order mandating compliance. Id.

Plaintiffs do not dispute that they failed to avail themselves of their administrative remedies before the OAH and the CDE. Instead, in a three line footnote, Plaintiffs merely reference an administrative proceeding filed by unrelated parties nearly a decade ago to presumably argue that requiring Plaintiffs to file a proceeding with the CDE would

4

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

be futile. Dkt. 249, Pls' Opp'n, 13:12, n. 3. However, this three line footnote fails to engage in the intellectually rigorous exercise of also addressing the IDEA's countervailing policy that grants state agencies primary enforcement power to correct shortcomings in their special education programs.[2] See, *Christopher S., ex rel. Rita S. v. Stanislaus Cty. Office of Educ.*, 384 F.3d 1205, 1209 (9th Cir. 2004).

Plaintiffs cannot choose to enforce certain sections of the IDEA while ignoring others. Per the statute's mandate Plaintiffs must exhaust administrative remedies, including their remedies with the CDE, before asserting their claims in this court.

### C. Plaintiffs' extraordinary claim that the District's child find policies render its entire special education system infirm conflicts with their history of failed attempts to present class representatives with Article III standing.

Plaintiffs argue that the District's child find problem is "systemic" and that it renders the *entire* special education program unavailable to all District students. Dkt. 249, Pls' Opp'n 8:15-22. In support of this argument, Plaintiffs rely on a two year old OAH opinion that characterized District staff at one school as having a "systemic" misunderstanding of their child find duties. Dkt. 232, Fourth AC, ¶ 129. Arguing futility, Plaintiffs point to the OAH's inability to grant systemic relief as grounds for excusing their exhaustion of administrative remedies. As discussed above, however, the IDEA empowers the CDE to potentially grant Plaintiffs the "systemic" relief that they seek. See *Paul G. v. Monterey Peninsula Unified Sch. Dist.*, 2018 WL 2763302 (N.D.

---

[2] Plaintiffs' also argue that the Court should apply the "vicarious exhaustion" rule or "single filing rule" to this case. There is no case in the Ninth Circuit that has applied this rule to IDEA claims. Plaintiffs also fail to reconcile this rule with the IDEA's clear mandate to exhaust administrative remedies.

The Court in *D.L. v. D.C.*, 450 F.Supp. 2d 11, 17 n.2 (D.D.C. 2006) applied the single filing rule in that case, which involved a complete breakdown of the D.C. school district's child find program. Indeed, Plaintiffs in that case appear to have exhausted the EDGAR procedures under the IDEA. Both the United States Department of Education and the Office of Special Education Programs had notified Defendants of their systemic failure to comply with their child find requirements. Despite repeated notices from these entities for non-compliance, Defendants failed to take any corrective action, and the Director of Special Education programs denied that they had a child find problem. *Id.* n. 4-5. The facts of this case are distinguishable from the facts in *D.L.*

Cal. 2018) (unpersuaded by a nearly identical argument regarding "systemic harms" that Plaintiffs make in this case.)

In addition, Plaintiffs' history of failing to identify a class representative with Article III standing undermines their argument that the District's special education programs are unavailable to all students. In prior pleadings, law and motion, and at oral argument before this Court, Plaintiffs acknowledged the District's process for assessing and providing its students with special education services. Dkt. 246, RJN, Ex. G, February 4, 2019 Reporter's Transcript, 20:13-18 (confirming that the District promptly initiates a process to assess students). By the time Plaintiffs filed their Third Amended Complaint, the District had located, identified, and assessed all of the proposed class representatives within that complaint. Dkt. 145, Third Amended Complaint, ("TAC") ¶¶ 5, 7, 9, 11-14, 69, 99, and 182. Plaintiffs also concede that the District promptly offers assessments once it discovers that it failed to find its students. Dkt. 246, RJN, Ex. G, February 4, 2019 Reporter's Transcript, 20:13-18. To preserve their Article III standing, Plaintiffs' counsel even refused to reveal the identities of the proposed class representatives prior to filing the Fourth AC because Plaintiffs' counsel did not want the District to immediately offer them assessments. Dkt. 246, RJN, Ex. C, Pls. Opp'n to Defs.' Ex Parte Application, 8:16-24; RJN Ex. D, Declaration of Stuart Seaborn in support of Pls. Opp'n to Defs.' Ex Parte Application, ¶ 5. Accordingly, the District's special education program continues to provide its students with special education services, notwithstanding Plaintiffs' claims that its child find policies make the entire special education program inaccessible.

Plaintiffs allegations are insufficient to plead a "systemic" problem. See *Beth v. Carroll,* 87 F.3d 80, 88 (3rd Cir. 1996) (alleging a challenge to the state's entire system for resolving due process complaints under the IDEA); *J.G. v. Board of Educ.*, 830 F.2d 444, 446-447 (2d Cir. 1987) (alleging that the City's school system deprived all students of proper notice and a hearing under the IDEA); *New Mexico Ass'n for Retarded Citizens*, 678 F.2d 847, 850 (10th Cir. 1982) (alleging that the state's entire special

education system was infirm for which no remedies were available at the administrative level); *Heldmen v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992)(a challenge that implicated the entire due process system.)

Plaintiffs' reliance on two unpublished cases fail to support their allegations of "systemic" harm. *Student A v. Berkeley Unified Sch. Dist.*, 2017 WL 4551514 (N.D. Oct. 12, 2017) and *P.V. v. Sch. Dist. of Phila.*, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) involve facts substantially distinguishable from this case. In *Berkeley Unified*, the students exhausted the CDE's CRP procedures. *Berkeley Unified Sch. Dist.*, 2017 WL 4551514 at *4. The named plaintiffs in this case have not availed themselves of CDE's procedures. *P.V. v. Sch. Dist. of Philadelphia* is not binding on this court and has never been cited by any court in the Ninth Circuit. This case is also factually distinguishable because, unlike this case, it involves an "automatic autism transfer policy" that is invalid on its face as a matter of law. *Id.* at *1.

Finally, Plaintiffs' challenge to the District's child find policies raise questions of substantive educational policies that require a fact-specific inquiry into individual cases. Child find does not demand that schools conduct a formal evaluation of every struggling student. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012) (citing *J.S. v. Scarsdale Union Free Sch. Dist.,* 826 F.Supp.2d 635, 661 (S.D.N.Y.2011) ("The IDEA's child find provisions do not require district courts to evaluate as potentially 'disabled' any child who is having academic difficulties.").) "A school's failure to diagnose a disability at the earliest possible moment is not *per se* actionable, in part because some disabilities 'are notoriously difficult to diagnose and even experts disagree about whether [some] should be considered a disability at all.'" *D.K.*, 696 F.3d at 249 (citing *A.P. ex rel. Powers v. Woodstock Bd. of Educ.,* 572 F.Supp.2d 221, 226 (D.Conn.2008).) Indeed, allegations related to Plaintiffs A.E. and M.L. raise distinct issues related to the timing of assessments for students who are English Language Learners ("ELL") and who spend their formative educational years in a foreign country. See Dkt. 232, Fourth AC, ¶¶ 48 and 53. Allegations related to Plaintiffs W.H. and I.B. raise distinct issues related to the

thoroughness of assessments that fail to initially find the student eligible for special education services. Dkt. 232, Fourth AC, ¶¶ 155 and 164. These issues of substantive educational policy, apparent on the face of the Fourth AC, are precisely the types of issues that the IDEA's administrative process was designed to address. *Hoeft*, 967 F.2d at 1309. An inquiry into these issues would therefore further the purposes of exhaustion.

Per the IDEA, Plaintiffs must exhaust their administrative remedies before asserting their claims with this court.

### D. Prior proposed class representatives lacked standing because they *prevailed* in their administrative hearings before the OAH, not simply because they exhausted their administrative remedies.

Plaintiffs also contend, without any basis, that District counsel represented to the Court that the "original three named Plaintiffs lacked standing *because* they exhausted." Dkt. 249, Pls. Opp'n at 2:14-15 and 11:9-11. Plaintiffs' argument is premised on a strained reading of a January 29, 2018 hearing transcript.

At this hearing, Defendants' counsel responded to a series of questions by the Court that sought to reconcile Plaintiffs' allegations of "systemic" harm with their lack of Article III standing as a result of prevailing in their administrative claims. See, Dkt. 116, May 9, 2018 Transcript for proceedings held on January 29, 2018, 17:21-20:9. In responding to these questions, Defendants' counsel generally acknowledged that Courts have recognized exceptions to the exhaustion of administrative remedies. However, contrary to Plaintiffs' reading of the transcript, Defendants' counsel did not argue or concede that those exceptions applied in this case. In fact, Defendants' counsel confirmed that she would have to do additional research to determine whether any exceptions to exhaustion applied in this action. See, Id., 19:20-20:9

Plaintiffs' counsel knows that Plaintiffs lacked standing because they *prevailed* after they exhausted their administrative remedies and not simply because they exhausted their administrative remedies. Indeed, in its June 6, 2018 order, the Court clarified this issue for the parties when it stated:

8

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

> "Plaintiffs contend that there is no clear authority in the Ninth Circuit as to what types of relief are sufficient to constitute 'structural, systemic reform.' As a result, Plaintiffs argue that if new plaintiffs were brought into this action, they may lack standing. Plaintiffs position fails to address whether there are one or more other potential plaintiffs who have exhausted their respective administrative remedies, but did not prevail in the administrative proceedings."

Dkt. 128, June 6, 2018 Civil Minute Order, p. 10.

Plaintiffs' contention that District counsel somehow argued that an exception to exhaustion applies in this case is unsupported by the January 29, 2018 hearing transcript.

**E. PLN cannot acquire Article III standing by simply alleging that it disproportionately devotes its resources to one of its core programs over others.**

Plaintiffs argue that PLN has Article III standing to assert class claims because its focus on the special education component of its core mission has "made it more challenging to address other issues" of its core mission. Dkt. 249, Pls' Opp'n. 17:15-17. Specifically, Plaintiffs argue that PLN has standing because it is engaged in:

> "…work to educate its members about their rights to have their children assessed for appropriate disability based services and the procedures for challenging the District's failure to conduct such assessments, the time it spent issuing public records act requests to obtain information about this issue, and the time and resources it utilized in making referrals to advocates and lawyers for affected members."

Id., 17:16-21.

These activities alleged in the Fourth AC are identical to the core activities that Plaintiffs asserted as part of PLN's mission in the Third Amended Complaint. Dkt. 145, TAC ¶ 27. In its February 15, 2019 Order, the Court determined that PLN devoting time

to these activities does not "perceptibly impair[] [PLN's] ability to provide the services [it was] formed to provide." Dkt. 207, February 15, 2019 Civil Minute Order, p. 17.

Without curing their pleading deficiencies as to PLN, Plaintiffs argue that PLN is like the organizations in *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018). Organizational standing in *East Bay*, was premised on those organizations suffering a diversion of resources *form their core mission* or an interference with their core mission. *Id.* at 1242 (the uncontroverted evidence showed that enforcement of the rule at issue discouraged asylum seekers from receiving legal aid from the organizations and temporarily required the organizations to convert their asylum practice (a core mission) into a removal defense program (which is not part of a core mission).) The Fourth AC does not allege that the District's child find policies interfere with PLN's core mission or divert resources from PLN's core mission.

Plaintiffs also incorrectly argue that PLN is analogous to the fair housing councils in *Fair Hous. Council of San Fernando Valley v. Roommate.com*, 666 F.3d 1216, 1219 (Ninth Cir. 2012). However, unlike PLN in this case, the fair housing councils in *Roommate.com* had to divert financial resources from their core mission to develop new education and outreach campaigns targeting discriminatory roommate advertising. *Id.* Plaintiffs do not allege that PLN has had to divert its resources from its core mission.

To demonstrate Article III standing, PLN like any other plaintiff must show a "concrete and particularized" injury that is "fairly traceable" to the District's conduct and "that is likely to be redressed by a favorable judicial decision." *East Bay Sanctuary Covenant*, 909 F.3d at 1240 (citing *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547-48, 194 L. Ed. 2d 635 (2016).) Organizations can demonstrate organizational standing by showing that the challenged "practices have perceptibly impaired (their) ability to provide the services (they were) formed to provide." *Id.* at 1241 (citing *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review,* 959 F.2d 742, 748 (9th Cir. 1991) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed. 2d 214 (1982).)

The District has not impaired PLN's ability to provide services that are at the core of their mission. Indeed, PLN continues to respond to parent complaints, seek referrals and options for advocacy regarding the District's child find policy, issue public records requests to obtain information regarding the District's child find policy, and host events to connect advocates with parents. Dkt. 232, Fourth AC ¶¶ 171-173; Dkt. 145, TAC, ¶¶ 187-189. PLN's choice to devote more time to these core components of its mission rather than other components of its mission does not confer on PLN Article III standing. Plaintiffs' fail to cite any case to the contrary.

PLN's mission is therefore not hampered, and the organization suffers no injury, by advocating that the District timely identify, locate, and assess students or by introducing its members to legal advocates for additional assistance.

Consistent with the Court's prior ruling on this issue, PLN continues to lack Article III standing and should be dismissed.

**F. MB and IG's claims for attorneys' fees do not require a repetition of allegations previously addressed by this court.**

Plaintiffs do not dispute that this court has resolved M.B.'s and I.G.'s appeals and their related claims. Although M.B. and I.G. continue to have claims for attorneys fees before this court, their attorneys fees claims do not merit their re-allegation of claims that this Court has considered and ruled upon. Accordingly, Defendants request that the Court dismiss M.B.'s and I.G.'s repeated claims that the court previously resolved in is February 4, 2019 and February 15, 2019 rulings.

**III. CONCLUSION**

M.B.'s and I.G.'s claims and request for compensatory educational services should be dismissed with prejudice because this court properly resolved these claims when ruling on their respective administrative appeals. The only claims that should remain are M.B.'s and I.G.'s claims for attorneys fees incurred in their respective administrative cases.

11

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

Defendants request that PLN be dismissed with prejudice. Plaintiffs Fourth AC clearly shows that Plaintiffs cannot cure this their pleading deficiency as to PLN.

Finally, Defendants request that the Court dismiss all claims asserted by Plaintiffs A.E., M.L., D.C., F.S., W.H., and I.B. Their claims are based on a denial of FAPE. The IDEA requires Plaintiffs to exhaust administrative remedies. The Fourth AC failed to allege sufficient facts indicating that Plaintiffs' claims may be excused from the IDEA's exhaustion requirement. Accordingly, A.E., M.L., D.C., F.S., W.H., and I.B. fail to state claims upon which relief can be granted.

Dated: May 21, 2019      GARCIA HERNANDEZ SAWHNEY, LLP

By_____
Norma Nava Franklin
Attorneys for Defendants
Oxnard School District, Cesar Morales,
Ernest Morrison, Debra Cordes,
Denis O'Leary, Veronica Robles-Solis, and
Monica Madrigal Lopez