UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) ORDER RE PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION (DKT. 233);**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT (DKT. 245)**

I.     <u>Introduction</u>

Plaintiff J.R.,[1] who is a minor, brought this action through a guardian ad litem, advancing individual claims for alleged violations of certain disability rights. Dkt. 1. The Complaint named the following defendants: the Oxnard School District ("OSD" or the "District") and Cesar Morales, Ernest Morrison, Debra Cordes, Denis O'Leary, Veronica Robles-Solis and Monica Madrigal Lopez in their official capacity only (collectively, "Defendants"). *Id.* In an amended complaint, J.R. and two other minors, M.B. and I.G., each acting through a separate guardian ad litem, presented class action allegations for which each was a proposed class representative. Dkt. 14. The plaintiffs then filed a Second Amended Complaint ("SAC"). Dkt. 36. However, the SAC was deficient on its face with respect to whether the named plaintiffs had Article III standing for the claims for declaratory and injunctive relief. Dkt. 128. Accordingly, the parties stipulated to the filing of a third amended complaint so that the plaintiffs could seek to address that issue. Dkt. 142.

On November 12, 2018, the plaintiffs filed a Third Amended Complaint ("TAC"), which added several new named plaintiffs: the organization Primero Los Ninos and four new minors, F.S., I.H.,[2] W.H. and I.B., each acting through a separate guardian ad litem. Dkt. 145. Defendants filed a motion to dismiss the TAC on the basis of issues as to Article III standing similar to those raised in response to the SAC. Dkt. 163. On February 15, 2019, an Order issued that granted the motion to dismiss without prejudice, because the proposed class representatives did not have Article III standing to bring the class claims. Dkt. 207. The Order directed that "[a]ny amended complaint shall address the deficiencies in Article III standing," and instructed that "Plaintiffs may consider narrowing the class claims and the class definition to correspond to the claims of the proposed class representatives, creating sub-classes, and/or adding new proposed class representatives with standing to bring the broader set of claims." *Id.* at 17.

---

[1] On March 29, 2019, J.R. stipulated to dismiss her individual claims, pursuant to a settlement agreement. Dkt. 230.
[2] On March 19, 2019, I.H. stipulated to dismiss his individual claims. Dkt. 219.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

On April 1, 2019, the plaintiffs filed a Fourth Amended Complaint ("4AC"), which is the operative one. Dkt. 232. The 4AC added three new named plaintiffs: A.E., M.L. and D.C., each acting through a separate guardian ad litem. *Id.*[3]  The 4AC alleges that the policies and procedures of the District for assessing the needs of students with potential disabilities and for then addressing them are insufficient. One basis for this claim is that these policies and procedures do not include the timely and adequate referral of students for special education assessments as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 14000 *et seq.*, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq*.

The 4AC defines the proposed class as follows:

> [A]ll students in Oxnard School District who have or may have disabilities and who have been or will be subject to the District's policies and procedures regarding identification and evaluation of students for purposes of providing services or accommodations under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

4AC ¶ 179.

M.B. is an 11-year-old, sixth grade student with severe expressive and receptive language disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). *Id.* ¶¶ 24, 66. I.G. is an 11-year-old, sixth grade student with anxiety disorder and insomnia. *Id.* ¶¶ 25, 106. F.S. is a nine-year-old,[4] fourth grade student who has "catastrophically low" academic performance, speech and language impairments, and a suspected attentional disability. *Id.* ¶¶ 26, 148-50, 152. W.H. is an eight-year-old, second grade student with expressive language delay, deficits in phonological processing, auditory comprehension and attention, and a learning disability. *Id.* ¶¶ 27, 153, 155, 158. I.B. is a nine-year-old, fourth grade student with issues of memory, attention, executive functioning and auditory processing. *Id.* ¶¶ 28, 161, 164. A.E. is a 12-year-old, seventh grade student who "has demonstrated flags of emotion- and attention-related disabilities. *Id.* ¶¶ 29, 45-47. M.L. is a 12-year-old, seventh grade student who functions far below grade level in all academic subjects and "has significant disabilities that affect his learning. *Id.* ¶¶ 30, 56-59. D.C. is a 13-year-old, eighth grade student who has fallen behind "benchmarks" in English and math and demonstrated "compromised" reading skills. *Id.* ¶¶ 31, 62-65. The TAC alleges that each of the individual Plaintiffs requires special education services under the IDEA, and that each is a qualified individual with a disability as defined by Section 504, 29 U.S.C. § 705(20), and the ADA, 42 U.S.C. § 12102. *Id.* ¶¶ 24-31.

Primero Los Ninos is an organization whose members are the parents of children with disabilities and/or difficulties learning English who are enrolled in the Oxnard School District. *Id.* ¶ 32.

The 4AC alleges that Defendants have failed, and continue to fail to identify, evaluate and provide

---

[3]  All current named plaintiffs, *i.e.*, M.B., I.G., F.S., W.H., I.B., A.E., M.L., D.C. and PLN, are referred to collectively in this Order as "Plaintiffs." Further, their ages and grade levels are stated as alleged in the 4AC, notwithstanding that both may have changed as of the time of the issuance of this Order.

[4]  Paragraph 134 of the 4AC erroneously states that F.S. is eight years old. However, the TAC previously alleged that F.S. is a nine-year-old student, which is confirmed by the declaration of her mother. 4AC ¶ 26; Declaration of E.L., Dkt. 157 ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

services and accommodations with respect to the individual Plaintiffs and others who are similarly situated. *Id.* ¶ 23. Based on those allegations, the 4AC advances causes of action for separate, claimed violations of the following statutes: (i) Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*; (ii) Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*; and (iii) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Plaintiffs seek to certify the proposed class as to all three causes of action.

On November 22, 2017, Plaintiffs filed a first motion for class certification. Dkt. 39. It was denied based on a determination that the Plaintiffs lacked necessary Article III standing. Dkt. 128. However, the denial was without prejudice to Plaintiffs seeking leave to amend the SAC to add one or more plaintiffs with standing under Article III. *Id.* at 10. After the filing of the TAC, Plaintiffs filed a renewed motion for class certification, which was denied on the same grounds. Dkts. 150, 207.

On April 1, 2019, Plaintiffs filed a renewed motion for class certification as to the 4AC ("Motion for Class Certification"). Dkt. 233.[5] The Motion for Class Certification seeks the following: (i) certification of the proposed class claims as a class action under Fed. R. Civ. P. 23(b)(2); (ii) appointment of Plaintiffs A.E., M.L. and D.C. as class representatives; and (iii) appointment of the Learning Rights Law Center, the Law Office of Shawna L. Parks, and Disability Rights Advocates as class counsel. *Id.* at 2. Defendants filed an opposition to the Motion for Class Certification, and Plaintiffs filed a reply. Dkts. 252, 256.[6]

On April 30, 2019, Defendants filed a motion to dismiss the 4AC pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Motion to Dismiss"). Dkt. 245. In support of the Motion to Dismiss, Defendants contend that several of the Plaintiffs do not have standing under Article III, and that others failed to exhaust administrative remedies. Plaintiffs filed an opposition to the Motion to Dismiss, and Defendants filed a reply. Dkts. 249, 253.

A hearing was held on these motions on June 17, 2019, and the matters were taken under submission. Dkt. 261. For the reasons stated in this Order, the Motion for Class Certification is **GRANTED**, and the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## II.     Background

### A.     IDEA, ADA and Section 504

Under the IDEA, school districts that receive federal funding, including the District, are required to provide a "Free Appropriate Public Education" ("FAPE") to all students with disabilities. 20 U.S.C. §§ 1412(a)(1), 1412(b), 1413(a). A FAPE includes special education and related services that conform to the curriculum standards set by the state. It must also conform with each student's Individualized Education Plan ("IEP"). 20 U.S.C. § 1401(9). Special education is "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29).

---

[5] Plaintiffs base the Motion for Class Certification on several new submissions as well as their previous filings from the prior motions for class certification. *See* Dkt. 233 at 2-3. Accordingly, those filings, including the declarations filed in support of the prior motions, have been considered in connection with the renewed motion for class certification.

[6] Plaintiffs and Defendants each filed evidentiary objections in connection with the Motion for Class Certification. Dkts. 252-1, 258, 259. Those objections are addressed in separate orders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|----------|--------------------------|------|---------------|
| Title | J.R. v. Oxnard School District, et al. | | |

To be eligible under the IDEA, a child must have a qualifying disability. This includes a speech or language impairment, emotional disturbance, orthopedic impairment and autism. The student must also show that, as a result of this disability, he or she requires special education and related services. 20 U.S.C. §§ 1401(3), 1414(b)(4)(A). To comply with these requirements, districts must have in effect policies and procedures sufficient to ensure that all students in need of special education and related services are "identified, located, . . . evaluated and" provided an IEP. 20 U.S.C. § 1412(a)(3)(A); *see also* 20 U.S.C. §§ 1412(a)(1), 1412(a)(4)-(7), 1413(a)(1), 1414(a)-(e); 34 C.F.R. §§ 300.111, 300.301, 300.304-311; *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1110 (9th Cir. 2016). A school district has a duty to evaluate a student after receiving notice that he or she may have a covered disability. *JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 794 (9th Cir. 2008). This process is called "Child Find." 20 U.S.C. § 1412(a)(3).

IDEA requires that the local education agency "ensure that . . . the child is assessed in all areas of suspected disability." 20 U.S.C. § 1414(b)(3)(B). Thus, "if a school district is on notice that a child may have a particular disorder, it *must* assess that child for that disorder, regardless of the subjective views of its staff members concerning the likely outcome of such an assessment." *Timothy O.*, 822 F.3d at 1121. In addition, if a parent disagrees with the evaluation of a child obtained by the school district, the parent can request an "independent educational evaluation" at public expense. 34 C.F.R. § 300.502(b)(1). The results of such an evaluation "[m]ust be considered . . . in any decision made with respect to the provision of FAPE to the child." 34 C.F.R. § 300.502(c)(1).

When a school proposes to change the identification, evaluation or educational placement of a student, or fails to make such a change, the parents "have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). In California, the due process hearing is conducted by an Administrative Law Judge ("ALJ") in the California Office of Administrative Hearings ("OAH"). A "party aggrieved by the findings and decision" of the state agency "shall have the right to bring a civil action with respect to the complaint [adjudicated in the due process hearing]." 20 U.S.C. § 1415(i)(2)(A).

      B.      The District's Policies and Procedures

When a parent or teacher requests that a student be assessed for possible disabilities, the District initiates its pre-referral process. That process uses Student Support Teams ("SST") and Coordination of Services Teams ("COST"). A COST is a group of school administrators and teachers that conducts the first review of the potential needs of a student. Dkt. 62 at 10. A COST often is comprised of a school principal, counselor, school psychologist, outreach coordinator, resource specialist, Teacher on Special Assignment ("TOSA") and/or, on occasion, the student's teacher. Declaration of Andres Santamaria ("Santamaria Decl."), Dkt. 68 ¶ 11; Declaration of Bertha M. Anguiano ("Anguiano Decl."), Dkt. 69 ¶ 9; Declaration of Aracely Fox ("Fox Decl."), Dkt. 67 ¶ 7; Declaration of Carmen Serrano ("Serrano Decl."), Dkt. 70 ¶ 13; Declaration of Marlene Breitenbach ("Breitenbach Decl."), Dkt. 72 ¶ 9; Declaration of Sally Wennes ("Wennes Decl."), Dkt. 73 ¶ 8. If a COST determines that a student warrants an assessment, it may make a direct referral for that process. Santamaria Decl. ¶ 12.

An SST is formed if the COST determines that more information is needed to address a possible concern

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

about the needs of the student. Fox Decl. ¶¶ 8-10; Anguiano Decl. ¶ 8; Serrano Decl. ¶ 14; Breitenbach Decl. ¶ 10; Wennes Decl. ¶¶ 9-10. The SST includes the members of the COST as well as the parent, the student's teacher (if not already part of the COST) and other specialists. It may also include the student. Fox Decl. ¶ 7; Anguiano Decl. ¶ 10; Serrano Decl. ¶ 11; Breitenbach Decl. ¶ 6; Wennes Decl. ¶ 10. The SST may recommend additional classroom interventions or services, as well as a follow-up meeting in six to eight weeks to evaluate any progress by the student. Santamaria Decl. ¶ 13. The SST may also determine that a student should be referred for a special education assessment, and then facilitate it. The SST may make this determination either after its initial meeting, or upon the completion of any intervention recommended in that meeting.

Plaintiffs contend that by using the COST and SST processes instead of full special education assessments, the District violated the IDEA. They also contend that, even when such full assessments are initiated, they do not meet the statutory requirements because of the undue delay caused by the COST and SST processes. It is also alleged that the District violated the statutes when it failed to take any action to evaluate certain students. *See, e.g.*, Declaration of L.O. re A.V., Dkt. 50 (no SST meetings or assessments were conducted during a several-year period); Declaration of M.A. re E.H., Dkt. 49 (no SST meetings or assessments during a two-year period); Declaration of O.M. re E.M., Dkt. 52 (no SST meetings or assessments during a four-year period). It is further alleged that, even when the District conducts assessments, it fails to assess students in all areas of suspected disability.

    C.    The Educational History of the Named Plaintiffs Within the District

        1.    <u>Current Proposed Class Representatives</u>

            a)    A.E.

A.E. is a 12-year-old student enrolled at Haydoc Academy. Declaration of T.L. ("T.L. Decl."), Dkt. 233-3 ¶¶ 1, 5. He is currently in the seventh grade. *Id.* ¶ 1. In his second trimester of seventh grade, A.E. received a progress report that reflected failing grades in all subjects. Ex. A to T.L. Decl., Dkt. 233-3 at 5. His mother observed some attentional issues in A.E., and A.E. is in therapy for depression and trauma. T.L. Decl. ¶ 10.

A.E.'s mother declares that "[o]ne of A.E.'s teachers told [her] that [she] should request [a] special education assessment for A.E., but . . . asked that [A.E.'s mother] not mention[] that she had made the suggestion." *Id.* ¶ 6. A.E.'s mother further declares that, in mid-February 2019, she informed the assistant principal at Haydoc that she wanted an evaluation of A.E., but that the assistant principal instructed her to wait. *Id.* She declares that after she heard nothing further from the school, on February 22, 2019, she made a written request for a special education evaluation of A.E. *Id.* ¶ 8; Ex. B to T.L. Decl., Dkt. 233-3 at 7.

An SST meeting as to A.E. was convened on March 11, 2019. T.L. Decl. ¶ 9; Ex. C to T.L. Decl., Dkt. 233-3 at 9-13. The notes from A.E.'s SST "indicate that A.E. needs one-to-one assistance, reduced assignments, and extra time in the classroom," and express other concerns about him. 4AC ¶ 53; Ex. C to T.L. Decl., Dkt. 233-3 at 9-13. A.E.'s mother declares that, at the SST meeting,

        school staff told me that A.E. needed more time, and that he was not ready for an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
| Title | J.R. v. Oxnard School District, et al. | | |

evaluation. I did not understand that I had a right to proceed with my request for an evaluation and, because of what the school staff said, I agreed to allow the school to wait. But I still wanted my son to be assessed, and I am still worried about my son's education.

T.L. Decl. ¶ 9. As of the time the 4AC and Motion for Class Certification were filed, D.C. had not been assessed by the District for special education eligibility.

> b)    M.L.

M.L. is a 12-year-old student enrolled at Cesar Chavez School. Declaration of E.E. ("E.E. Decl."), Dkt. 233-5 ¶ 2. He is currently in the seventh grade. *Id.* He has been a student in the District since third grade. *Id.* M.L.'s mother noticed that he had difficulty with reading and writing. *Id.* ¶ 5. At the end of sixth grade, M.L. received failing grades in all subjects. Ex. E to E.E. Decl., Dkt. 233-5 at 18.

Plaintiffs' counsel arranged for M.L. to sit for a preliminary screening with a neuropsychologist, Dr. Carlos Flores. The goal of the screening was "to see whether [M.L.] ha[d] flags that would indicate the need for further testing. Declaration of Carlos Flores ("Flores Decl."), Dkt. 233-6 ¶¶ 2-3. Based on that screening, Dr. Flores opined that

> M.L. has significant disabilities that will affect his learning, and that academically he is functioning at an exceptionally low level. I suspect he has learning disabilities including a serious auditory processing disorder and dyslexia, but further testing is needed to confirm. I recommend a complete psychoeducational assessment, i.e. an initial special education evaluation, to determine the nature of his disability and his special education needs.

*Id.* ¶ 4. He further opined that "M.L.'s poor reading skills (and therefore his extremely low academic test scores evidenced on the current evaluation) are so obvious; they should have been flagged by his school staff . . . ." *Id.* ¶ 5. The 4AC alleges that "academically [M.L.] performs somewhere in the kindergarten to second grade range, despite nearing the end of seventh grade." 4AC ¶ 58.

An SST meeting was convened as to M.L. on September 27, 2018. E.E. Decl. ¶ 6. However, as of the filing of the 4AC, M.L. had not been assessed by the District for eligibility for special education. E.E. Decl. ¶ 14.

> c)    D.C.

D.C. is a 13-year-old student in the eighth grade. Declaration of M.L. ("M.L. Decl."), Dkt. 233-4 ¶ 1. D.C. attended Fremont Academy in the sixth and seventh grades, and moved to Driffil Elementary School in eighth grade. *Id.* ¶ 3. Her mother has concerns that D.C. has substantial difficulty in school. *Id.* ¶ 4. In seventh grade, D.C. received grade of "D" in English Language Arts, Math, and Science, and her most recent standardized test scores reflect that her English and math performance are below standards. Ex. B. to Declaration of Patricia Van Dyke, Dkt. 233-2 at 11-15.

D.C.'s mother declares that, on November 29, 2018, she faxed a letter to Fremont Academy requesting that D.C. be assessed for special education. M.L. Decl. ¶ 5; Ex. A to M.L. Decl., Dkt. 233-4 at 5-6. However, she reports receiving no response from the school. M.L. Decl. ¶ 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

As with M.L., Plaintiffs' counsel arranged for D.C. to sit for a preliminary screening with Dr. Flores. Based on that screening, Dr. Flores "concluded that D.C has some flags that indicate that further investigation into possible disabilities is needed." Flores Decl. ¶ 8. He opined:

> In particular, her low score in the area of "Word Attack" is of concern, and it likely indicates marked weaknesses in word attack skills (phonological decoding), a factor that unquestionably impacted D.C.'s reading accuracy and comprehension. On paragraph reading, D.C.'s phonological decoding of written language (letter-sound correspondence) was compromised (fourth grade equivalent). She demonstrated numerous reading errors including, function word errors (word substitutions/omission) and a tendency to rush and not take the time to fully read the words (may have employed sight reading strategies). These difficulties are suggestive of a cognitive/auditory processing deficit. This condition is a language-based learning disability that undoubtedly interferes with D.C.'s ability to sound out words accurately.

*Id.* The 4AC alleges that, as of Dr. Flores's screening, "D.C.'s phonological decoding of written language was . . . at the fourth-grade equivalent, even though D.C. is nearing the end of eighth grade." 4AC ¶ 65.

As of the time the 4AC and Motion for Class Certification were filed, D.C. had not been assessed by the District for special education eligibility.

2.     Previous Proposed Class Representatives[7]

a)     F.S.

F.S. is a nine-year-old student enrolled at Brekke Elementary School. Declaration of E.L. ("E.L. Decl."), Dkt. 157 ¶¶ 2, 4. She is currently in the fourth grade. *Id.* ¶ 4. In first and second grade, F.S. received very low grades and test scores. Dkt. 151, Exs. 14-17. In second grade, she received failing grades in all subjects. Dkt. 151, Ex. 15. In third grade, F.S. started receiving reading help before school began for the day. E.L. Decl. ¶ 8. However, her reading skills remained deficient, and she continued to fail English. *Id.* ¶ 9. F.S.'s mother noticed that her Spanish skills were deficient as well, that she did not play with other children, and that she had trouble with attention and focus. *Id.* ¶ 10. F.S.'s mother spoke with F.S.'s teacher about these concerns. *Id.* The school responded by convening an SST meeting concerning F.S. in February 2018. *Id.* ¶ 11; Dkt. 151, Ex. 18. F.S.'s mother explained that she was worried about F.S.'s language facility and academic performance. E.L. Decl. ¶ 11. The school offered interventions to address certain of F.S.'s challenges, but did not conduct an assessment. *Id.* ¶ 12.

In May 2018, F.S.'s mother submitted a request for an assessment of F.S.'s special education needs to the school. *Id.* ¶ 13. Several days later, the school held another SST meeting concerning F.S. *Id.* ¶ 14. F.S.'s mother again expressed her concerns about F.S.'s lack of progress. *Id.* At some point after the meeting, the school gave F.S.'s mother an assessment plan. *Id.* F.S.'s mother signed the assessment plan, although she declares that she did not understand what type of evaluation would be completed. *Id.*

---

[7] This section excludes previous proposed class representatives J.R. and I.H., who are no longer pursuing claims against Defendants. The 4AC does not include the previous allegations as to J.R. and I.H.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

On August 30, 2018, F.S.'s mother filed a due process complaint on behalf of F.S. with the OAH, because the District had failed to conduct an assessment. *F.S. v. Oxnard Sch. Dist.*, OAH Case No. 2018090070. Dkt. 151, Ex. 37. On October 9, 2018, the District completed its assessment of F.S. E.L. Decl. ¶ 16; Dkt. 151, Ex. 21. The assessment determined that certain language, attentional and emotional issues were having adverse effects on F.S.'s learning ability. Dkt. 151, Ex. 21. The District held an IEP meeting at which it was determined that F.S. was eligible for services due to a specific learning disability and speech and language impairments. 4AC ¶ 150, E.L. Decl. ¶ 16. The 4AC alleges that a medical assessment of F.S.'s attentional issues should have been, but was not, conducted. 4AC ¶¶ 149, 152; *see also* E.L. Decl. ¶ 19.[8]

At the OAH hearing on the complaint by F.S., the District stipulated that it should have identified F.S. for evaluation for special education services as of October 31, 2016, approximately two years prior to the date of F.S.'s assessment. Dkt. 151, Ex. 23.

> b) W.H.

W.H. is an eight-year-old student enrolled at Marshall Elementary School. Declaration of E.P. ("E.P. Decl."), Dkt 187 ¶¶ 2, 4. She is currently in the second grade. *Id.* ¶ 4. She continues to have low academic performance. *Id.* ¶ 16. Soon after W.H. began kindergarten, her mother noticed that she had difficulty learning to read, write and use language. *Id.* ¶ 5. In September 2016, W.H.'s mother requested that W.H. be assessed for special education. *Id.* ¶ 7. The District created an assessment plan, which W.H.'s mother reviewed and signed on October 14, 2016. *Id.* On December 6, 2016, the District completed its assessment of W.H. *Id.* ¶ 8; Dkt. 151, Ex. 31. Shortly thereafter, the District held an IEP meeting at which it informed W.H.'s mother than W.H. was not eligible for special education services. E.P. Decl. ¶ 9. Two additional IEP meetings were held concerning W.H. in February and May 2017. *Id.* The result was the same, i.e., W.H. was not eligible for special education services. *Id.* ¶¶ 9-10.

W.H.'s parents disagreed with the District's determination and requested an independent assessment. *Id.* ¶ 10. The District agreed to fund independent evaluations by a neuropsychologist and a speech pathologist. *Id.* The evaluations were completed by January 2018. *Id.* ¶ 11; Dkt. 151, Exs. 32-33. Each evaluator determined that W.H. had certain disabilities and recommended services/accommodations to address them. *Id.* The District held two further IEP meetings in March and April 2018, at which these evaluations were discussed. E.P. Decl. ¶ 12. The District informed W.H.'s mother that it disagreed with the findings of the two new assessments. *Id.* It continued to find that W.H. was not eligible for special education. *Id.* However, it provided Section 504 accommodations for W.H. *Id.* ¶ 13.

W.H.'s mother remained dissatisfied with the District's determinations and requested a third independent assessment of W.H. *Id.* ¶ 14. That assessment was completed on October 14, 2018. *Id.*; Dkt. 151, Ex. 34. It stated as a "recommendation" that W.H. "meets IDEA . . . criteria for Specific Learning Disability." Dkt. 151, Ex. 34. W.H.'s mother attended an IEP meeting on November 16, 2018 to discuss the latest assessment of W.H. E.P. Decl. ¶ 17. She declares that "[i]t is [her] understanding that [W.H.] will be

---

[8] The District's assessment considered the attention-related issues of F.S. *See* Dkt. 151, Ex. 21. However, Plaintiffs argue that the District should have conducted a "medical assessment" of these issues, and that the assessment was not sufficiently thorough as to them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

eligible for special education because of a specific learning disability[,] [b]ut, the IEP was not finished and [W.H.] continues not to have the help through special education." *Id.*

> c)   I.B.

I.B. is a nine-year-old student enrolled at Driffil Elementary School. Declaration of F.B. ("F.B. Decl."), Dkt. 156 ¶ 2, 4. He is currently in the fourth grade. *Id.* ¶ 4. I.B. has received low grades throughout elementary school. *Id.* ¶ 5. His mother also noticed that he had difficulty focusing, and she told those at his school about her concerns. *Id.* ¶¶ 5, 8. In April 2018, I.B.'s mother requested a special education assessment of her son. *Id.* ¶ 7. The school presented her with an assessment plan, which she signed at the end of April. *Id.* The District completed an assessment of I.B. in June 2018. *Id.*; Dkt. 151, Ex. 29. However, the 4AC alleges that the assessment was deficient because it "failed to identify I.B.'s disabling conditions or fully evaluate [him] for attention, behavior, and other learning disabilities." 4AC ¶ 164.[9] Similarly, I.B.'s mother declares that the District did not, but should have, fully evaluated I.B.'s attention and behavioral disorders. F.B. Decl. ¶¶ 8-9.

In September 2018, the District convened an IEP meeting concerning I.B. *Id.* ¶¶ 9-10. Based on the meeting, the District determined that I.B. did not qualify for special education services. *Id.* I.B.'s parents disagreed with the District's conclusion and requested an independent assessment of I.B. *Id.* The District agreed to an independent assessment. *Id.* ¶ 10. However, the independent assessment had not been completed as of the filing of the 4AC. 4AC ¶ 165.

> d)   M.B.

M.B. is an 11-year-old student enrolled at Haydoc. 4AC ¶ 24. Over the course of four years, the District conducted seven SST meetings as to M.B. Dkt. 150 at 20. In 2012, M.B. started kindergarten at the Juan L. Soria Elementary School. Dkt. 47, Ex. A ("M.B. Order") at 8. Soon thereafter, M.B.'s mother informed M.B.'s teacher that she believed M.B. had a disability that was affecting her education. *Id.* The District responded by holding an SST meeting. *Id.* at 9. At the meeting, M.B.'s mother expressed several concerns about M.B.'s behavior and learning difficulties. *Id.* At the end of that school year, the District assessed M.B. *Id.* at 9-10. However, it did not assess all areas of potential disability, including those identified by M.B.'s mother. *Id.* at 8-9, 11-12, 16. M.B. continued to struggle academically for the next three academic years. During that time period, M.B. showed deficiencies in memory, language and motor skills. *Id.* at 16-17. In September 2016, at the beginning of M.B.'s fourth grade year, M.B. filed a due process complaint with the OAH. *M.B. v. Oxnard Sch. Dist.*, OAH Case No. 2016100009. The District then completed a special education assessment. M.B. Order, Dkt. 47 at 18-19.

On May 25, 2017, the OAH concluded that, at a minimum, the District should have reassessed M.B. for eligibility for certain services as of November 2013. *Id.* at 30-31. This determination was supported by her failure adequately to progress academically, a parental report that M.B. had been diagnosed with ADD and her mother's expressed concerns of possible autism and fine motor skill deficits. *Id.* The OAH concluded that the SST team deferred assessments of M.B. with a "wait and see" mindset. *Id.* The OAH further concluded that the District ignored signs of autism and deficits in language and speech, fine motor

---

[9] The assessment did consider attentional and behavioral issues of I.B. *See* Dkt. 151, Ex. 29. It appears that Plaintiffs' contention is that these issues were not evaluated in a sufficient and thorough manner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

skills and academic progress. *Id*. Accordingly, the OAH decided that the District had failed to satisfy its IDEA obligation to reassess M.B. for special education eligibility. Instead, it relied on the SST process, which denied M.B. a FAPE. *Id*. at 31. Based on these determinations, the OAH ordered the District to provide the following compensatory education services and related relief:

- Comprehensive independent educational evaluation by a licensed educational therapist or comparable agency of M.B.'s parents' choosing that shall evaluate M.B.'s academic needs at school and determine a reasonable number of compensatory hours needed to assist her in making progress toward grade level;
- 72 hours of compensatory academic instruction by a licensed educational therapist or non-public agency of M.B.'s parents' choosing to be provided for three hours per week for six months;
- Independent educational evaluation in autism and occupational therapy;
- Reimbursement for Karen Schnee's January 2017 independent evaluation up to $4050; and
- 120 hours of speech and language therapy by a nonpublic agency or licensed speech therapist chosen by M.B.'s parents focusing on M.B.'s IEP goals developed by her team.

First Declaration of Lawrence Joe ("First Joe Decl."), Dkt. 76 ¶ 11.

The OAH also ordered the District to provide six hours of training to staff at Elm Elementary School and Juan L. Soria School as to the following: (i) the general principles of the IDEA, including Child Find procedures; (ii) the special education assessment process under the IDEA; (iii) the statutory requirements for providing parents with prior written notice and procedural safeguards; and (iv) the rights of parents to participate meaningfully in the development of a child's education program during the assessment process and at IEP meetings, including determining whether the child is eligible for special education. *Id*. The District completed the six hours of training through sessions conducted on August 14, 2017 and August 22, 2017. *Id*.

e)    I.G.

I.G. is enrolled at Fremont Middle School. 4AC ¶ 25. I.G. previously attended Sierra Linda Elementary School ("Sierra Linda"). Declaration of M.E. ("M.E. Decl."), Dkt. 46 ¶ 4. From the beginning of the 2012 school year through April 2013, I.G. attended kindergarten at Emilie Ritchen Elementary School ("Emilie Ritchen"). Dkt. 46, Ex. A ("I.G. Order") at 8. I.G. was anxious and upset at school, was chronically absent and when he did attend, his mother regularly removed him from classes before the end of the school day. *Id*. At the request of I.G.'s mother, I.G. was transferred to Sierra Linda in May 2013 when there were approximately five weeks left in the school year. *Id*. The issues that arose while I.G. was enrolled at Emilie Ritchen were no longer present while he was at Sierra Linda, and I.G.'s teacher had no reason to conclude I.G. needed a referral for a special education assessment. *Id*. at 8-9.

I.G. remained enrolled in Sierra Linda through the first grade, and started second grade there in August 2014. *Id*. at 14. During the first month of that school year, I.G. regularly fell asleep in class and often had angry outbursts. *Id*. In addition, he regularly missed class, which caused additional adverse effects on his learning and academic performance. *Id*. at 14-15. At this time, I.G.'s mother informed his teacher that I.G. had insomnia. *Id*. at 15. His teacher believed that I.G.'s absences, lethargy and sleeping in class were the result of his insomnia, but improperly concluded that a medical issue such as insomnia could not be a basis for a special education assessment. *Id*. Accordingly, I.G.'s teacher did not make a referral for such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
| Title | J.R. v. Oxnard School District, et al. | | |

an assessment. *Id*. I.G. attended third grade at Sierra Linda, where he continued to present similar issues, including significant absences, early removals and anxious or frustrated conduct. *Id*. at 17. I.G.'s mother told his third-grade teacher these issues were caused by his insomnia. *Id*. However, the teacher did not agree, and thought that they were the result of I.G.'s poor attendance and his corresponding unusual attachment to his mother. *Id*. at 17-18. The teacher did not make a referral for a special education assessment. *Id*.

In September 2016, I.G. filed a due process complaint. *I.G. v. Oxnard Sch. Dist.*, OAH Case No. 2016091036. The District then offered to provide accommodations for I.G.'s insomnia and anxiety, and to assess whether I.G. should receive services available under the IDEA. I.G. Order, Dkt. 46 at 19-25. The conclusions of the assessment included that I.G.'s anxiety disorders caused him to miss approximately a quarter of classroom time since kindergarten, and that this impeded his ability to learn, particularly in mathematics. *Id*. at 22. In November and December 2016, Sierra Linda held IEP meetings. *Id*. at 23. They resulted in the determination that I.G. was eligible for services for emotional disturbance and other health impairments. *Id*. As a result, specialized academic instruction, counseling services and social work services were offered to I.G. *Id*. at 23-24.

On May 12, 2017, the OAH concluded that the District denied I.G. a FAPE. *Id*. at 7. The basis for this finding was that, as early as November 2014, it had failed to fulfill its Child Find duties under IDEA or refer I.G. for a special education assessment. *Id*. at 7-8. The OAH ordered the District to provide the following compensatory education services and related relief:

- 74 hours of school-based, one-on-one specialized instruction outside of the classroom at a rate of one hour per week by the School Resource Specialist;
- 37 hours of additional home instruction beyond what is provided in I.G.'s IEP, by a special education teacher, at a rate of one hour per week by STAR-Haynes;
- 37 hours of intensive academic instruction through STAR-Haynes; and
- An independent educational evaluation to determine if I.G. is an appropriate candidate for cognitive behavior therapy to address his anxiety, with treatment recommendations.

*Id*. at 42; First Joe Decl. ¶ 10.

The OAH also ordered the District to provide six hours of training to all Sierra Linda general education teaching staff, paraprofessionals, aides, student study team members, school administrators, service providers, counselors, school psychologists, speech and language therapists and any other staff who work with parents and students on their educational programs. I.G. Order at 42. The District completed the six hours of training through sessions conducted on August 14, 2017 and August 22, 2017. First Joe Decl. ¶ 10.

f)    Primero Los Ninos

Primero Los Ninos ("PLN") is an organization whose members are parents of children with disabilities and/or difficulties learning English who attend school in the Oxnard School District. First Declaration of Claudia Mercado ("First Mercado Decl."), Dkt. 162 ¶ 2. It was founded in 2014 for the purpose of "help[ing] parents of children with disabilities and/or difficulties learning English understand their rights and how to advocate for their children in light of the District's failure to address the needs of such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

students." *Id.*; 4AC ¶ 21. At any given time, there are usually 15-20 families involved in the organization. *Id.* Its members include the parents of W.H. and I.B. Second Declaration of Claudia Mercado ("Second Mercado Decl."), Dkt. 179 ¶ 4; F.B. Decl. ¶ 12; E.P. Decl. ¶ 6. Plaintiffs estimate that at least 20 PLN members have been affected by the District's allegedly unlawful Child Find policies. 4AC ¶ 175; First Mercado Decl. ¶ 17.

The mission of PLN is to "ensur[e] that children in the District have appropriate educational services." First Mercado Decl. ¶ 11. At PLN meetings, members "typically discuss common concerns affecting our children's education and options for addressing those concerns." *Id.* ¶ 4. The organization "provide[s] parents with educational information about their rights as well as the procedures for filing complaints on a variety of issues, including special education, language access and school conditions' issues." *Id.*

Due to District's policies, the organization allegedly has expended "significant amounts of time and resources" on "fielding questions and complaints and seeking out referrals and options for advocacy regarding the District's failure to identify and serve the needs of children with disabilities." *Id.* ¶¶ 13, 16. It has also expended resources making related public records requests and hosting events to assist parents who "have been unable to secure special education assessments from the District." *Id.* ¶¶ 14-15.

D.    Other Students

In support of the first and second motion for class certification, Plaintiffs submitted declarations about several other students who allegedly require special education and related services -- W.G., E.H., A.V., A.L., E.M., Meli B., J.M., A.W., H.V. and M.Y. Dkts. 48-54, 158-160. These students are currently enrolled or were previously enrolled in schools in the District. *See id.* The parents of these students have provided declarations about their respective children. Each states that the student had academic, mental health and other issues in school that were apparent. Thus, the declarants state that teachers and other school employees were aware of these issues. However, the declarants state that these employees did not timely refer each of the students for a special education assessment. The District held SST meetings for some, but not all, of these students. Of those who were assessed, it is alleged that this occurred after substantial delay.

Plaintiffs submitted a similar declaration as to O.L. in connection with the current Motion for Class Certification. Dkt. 233-5.

E.    Injunctive Relief Requested

Plaintiffs seek an injunction ordering Defendants to comply with the requirements of the IDEA, ADA and Section 504, including but not limited to:

- Reform of policies and procedures within the District;
- Appropriate training for all staff;
- Initiation of new processes for identifying and evaluating those students in need of evaluations; and
- Monitoring by independent experts.

4AC at 56 ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

### III.    Requests for Judicial Notice

In connection with the Motion to Dismiss, Defendants filed a request for judicial notice ("RJN"). Dkt. 246.
The RJN seeks judicial notice of the following documents:

Ex. A:  Plaintiffs' Third Amended Complaint, Dkt. 145;
Ex. B:  The Court's February 15, 2019 Order Granting Defendants' Motion to Dismiss Plaintiffs' Third
Amended Complaint and Denying Plaintiffs' Second Motion for Class Certification, Dkt. 207;
Ex. C:  Plaintiffs' Opposition to Defendants' Ex Parte Application for an Extension of Time to Respond
to the Fourth Amended Complaint, filed April 10, 2019, Dkt. 240;
Ex. D:  The Declaration of Stuart Seaborn in Opposition to Defendants' Ex Parte Application for an
Extension of Time to Respond to the Fourth Amended Complaint, filed April 10, 2019, Dkt.
240-2;
Ex. E:  Office of Administrative Hearings Pre-Hearing Conference Order in *In re Parents on Behalf of
Student (F.S.) v. Oxnard Sch. Dist.*, OAH Case No. 2018090070, October 12, 2018;
Ex. F:  Office of Administrative Hearings Decision in *In re Parents on Behalf of Student (F.S.) v. Oxnard
Sch. Dist.*, OAH Case No. 2018090070, November 13, 2018;
Ex. G:  February 4, 2019 Reporter's Transcript of Proceedings, filed February 21, 2019, Dkt. 210;
Ex. H:  February 15, 2019 Order re Plaintiffs' Appeal of Order of Administrative Law Judge (I.G.), Dkt.
208;
Ex. I:   February 4, 2019 Minute Order, Dkt. 202; and
Ex. J:   F.S. Due Process Complaint for Systemic Declaratory and Injunctive Relief, August 30, 2018.

Pursuant to Fed. R. Evid. 201, a court may take judicial notice of facts that are either (1) "generally known
within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). District courts may take judicial
notice of "records and reports of administrative bodies," *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1
(9th Cir. 2012) (quotations omitted), as well as "undisputed matters of public record." *Harris v. County of
Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th
Cir. 2001)). Such matters "includ[e] documents on file in federal or state courts." *Id*. Each document for
which judicial notice is requested meets the requirements of Fed. R. Evid. 201. Accordingly, the RJN is
**GRANTED.**

### IV.    Analysis

A.    Motion to Dismiss

1.    Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and
plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state
facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than
a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Such a motion may be granted when the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations of the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Because federal courts are courts of limited jurisdiction, a "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). A party who brings a Rule 12(b)(1) challenge may do so based on the face of the pleadings or on extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). In the former, the movant asserts that the allegations of a complaint are insufficient to establish jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Courts must accept the allegations of the complaint as true in considering such a challenge. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

       2.    <u>Application</u>

Defendants present two arguments in support of the Motion to Dismiss: (i) the claims of Plaintiffs M.B., I.G. and PLN should be dismissed for lack of Article III standing; and (ii) the claims of Plaintiffs A.E., M.L., D.C., F.S., W.H. and I.B should be dismissed for failure to exhaust their respective, administrative remedies under the IDEA.

                a)     Whether Plaintiffs M.B., I.G. and PLN Lack Standing to Bring the Claims Presented in the 4AC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

(1)   <u>Legal Standards</u>

Article III, Section 2 of the Constitution limits the application of federal judicial power to "cases" and "controversies." Accordingly, Article III standing "is a jurisdictional element that must be satisfied prior to class certification." *Nelsen v. King Cty.*, 895 F.2d 1248, 1249 (9th Cir. 1990) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985)). To establish such standing "requires that a plaintiff show '(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) (citation omitted) (first quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and then quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

To have standing to seek injunctive relief, a plaintiff must show that "he has suffered or is threatened with a concrete and particularized legal harm" and that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal citations and quotation marks omitted); *see also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (standing to seek injunctive relief requires plaintiffs demonstrate "a real or immediate threat" that defendants will subject plaintiffs to the same alleged wrong). A plaintiff "lack[s] standing to sue for injunctive relief from which she would not likely benefit." *Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates*, 511 F.3d at 985 (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)).

"[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (emphasis in original) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). "In other words, Article III requires 'a plaintiff [to] demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.* (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

An association may also have standing to bring an action. "An association has standing to sue if it is itself injured by the complained of conduct." *Black Faculty Ass'n of Mesa Coll. v. San Diego Cmty. Coll. Dist.*, 664 F.2d 1153, 1156 (9th Cir. 1981). Thus, an association "can demonstrate organizational standing by showing that the challenged practices have perceptibly impaired [its] ability to provide the services [it was] formed to provide." *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241 (9th Cir. 2018) (internal quotations removed); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) ("An organization may establish a sufficient injury in fact if it substantiates by affidavit or other specific evidence that a challenged statute or policy frustrates the organization's goals and requires the organization to expend resources in representing clients they otherwise would spend in other ways.") (internal quotations removed). In the alternative, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|----------|--------------------------|------|---------------|
| Title | J.R. v. Oxnard School District, et al. | | |

to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977).

(2)    Individual Plaintiffs M.B. and I.G.

(a)    Positions of the Parties

Defendants argue that Plaintiffs M.B. and I.G. lack standing to bring the claims in the 4AC. Dkt. 245 at 18. As to the individual plaintiffs, Defendants argue that "M.B. and I.G. lack standing to re-allege claims that this Court resolved when ruling on their respective [administrative] appeals." *Id.* Defendants contend that M.B. and I.G. "no longer have an injury in fact as to these claims," in light of the Orders issued by this Court on February 4, 2019 and February 15, 2019, respectively. *Id.*; *see* Dkts. 202, 208.

Plaintiffs respond that "M.B. and I.G. still have unresolved claims for attorneys' fees from their underlying administrative hearings and this case," and therefore should not be dismissed. Dkt. 249 at 24-25.[10]  They add that, "at the time the operative complaint was filed, neither had received final judgments as to their claims," and "Plaintiffs thus retained their allegations in the amended complaint to ensure that M.B. and I.G.'s attorneys' fees issues are resolved and to ensure that they would receive a final judgment as to all issues alleged." *Id.* at 25. They also contend that they "continue to have a live stake in the denial of their class certification motion." *Id.* Accordingly, Plaintiffs argue it would be inappropriate to dismiss M.B. and I.G. *Id.*

(b)    Application

A review of the arguments by the parties shows that they do not disagree about the following: (i) the core substantive claims of M.B. and I.G. are no longer being litigated in this action; but (ii) M.B. and I.G. retain claims seeking an award of attorney's fees claims in this action. Accordingly, it is not clear there is a meaningful dispute on this issue. To any extent the 4AC can be construed as continuing to bring substantive claims by M.B. and I.G. that have already been fully resolved by this Court, those claims may be dismissed. However, it would be premature to dismiss M.B. and I.G. from this action in light of the open issues as to their requests for awards of attorney's fees. Moreover, whether or not M.B. and I.G. continue to pursue substantive relief, the allegations in the 4AC concerning M.B. and I.G. may be germane to the class claims. For example, they could be used as part of an effort to demonstrate that certain issues are pervasive throughout the District. Accordingly, there is not a persuasive basis on which to strike such allegations from the 4AC.

(3)    Organizational Plaintiff PLN

(a)    Positions of the Parties

Defendants argue that, as with the allegations of the TAC, those in the 4AC are not sufficient to show that PLN has either direct nor associational standing to assert the class claims. Dkt. 245 at 18-22. As to direct

---

[10]  Defendants reply that the attorney's fees claims "do not merit their re-allegation of claims that this Court has considered and ruled upon," and that such "repeated claims" should be dismissed. Dkt. 253 at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

standing, Defendants contend that the alleged policies of the District have not interfered with PLN's pursuit of its core mission or caused it to lose a substantial amount of its resources. *Id.* at 20. They add, "[t]hat PLN has chosen to focus more on the special education component of its core mission rather than 'other' components of its mission is insufficient to establish a diversion of its resources." *Id.* As to associational standing, Defendants point out that the 4AC "fails to identify any member of PLN that would have standing to sue in their own right." *Id.* at 21. Defendants also argue that, "[e]ven if they had, however, Plaintiffs claims for declaratory and injunctive relief require fact-specific inquiries that cannot support associational standing." *Id.*

Plaintiffs contend that PLN "has properly alleged direct standing,"[11] and that any underlying deficiencies in the TAC were cured by the more detailed allegations of the 4AC. Dkt. 249 at 21. Specifically, Plaintiffs assert that the challenged policies "have frustrated the mission of organizational plaintiff Primero Los Niños and forced it to divert resources to address those failures, making it more difficult for Primero Los Niños to dedicate resources to the other components of its work that it conducts in furtherance of its mission." *Id.* Plaintiffs argue that the mission of PLN is broader than the challenged policies, and that its limited resources have been allocated necessarily to addressing the alleged deficiencies of the District's Child Find procedures. Plaintiffs explain that "Primero Los Niños has had to engage in *more* and *different* education, outreach, and advocacy for its members facing child find issues than it otherwise would, absent the District's 'wait and see' child find policies and practices." *Id.* at 23.

(b)   Application

The allegations as to the Article III standing of PLN are not robust. However, they are sufficient to state a "diversion-of-resources injury" that confers organizational standing. *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241 (9th Cir. 2018) (citation omitted). The Ninth Circuit has held that "'a diversion-of-resources injury is sufficient to establish organizational standing' for purposes of Article III, if the organization shows that, independent of the litigation, the challenged 'policy frustrates the organization's goals and requires the organization "to expend resources in representing clients they otherwise would spend in other ways."'" *Id.* (internal citations omitted). This holding remains in place. *See id.* at 1241-43. The 4AC includes several new allegations that clarify the scope of the mission of PLN and, in turn, support the contention that the District's Child Find policies have encumbered PLN's ability to devote its limited resources to other, non-Child-Find-related aspects of its mission.

The 4AC clarifies that PLN's advocacy concerning the District's Child Find policies and procedures is only "one of several [issues] Primero Los Niños covers related to its mission." 4AC ¶ 169. Those issues include the following:

> Primero Los Niños advocates for more education funding, better use of existing funding for English learner programs, initiatives to combat discrimination against Mixtec children in English learner programs, improved quality of education in the general education population, and improvements to the condition of educational facilities and materials in the District. Because it has had to dedicate so much of its limited time and resources to the District's failure to timely identify and thoroughly evaluate children with disabilities, it has been more challenging for Primero Los Niños to address the other issues central to its

---

[11] Plaintiffs do not argue that PLN has associational standing through its members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

mission.

*Id*.

The 4AC further alleges:

> In response to several questions and concerns raised by parents of students with suspected or known disability-related needs, Primero Los Niños has educated its members about their rights to have their children assessed for appropriate disability-based services and the procedures for challenging the District's failures to conduct such assessments. It has also spent considerable time issuing public records act requests to obtain information about this issue and making referrals to advocates and lawyers. In educating its members about their rights with regard to the District's special education identification and assessment policies and practices, and issuing public records act requests with regard to those policies and practices, Primero Los Niños has used its very limited resources—its members' time and energy—to address the District's identification and assessment policies and practices, which has made it more challenging to address other issues central to its mission, including issues related to school conditions, language access, and the myriad of other substantive special education issues its members face.

*Id*. ¶ 34.

These new, detailed allegations of the 4AC adequately address the deficiencies identified in the previous Order. *See* Dkt. 207 at 17. Based on a review of the TAC, the previous Order concluded that "[t]he challenged practices do not divert resources from PLN's core mission or otherwise impede its ability to perform the core services for which it was established." *Id*. It is evident from the cited allegations of the 4AC that a different outcome is now warranted.

For the foregoing reasons, the Motion to Dismiss is **DENIED** as to PLN's Article III standing.

> b)   Whether the Failure to Exhaust Administrative Remedies by Plaintiffs A.E., M.L., D.C., W.H., I.B. and F.S. Bars Their Claims

> (1)   Legal Standards

"Judicial review under the IDEA is ordinarily available only after the plaintiff exhausts administrative remedies." *Doe By & Through Brockhuis v. Arizona Dep't of Educ*., 111 F.3d 678, 680-81 (9th Cir. 1997) (citing 20 U.S.C. § 1415(e)(2)). So too, "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures." *Fry v. Napoleon Cmty. Sch*., 137 S. Ct. 743, 750 (2017) (citing 20 U.S.C. § 1415(l)). However, "this exhaustion requirement is not a rigid one, and is subject to certain exceptions." *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1302-03 (9th Cir. 1992).

The exhaustion of such administrative remedies is not required when "resort to the administrative process would be futile or inadequate," or when "an agency has adopted a policy or pursued a practice of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

general applicability that is contrary to the law." *Id.* at 1303-04 (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). "Administrative remedies are generally inadequate where structural, systemic reforms are sought." *Id.* at 1309. "[A] claim is 'systemic' if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Doe*, 111 F.3d at 682. "In determining whether these exceptions apply, [a court's] inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." *Hoeft*, 967 F.2d at 1303.

The Ninth Circuit has read the exhaustion requirement of IDEA to "appl[y] differently to class actions than to suits brought by individuals, inasmuch as each class member need not exhaust before a suit is brought." *Hoeft,* 967 F.2d at 1309. However, "the mere fact the complaint is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion." *Id.* at 1309.

(2)     Positions of the Parties

Defendants argue that Plaintiffs A.E., M.L., D.C., W.H. and I.B. "failed to exhaust administrative remedies by failing to first seek relief with the OAH." Dkt. 245 at 14. They also contend that, although F.S. brought an administrative complaint before the OAH, she "failed to exhaust her administrative remedies as to her requested relief for compensatory educational services" because her administrative complaint "did not plead or place at issue her right to compensatory educational services." *Id.* at 15. Defendants argue that Plaintiffs should not be excused from the exhaustion requirement, and that their failure to exhaust bars their claims. *Id.* at 22-30. Defendants add that "Plaintiffs' claims are not truly 'systemic,'" that "Plaintiffs' challenge to District policy fails to raise pure questions of law," and that, "[n]otwithstanding their request for class-wide injunctive relief, Plaintiffs fail to allege facts to show that any relief sought with the OAH would be inadequate." *Id.* at 24, 28, 39. Therefore, Defendants contend there is no basis on which to permit Plaintiffs to sidestep the exhaustion requirement.

Plaintiffs respond that they should be excused from the administrative exhaustion requirement. Dkt. 249 at 7, 10-19. They argue that the OAH "has refused to adjudicate the systemic claims brought in this case," despite efforts by several of the Plaintiffs to present such claims to the OAH through their due process complaints. *Id.* at 11. Plaintiffs note that "[a]lthough [several Plaintiffs] were able to prevail on individual claims regarding the District's failure to meet its child find duties, none were [sic] able to secure systemic relief that would change the policies at issue going forward." *Id.* They add that, in the context of the due process complaints by F.S. and PLN, the OAH "specifically held that child find class claims are outside the scope of its jurisdiction." *Id.* at 11-12. Thus, Plaintiffs contend that "a clearer case of futility and inadequacy of the administrative proceedings could not be had." *Id.* at 12.

Plaintiffs also argue that the class claims are "systemic" and therefore fall within another exception to the exhaustion requirement. *Id.* at 13. They contend that "[u]nlike other varieties of IDEA violations, this District-wide child find policy has thus rendered is entire special education program institutionally unavailable to students across the District, in a manner that the administrative system has already indicated it cannot fix at a systemic level." *Id.* Plaintiffs assert that their claims are materially different from those that concern only "one 'particular component of [the District's] special education program,'" in that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

"the gravamen of the suit [is] that the [District's] entire special education system [i]s infirm . . . ." *Id.* (quoting *Hoeft*, 967 F.2d at 1305 and *Doe*, 111 F.3d at 682). Plaintiffs add that the District itself "made a similar point—that exhaustion of Plaintiffs' systemic claims is not required—at the first argument on class certification on January 29, 2018." *Id.* at 15-16.

Finally, Plaintiffs argue that the purpose of administrative exhaustion "would not be served by dismissal, as this exact issue has been exhausted by named Plaintiffs and class members, and the District has long been on notice as to it." *Id.* at 17. Plaintiffs explain that "[c]urrent named plaintiffs F.S., I.G., M.B., and Primero Los Niños, as well as former plaintiffs J.R. and I.H., each pursued and completed administrative due process proceedings before OAH with regard to the District's child find policy failures," and therefore "both OAH and the District have had six opportunities in due process proceedings with respect to the Plaintiffs in this case alone to exercise discretion and technical expertise with regard to the District's child find policies." *Id.* They add that "[t]he District has had extensive notice as to—and a first, and second, and ultimately sixth opportunity to correct—systemic shortcomings in its child find system," and that there is now "an extensive, fully developed administrative record as to the District's child find policies and practices" before this Court. *Id.* at 17-18. Thus, Plaintiffs assert that "there is simply no additional purpose served by requiring exhaustion of the child find class claims by the newly added class representatives A.E., M.L., and D.C." *Id.* at 19. Plaintiffs conclude by arguing, in the alternative, that "[i]f there is any question as to the scope of the Plaintiffs' exemption from exhaustion, this issue should be resolved through a summary judgment motion" rather than at the motion to dismiss stage. *Id.* at 20.

Defendants reply that exhaustion cannot be excused on the sole basis that the OAH will not order class-wide relief. Dkt. 253 at 7-8. Defendants also raise a new argument in the reply, i.e., that "[t]he OAH, however, is not the exclusive forum for exhausting administrative remedies," and that "Plaintiffs may also exhaust administrative remedies by initiating a complaint resolution procedure ('CRP') with the California Department of Education." *Id.* at 8. Defendants contend that, "[p]er the [IDEA]'s mandate[,] Plaintiffs must exhaust administrative remedies, including their remedies with the CDE, before asserting their claims in this court." *Id.* at 9.

Defendants also contend that Plaintiffs' argument "that the District's child find policies render its entire special education system infirm" is disingenuous, and that the District continues to operate a functional special education system to which eligible students have access. *Id.* at 9-11. Defendants further argue that the class claims do not present pure legal issues, but rather "raise questions of substantive educational policies that require a fact-specific inquiry into individual cases," thus weighing in favor of retaining the exhaustion requirement in its full force. *Id.* at 11-12.

(3)    Application

Plaintiffs' position is more persuasive with respect to the class claims. The policies and procedures of the District with respect to its Child Find duties were placed at issue in the administrative proceedings of M.B., I.G., F.S., J.R., I.H. and PLN, and were then reviewed by the OAH. Thus, this case is distinct from those in which there has been no effort at administrative exhaustion of the claims at issue. The primary bases for the exhaustion requirement include the need for agency expertise and the development of an administrative record. These do not apply fully under the circumstances presented in this action. The OAH has already applied its expertise to the issues, and this Court will have the benefit of the administrative records from the corresponding OAH proceedings in its evaluation of the class claims. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

includes the OAH proceedings as to the previous proposed class representatives M.B., I.G. and J.R., whose claims were deemed typical of the putative class. Dkt. 128 at 15.[12]  It was determined that those students did not have Article III standing because they had exhausted administrative remedies and either prevailed at the OAH or entered into settlement agreements. However, this does not mean that the corresponding administrative records have no bearing on the issues presented as to others. *See* Dkt. 128 at 9-10. Nor do the traditional concerns that the District should be afforded "a reasonable opportunity to investigate and correct" violative policies before judicial intervention weigh against excusing exhaustion. *See Hoeft*, 967 F.2d at 1307. The due process proceedings of the exhausted Plaintiffs and former Plaintiffs provided the District with ample notice of the alleged deficiencies in its Child Find policies and practices.

Plaintiffs also have demonstrated that the class-wide injunctive relief they seek is unavailable through administrative proceedings before the OAH. *See* Dkt. 249 at 11-12 (quoting Order Dismissing in Part Student's Complaint, *F.S. v. Oakland Unified School Dist.*, Case No. 2014060962 (July 22, 2014) ("OAH does not have jurisdiction to hear Student's claims of systemic violation and/or claims on behalf of similarly situated students. . . . This would also include claims brought by an organization on behalf of its members.")). Of course, "the mere unavailability of injunctive relief does not render the IDEA's administrative process inadequate." *Hoeft*, 967 F.2d at 1309. However, this case is distinct from *Hoeft*, which found it material that "individual administrative determinations," which had yet to be pursued, "would alert the state to local compliance problems and further correction of any problems on a state-local level." *Id.* (citing *Ass'n for Retarded Citizens of Alabama, Inc. v. Teague*, 830 F.2d 158, 161-62 (11th Cir. 1987) for the proposition that "even though claims are of a 'sweeping nature,' resolving 'a few representative claims' at the administrative level would highlight compliance problems and allow state to take remedial action"). As noted, in this action, there already have been several germane, individual administrative determinations.

Nor will resolution of the class claims require a student-by-student evaluation of what compensatory educational services are appropriate -- for which administrative expertise as to each individual child would be particularly useful. As to the class claims, the parties' dispute centers instead on whether the District's Child Find policies and procedures, on a system-wide basis, satisfy the requirements of the IDEA. Given the nature of the parties' dispute, the successful exhaustion by certain Plaintiffs and former Plaintiffs is of substantial importance, even absent exhaustion by the new proposed class representatives in particular.[13]

For the foregoing reasons, as to the class claims, "the pursuit of the IDEA due process remedies under the facts of this case will not 'further the general purposes of exhaustion and the congressional intent

---

[12]  The class definition has remained the same since the time of that determination.

[13]  Since its inception, this case has presented issues concerning the interplay of administrative exhaustion and Article III standing. Those Plaintiffs who exhausted their administrative remedies received compensatory services from the District, which weakened their basis for ongoing Article III standing. Moreover, Plaintiffs contend that the District did not make the necessary changes to its policies on a system-wide basis and instead was trying only to avoid litigation by offering such services. Because the new, proposed class representatives did not pursue administrative proceedings prior to bringing suit, they continue to have redressable injuries-in-fact that support a finding of Article III standing. However, this also means that they did not exhaust administrative remedies. These unusual circumstances, combined with the need to allocate efficiently administrative and judicial resources, support excusing the exhaustion requirement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

behind the administrative scheme.'" *Christopher S. ex rel. Rita S. v. Stanislaus Cty. Office of Educ.*, 384 F.3d 1205, 1211 (9th Cir. 2004) (citation omitted). Accordingly, administrative exhaustion should be excused as to the class claims.[14]

This determination does not apply with equal force to the unexhausted individual claims. There has been no showing that the pursuit of administrative remedies for the Plaintiffs' individual claims would be futile or inadequate. Moreover, agency expertise would be valuable in determining what compensatory relief, if any, is appropriate as to each individual Plaintiff. Further, the guidance from the administrative proceedings of one student is not readily transferable to the individual claims of another student -- unlike with class claims that challenge the propriety of a single set of alleged District policies and procedures. This conclusion is reinforced by Plaintiffs' concession that "an individual student's technical claims regarding their own services and accommodations must . . . be exhausted, absent other special circumstances," and the representation by Plaintiffs that "if the Court wishes to direct Plaintiffs to file their claims for individual compensatory remedies with OAH, Plaintiffs can certainly do so." Dkt. 249 at 14, 19 n.5.

For the foregoing reasons, the Motion to Dismiss is **DENIED** as to administrative exhaustion of the class claims, but **GRANTED** with respect to administrative exhaustion of the individual, compensatory claims for relief by the unexhausted Plaintiffs.

B.      Motion for Class Certification

Plaintiffs seek certification of the following class:

> All students in Oxnard School District who have or may have disabilities and who have been or will be subject to the District's policies and procedures regarding identification and evaluation of students for purposes of providing services or accommodations under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

Dkt. 233 at 2.[15] Plaintiffs move for the appointment of A.E., M.L., and D.C.[16] as class representatives,

---

[14]  This determination is not altered by Defendants' last-minute argument that Plaintiffs should have pursued administrative remedies by initiating a complaint resolution procedure ("CRP") with the California Department of Education ("CDE"). Although "there may be instances when exhaustion of the CRP may be a *substitute* for exhaustion of the due process hearing," the Ninth Circuit has held that "requiring exhaustion of California's CRP as a condition to suit would be inconsistent with the IDEA's enforcement scheme." *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1073-74 (9th Cir. 2002). In particular, "the filing of a CRP complaint may be sufficient to meet the exhaustion requirement 'where the only purposes served by exhaustion are to notify the state of local noncompliance and to afford it an opportunity to correct the problem.'" *Id.* at 1073 (quoting *Hoeft*, 967 F.2d at 1308). However, as noted, the due process proceedings of the exhausted Plaintiffs and former Plaintiffs adequately served that purpose with respect to the class claims. Moreover, the primary reasons to excuse exhaustion of the class claims apply with equal force to the CRP complaint procedure and to administrative proceedings before the OAH -- and those reasons provide a sufficient basis for the conclusion reached here.
[15]  Plaintiffs add that "[t]o the extent the Court disagrees with the above-stated definition for the Plaintiff Class, Plaintiffs move for the Court to redefine or modify that definition, as such determinations are within the Court's discretion." Dkt. 233 at 2 (citing Fed. R. Civ. P. 24(c)(4)(B)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

and for the appointment of the Learning Rights Law Center, the Law Office of Shawna L. Parks, and Disability Rights Advocates as class counsel. *Id.*

   1.   Legal Standards

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class may "only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

The first step in establishing the propriety of class certification requires a showing that the proposed class meets each of the prerequisites of Rule 23(a). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

If these four prerequisites are met, the analysis proceeds to a consideration of whether the proposed class satisfies the terms of Rule 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs contend that certification is appropriate pursuant to Rule 23(b)(2), which provides that a class proceeding "may be maintained . . . if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

---

[16] In addition to their briefing on class certification, Plaintiffs argue that the new proposed class representatives have Article III standing to bring the class claims. Dkt. 233 at 23-25. Plaintiffs explain that, at the time of the filing of the 4AC, each proposed class representative was "'unfound' and ha[s] ongoing child-find-related injuries-in-fact, redressable through injunctive relief." *Id.* at 23. Plaintiffs add that "[e]ven if circumstances change after the filing of the [4AC], e.g., if the District assesses them for special education services, the claims at issue are so inherently transitory that that the 'relation back' doctrine is properly invoked to preserve the case's merits for judicial resolution. *Id.* at 24 n.9 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) for the proposition that "where a claim is 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires . . . the "relation back" doctrine is properly invoked to preserve the merits of the case for judicial resolution'"). Plaintiffs' arguments as to the Article III standing of A.E., M.L., and D.C. are undisputed. Accordingly, this issue is not further addressed in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

      2.   <u>Application</u>

          a)    Requirements of Fed. R. Civ. P. 23(a)

              (1)   <u>Numerosity</u>

                    (a)   Legal Standards

Fed. R. Civ. P. 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). No specific number of members is needed to warrant a class action. *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). "However, numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

                    (b)   Positions of the Parties

Plaintiffs rely on the evidence they presented in support of their first motion for class certification as to numerosity, including the Declaration of Peter Leone ("Leone Decl." (Dkt. 43)). Dkt. 233 at 25-26.[17] Plaintiffs emphasize that the Order on the first motion for class certification (the "June 2018 Order" (Dkt. 128)) determined that the supporting declarations sufficiently supported the conclusion that the proposed class -- the definition of which has not changed -- contained at least 40 members. *Id.* (citing Dkt. 128 at 12-13). Plaintiffs add that, in the interim, "Plaintiffs have provided eleven additional declarations identifying more students with disabilities who had not, or still have not, received timely special education assessments." *Id.* at 26.

Defendants respond that the Leone Declaration, which comprises Plaintiffs' core evidence in support of numerosity, is outdated and no longer provides an adequate basis for estimating the size of the putative class. Dkt. 252 at 20-22. Defendants explain that the Leone Declaration "relied on enrollment data from 3 to 5 years ago," but the relevant statistics have changed materially in recent years. *Id.* at 21. Defendants assert that the District recently experienced both a decrease in total student enrollment and an increase in total special education enrollment, thus "suggest[ing] that the District has closed the purported 'gap' that Leone found in the District's child find rates." *Id.* at 21. The District now "estimates that approximately 12.8% of its student population is currently enrolled in special education programs," which exceeds the statewide baseline previously identified by Leone. *Id.* Defendants argue that "[a] more detailed analysis than the one conducted by the Leone Declaration would need to be completed to actually determine whether or not there are still under-identified students in the District." *Id.* at 21-22. Defendants argue that, even though the June 2018 Order found Leone's opinions admissible at the time, his opinions are "based

---

[17]  Based on a review of enrollment data from the 2014, 2015 and 2016 school years, Leone stated that 10.3% to 10.8% of students statewide were enrolled in special education programs, but the range within the District was lower, *i.e.*, 8.5% to 9.4%. Leone Decl., Dkt. 43 ¶ 17. Leone opined that if the rates of special education identification in the District were the same as the statewide identification rate, at least 200 additional students in the District would be enrolled in such services. *Id.* ¶¶ 18-19. Leone stated that 200 was a low-end estimate because he did not consider the factors that apply to the District's student population given its demographic composition. *Id.* ¶¶ 19-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|----------|--------------------------|------|---------------|
| Title | J.R. v. Oxnard School District, et al. | | |

on outdated data" and "no[] longer reliable," thus falling short of the standards for admissibility at this juncture. *Id.*

Plaintiffs reply that the new data provided by Defendants[18] "not only fails to contradict the Court's prior ruling, but actually supports a finding of numerosity." Dkt. 256 at 4. They argue that the Declaration of Katrina Madden ("Madden Decl." (Dkt. 252-9)), submitted by Defendants,

> demonstrates that from December 2017, after the filing of the first motion for class certification, through December 2018, the District referred 322 children for evaluation, though it had referred only 87 the year prior, a 270% increase in the number of special education referrals. . . . Assuming that some number would have been referred in any event, the dramatic increase from 2017 to 2018 actually comprises roughly the minimum number of students (200) that Plaintiffs had asserted were being missed, and thus confirms the numbers of children impacted by the District's failed child-find system.

Dkt. 256 at 4.

Plaintiffs next contend that Defendants' submissions "confirm that an overwhelming number of students are provided with a special education assessment and referral only after going through the SST process; approximately one third of students are reported as first receiving an SST before being referred for assessment." *Id.* (citing Ex. A to Madden Decl. for the proposition that "736[19] of 2225 students received at least one SST before referral"). Plaintiffs argue that "[w]hile these numbers demonstrate that Defendants may have sought out children in response to this lawsuit, the District has *not* changed its policies" -- and, even if it had, "such a change would squarely fall within the doctrine of voluntary cessation." *Id.* at 4, 4 n.2 (citing *Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013) for the proposition that "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed").

(c)    Application

The Leone Declaration does not carry as much weight as it did at the time of the first motion for class certification, when the statistics underlying Leone's opinions were based on timelier data. However, the Leone Declaration is not the only evidence presented as to numerosity of the proposed class.

Of particular relevance is the set of updated statistics submitted by Defendants in connection with the Madden Declaration. *See* Ex. A to Madden Decl., Dkt. 252-9 at 6. The latest statistics, reported from December 2018, demonstrate that more than 700 students were referred to special education by an SST

---

[18]  Plaintiffs "accept for the sake of argument that such data is correct, but object to its use because this data was not produced in response to document requests, is not available on the CDE dataquest page, and thus cannot be verified by Plaintiffs." Dkt. 256 at 4 n.1.

[19]  Plaintiffs appear to have misread and/or mis-transcribed this figure from the exhibit -- although the difference is not a material one. The exhibit refers to 735 students who received a referral through the SST process, not 736 students. *See* Dkt. 252-9 at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

team.[20] *Id.*; *see also* Madden Decl., Dkt. 252-9 ¶ 7. Through the Madden Declaration, the District represents that sometimes it uses the SST process as an initial tool for struggling students, but that "often [it] bypasses the SST process and moves toward assessments" right away. Madden Decl., Dkt. 252-9 ¶ 8. As noted, Plaintiffs' claims include that it violates the IDEA to delay full special education assessments by way of the prereferral SST process, even when such assessments are ultimately completed. Although the evidence presented through the Madden Declaration suggests that the SST process may not be used uniformly, it also indicates that hundreds of students who require special education services were sent first through the SST process. Such students would be putative class members. This supports a finding of numerosity.

In addition, Plaintiffs have submitted several declarations of students who are putative class members in connection with the current Motion for Class Certification and the previous ones. These declarations are from students who were sent through the SST prereferral process and from those who were not identified at all. The declarations also support the finding that the issues presented in this action concern a substantial number of individuals.

For the foregoing reasons, there has been a sufficient showing of numerosity to support class certification.

(2)     Commonality

(a)     Legal Standards

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349-50 (internal quotation marks omitted). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* For the purposes of commonality, "even a single common question will do." *Id.* at 359 (internal markings omitted).

"[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014). In a civil-rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong*, 275 F.3d at 868. "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*

---

[20]  This number rose dramatically from the time of the December 2017 report to the time of the one prepared in December 2018. Thus, the data indicate the District's use of the SST prereferral process has increased over time. *Compare* Ex. A to Madden Decl., Dkt. 252-9 at 6 *with* Ex. B to Madden Decl., Dkt. 252-9 at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
| --- | --- | --- | --- |
| Title | J.R. v. Oxnard School District, et al. | | |

(b)     Positions of the Parties

As with numerosity, Plaintiffs largely rely on their prior arguments as to commonality and the findings of the June 2018 Order. Dkt. 233 at 26. Plaintiffs assert that they "continue to challenge the District's system-wide child find policies and procedures" and "continue to seek common, adequate procedures to ensure that all those with suspected disabilities are identified and evaluated." *Id.* at 27. They argue that, as before, "[a]ll members of the proposed class have suffered the same injury this lawsuit seeks to address: each has been denied educational opportunities by being subjected to the District's 'wait and see' policy—its failure to timely identify and assess students for any suspected disabilities." *Id.* Plaintiffs contend that the "systemic relief" proposed in the 4AC will "provide all parties ' . . . common answers apt to drive the resolution of the litigation,'" thus supporting a finding of commonality. *Id.*

Defendants respond that the circumstances of the new proposed class representatives are sufficiently different from those of the absent class members that a finding of commonality is unwarranted. In support of this position Defendants argue: (i) "[t]here is no commonality between class representatives A.E. and D.C. whom the District reasonably did not suspect as requiring special education services and class members whom the district knows or suspects require special education services but has yet to find them"; and (ii) "[t]here is no commonality between the broad class defined in the Fourth Amended Complaint and M.L., who spent his formative years in Mexico and whose English language barrier, rather than a learning disability, was the suspected hindrance to his academics." Dkt. 252 at 22-24.

As to A.E. and D.C., Defendants assert that "[a]lthough both students experienced some difficulty in academics or behavior, both students improved their academics and behavior without an assessment" -- and neither is a student with suspected disabilities. *Id.* at 22. Defendants state that both A.E. and D.C. "express[] [themselves] well verbally and in writing." *Id.* at 23. They provide evidence that A.E. transferred schools repeatedly since the first grade and "spent an entire year in Mexico with no formal schooling" immediately prior to enrolling at Haydoc. *Id.* at 16 (citations omitted). They assert that, despite these many changes, D.C. is "academically capable," and "[t]eachers describe his ability to communicate and write is far above many of his classmates." *Id.* at 17 (citations omitted). Defendants provide evidence that A.E.'s grades dramatically improved without a special education intervention -- and that his academic difficulties were "in part . . . the result of him needing glasses." *Id.* at 17-18 (citations omitted). Defendants also offer declaration testimony that "[t]eachers at no point suspected him of needing special education services." *Id.* at 18 (citations omitted).

Similarly, D.C. presented certain behavioral issues, but her "teachers and administrators had no suspicions that she required special education services." *Id.* at 15-16 (citations omitted). Defendants present declarations stating that "her defiance is not uncommon for a middle school girl," and that her parent "does not consider [her] aggressive." *Id.* at 15 (citations omitted). Defendants assert that "D.C.'s behavior also improved significantly after she executed a Behavior Contract that required her to receive progress reports from her teachers on a regular basis," and that she "has shown that she is motived to graduate middle school" and "made concerted efforts to make up missed work." *Id.* at 16 (citations omitted). Both her behavior and her grades improved without a special education intervention. *Id.* (citations omitted). Defendants also emphasize certain issues with respect to D.C.'s parent's alleged request for a special education assessment. *Id.* at 16, 23. Defendants assert that "[a]lthough [D.C.'s] parent claims that she sent a fax requesting an assessment, no one at the Driffil Elementary main office

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | | Date | July 30, 2019 |
|---|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | | |

received or saw the faxed request, which was purportedly sent after business hours." *Id.* at 16 (citations omitted). Defendants add that "D.C.'s parent did not inquire or confirm with anyone in the main office regarding whether the fax that she allegedly sent was received." *Id.* (citations omitted).

As to M.L., Defendants emphasize that he "spent his formative educational years in Mexico," and for this reason "school staff believed that [his] academic challenges were due to a language barrier rather than a learning disability." *Id.* at 19 (citations omitted). Defendants also note that M.L. earned "good grades" during his schooling in Mexico. *Id.* at 18 (citations omitted). Defendants also explain that "[s]chool staff expended great efforts to communicate with [M.L.'s] parents," but had difficulty establishing and retaining consistent contact. *Id.* at 19. Defendants assert that M.L.'s parents requested an SST in late 2017 but failed to show up for the meeting as scheduled. *Id.* at 18 (citations omitted). Defendants add that "school staff called and left messages with M.L.'s parents, and made two visits to the last known address of the family home" -- only to learn that the family had moved and changed phone numbers. *Id.* (citations omitted). Defendants state that M.L.'s parents did not attend an SST until approximately one year after the initial scheduled meeting "and only after several attempts by school staff to contact them." *Id.* (citations omitted). Defendants argue that the combination of these circumstances, and M.L.'s "status as an ELL [English Language Learner] students" render his claims distinct from those of the absent class members. *Id.* at 24.

Plaintiffs address these arguments of Defendants in the "typicality" prong of the class certification inquiry. They note that it is the District-wide policies -- not the particular backgrounds of Plaintiffs and the putative class -- that provide the basis for the common issues to be resolved. Plaintiffs explain that "[t]he District has neither disavowed nor shown that it has changed the policies it has so staunchly defended since the first class certification motion," and contend that "[t]he District's continued robust legal defense of its District-wide policies confirms that there are common issues of law for the Court to address." Dkt. 256 at 5. They add that "[t]hese are the same polices that OAH repeatedly found to violate the law, and to do so in a systemic manner."[21] *Id.* at 6. Plaintiffs emphasize the determination of the June 2018 Order that the commonality requirement had been satisfied, and assert that there has been no material change in the premise of the lawsuit that would warrant a different conclusion. *Id.* at 5.

(c)     Application

The determinations of the June 2018 Order on this prong of the certification analysis continue to have force. A core common question underlies this action: Are the District's Child Find policies and procedures, including the District's SST preferral process and its alleged "wait and see" approach, sufficient under the IDEA? Or have the District's policies and procedures caused it to fail to meet its Child Find obligations to timely identify and assess students for suspected disabilities? If Plaintiffs were to prevail, these issues are amenable to common resolution through the class-wide injunctive relief sought, *i.e.*, a reshaping of the Districts' Child Find policies and procedures to facilitate prompt and thorough identification and evaluation of students with suspected disabilities. Thus, the class claims both raise common questions and have "the capacity . . . to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. The commonality underlying this action extends far beyond a mere

---

[21]  Specifically, Plaintiffs note that "OAH has issued decisions for current and former Plaintiffs in this case on no fewer than five occasions in the last two and half years, in each instance finding that the District's 'wait and see' approach to identifying and evaluating students for special education violates the law." Dkt. 256 at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

"violation of the same provision of law." *Id.*

As in *Parsons*, it would be a misreading of the complaint to characterize the class claims as "little more than an aggregation of many claims of individual mistreatment." 754 F.3d at 676. Rather, the class claims challenge specific policies and procedures of general applicability within the District and the alleged risk of harm those policies and procedures pose to all schoolchildren subject to them. The Ninth Circuit has found claims of this nature sufficient to satisfy commonality, including post-*Wal-Mart*. *See, e.g.*, *Parsons*, 754 F.3d at 684 ("A clear line of precedent, stretching back long before *Wal-Mart* and unquestionably continuing past it, firmly establishes that when inmates provide sufficient evidence of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm, Rule 23(a)(2) is satisfied.").

An assessment of the evidence as to the new proposed class representatives does not warrant a different outcome as to the commonality requirement than that stated in the June 2018 Order. As before,

> Plaintiffs do not propose an adjudication of every alleged failure to satisfy Child Find obligations on a case-by-case basis, including as to the condition of the student. Rather, they challenge system-wide policies and procedures that allegedly harm all putative class members. They seek common, adequate procedures to ensure that all of those who qualify are evaluated.

Dkt. 128 at 13. As with the prior proposed class representatives, and as in *Armstrong*, the "individual factual differences among the individual litigants" do not go sufficiently to the core of the common questions or common answers inherent in the class claims so as to preclude a finding of commonality. *Id.* at 14; *Armstrong*, 275 F.3d at 868.

For the foregoing reasons, as well as those stated in the June 2018 Order, the commonality requirement has been satisfied.

(3)    Typicality

(a)    Legal Standards

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defense of the representative parties" be "typical of the claims or defenses of the class." This requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Representative claims "need not be substantially identical." *Id.* The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

The commonality and typicality requirements of 23(a) tend to merge. *See Dukes*, 564 U.S. at 349 n.5 ("Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

(b)      Positions of the Parties

As to typicality, Plaintiffs again argue that the determinations of the June 2018 Order should stand. Dkt. 233 at 28. Plaintiffs contend that, as with the previous proposed class representatives, the claims of A.E., D.C., and M.L. "mirror[] those of the putative class members because, 'although each of them exhibited signs of disability and had ongoing and severe problems at school, none was evaluated adequately or in a timely manner.'" *Id.* (quoting Dkt. 128 at 15). Plaintiffs assert that A.E., D.C., and M.L. "[a]ll exhibited signs of disability that should have prompted District staff to refer them for an assessment—whether those signs involved poor grades, classroom behavior, parent suspicion, or any combination thereof—yet none were adequately evaluated by the District in a timely manner." *Id.* Therefore, Plaintiffs conclude the new proposed class representatives "share the same injury as members of the proposed class" and, accordingly, meet the typicality requirement of Fed. R. Civ. P. 23(a). *Id.*

Defendants' arguments as to typicality largely repeat those they made on commonality. They emphasize the unique and unusual facts tied to the claims of A.E., D.C., and M.L. and, on that basis, contend that the proposed class representatives are differently situated than the absent class members whom they seek to represent. Dkt. 25 at 25. Defendants again contend that "the preponderance of the evidence shows that A.E. and D.C. are intelligent students who respond to standard consequences for poor grades or bad behavior," and that A.E.'s situation is particularly non-standard because "simply getting him evaluated for glasses helped him improve his grades and his attention in the classroom." *Id.* Defendants also contend, again, that "[t]o the extent that M.L. has a recognized injury, that injury stems a tension between his status as an ELL student who spent his formative years in Mexico and a potential suspicion of a learning disability," and that "[t]his tension is not typical to that of the proposed class members." *Id.*

Plaintiffs reply that, "[a]lthough the District spends much of its brief attacking the merits of the three new Plaintiffs' claims, the District's own actions both pre- and post-filing demonstrate the typicality of these three Plaintiffs' claims," in that it has now agreed to assess each. Dkt. 256 at 7-8. Plaintiffs add that "[i]t is also undisputed that both A.E. and D.C.'s parents made requests for evaluations and that the District followed their standard policy in response to the parent request that they acknowledge receiving (A.E.), which was to hold an SST meeting rather than conduct a special education evaluation." *Id.* at 9 (citation omitted). Plaintiffs further note that the SST and ultimate assessment plan of A.E. both indicate certain "disability-related flags," and that the screenings of D.C. and M.L. by Plaintiffs' expert, Dr. Flores, revealed "enough concern to merit an evaluation," including some deficiencies "so obvious" in M.L.'s screening that "they should have been flagged by his school staff." *Id.* Plaintiffs highlight that the testimony by Dr. Flores remains unaddressed and unrebutted by Defendants.

Plaintiffs also argue that the challenges to the typicality of M.L.'s claims are meritless, given his continued, severe struggles in school over the course of several years in the District -- which could not reasonably be attributed only to a language barrier. *Id.* at 10. Plaintiffs emphasize that M.L. was still unable to read after nearly four years as a student in the District, and that he "scored at the *first percentile* in math in February 2019, despite being given extended time on the test." *Id.* (citations omitted). Plaintiffs also point out that 2018 SST notes as to M.L. state that he "prefers to speak in English." *Id.* (citation omitted). Plaintiffs contend that "[a]ny assumptions . . . that this catastrophic failure is all attributable to where he went to school in his younger years actually demonstrates the problem and District staffs' inability to identify clear disability-related flags for its many students who have been educated in both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|----------|--------------------------|------|---------------|
| Title | J.R. v. Oxnard School District, et al. | | |

Mexico and the United States, or who are English Language Learners." *Id.* Plaintiffs further represent that "more than 50% of the District's students are ELL, and thus M.L. is entirely typical of this population." *Id.* at 10-11 (citation omitted). Finally, Plaintiffs contend that the assessment process can be specifically designed to "parse out whether it is truly a language acquisition issue or some other disability-related barrier to learning," and that a student's ELL status in no way undercuts the District's Child Find obligations. *Id.*

(c)     Application

As noted, Defendants have raised certain purported peculiarities as to the factual bases of the claims of A.E., D.C., and M.L., and contend that they preclude a finding of typicality. However, representative claims "need not be substantially identical" to satisfy the typicality requirement. *Hanlon*, 150 F.3d at 1020. Indeed, some factual differences among representative claims are to be expected. This does not present a problem, provided that the representative claims remain "reasonably co-extensive with those of absent class members." *Id.*

The factual distinctions identified by Defendants do not warrant a denial of class certification. Defendants identify certain indicia of the academic capabilities of A.E. and D.C., and then assert that they do not consider A.E. and D.C. to be students with potential disabilities. As to whether the typicality element is satisfied, this argument is not persuasive. *First*, disabilities covered under the IDEA can vary in seriousness and manifestation. However, this does not alter the responsibility of the District to identify and assess affected students. That a suspected disability does not bar all academic and related functioning, does not excuse a failure to identify and/or assess it. Further, it is likely that the proposed class will include students whose conditions cover a range of potential disabilities. Therefore, it could well be valuable to have a similar range among the named Plaintiffs.[22]

*Second*, the District's agreement to assess all three proposed class representatives, subsequent to the filing of the 4AC and the Motion for Class Certification, is not consistent with its insistence that A.E. and D.C. do not have any suspected disabilities that warrant assessment. *See* Ex. B-D to Declaration of Shawna Parks, Dkt. 240-1 at 38-51; Ex. C-E to Declaration of Shawna Parks, Dkt. 256-1 at 21-34. The opinion of Dr. Flores also supports the contention that D.C.'s behavior raises sufficient disability-related flags, including those of a language-based learning disability, that a full assessment is warranted. Declaration of Carlos Flores ("Flores Decl."), Dkt. 233-6 ¶¶ 2, 8; Ex. D to Flores Decl., Dkt. 233-6 at 19-20. The declaration testimony of T.L., A.E.'s mother, that "[o]ne of A.E.'s teachers told [her] that [she] should request [a] special education assessment for A.E." also conflicts with the District's contention, as does the magnitude of the shortcomings in A.E.'s initial academic performance. Declaration of T.L. ("T.L. Decl."), Dkt. 233-3 ¶¶ 5-6; Ex. A to T.L. Decl., Dkt. 233-3 at 5; *see also* Ex. E to Declaration of Shawna Parks, Dkt. 256-1 at 34 (listing "referral source" on A.E.'s assessment plan as "[o]ther school / district personnel").

Similarly, the argument that M.L.'s claims are not typical of those of the putative class because M.L. is an ELL student lacks force. *First*, more than half of the student body in the District has ELL status. Ex. A to

_____

[22]  The District's SST prereferral process and alleged "wait and see" approach have been applied to students with a range of suspected disabilities. However, this range does not interfere with the common injury, common questions or common answers at issue in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|----------|--------------------------|------|---------------|
| Title | J.R. v. Oxnard School District, et al. | | |

Declaration of Shawna Parks, Dkt. 40 at 12. Thus, M.L.'s ELL status does not distinguish him from the absent class members. *Second*, one of the purposes of an assessment is to disaggregate the effects of a potential disability from those of a language barrier. An assessment is appropriate and necessary independent of whether there is a language barrier.

Like the claims of the previous proposed class representatives, those of A.E., D.C., and M.L. all arise from the alleged inadequate Child Find policies and procedures of the District. Like the evidence as to the previous proposed class representatives, A.E., D.C., and M.L. each exhibited signs of disability and had ongoing and severe problems at school, but none was evaluated adequately or in a timely manner. Thus, the conclusions of the June 2018 Order stand. As before, "these experiences mirror those of the putative class members under the class definition, [and] the typicality requirement is met." Dkt. 128 at 15.

(4)    <u>Adequacy of Representation</u>

(a)    Legal Standards

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

(b)    Application

As Plaintiffs note, the guardian ad litem for each proposed class representative submitted a declaration in connection with the Motion for Class Certification "that demonstrate[s] their readiness and willingness to represent the class." Dkt. 256 at 11 (citing Declaration of E.E., Dkt. 233-5; Declaration of T.L., Dkt. 233-3; Declaration of M.L., Dkt. 233-4). In addition, there is no indication of any conflict of interest or antagonism between the proposed class representatives and the absent class members. Moreover, there is a sufficient unity of interests between the proposed class representatives and the absent class members to warrant a finding of adequacy.

The conclusion is the same as to proposed class counsel. Those counsel have vigorously prosecuted this action throughout the two years that it has been pending. Plaintiffs assert that the proposed class counsel "have substantial experience handling class actions and complex litigation, . . . are well versed in disability and education law, and . . . have sufficient resources to vigorously prosecute this case" -- and the declarations submitted by counsel provide evidentiary support for each of these contentions. Dkt. 233 at 29; Declaration of Shawna Parks, Dkt. 152 ¶¶ 3-23; Declaration of Janeen Steel, Dkt. 151 ¶¶ 4-21; Declaration of Stuart Seaborn, Dkt. 153 ¶¶ 3-14.

Defendants have not provided a basis to contest the adequacy of representation of either the proposed class representatives or the proposed class counsel.

For the foregoing reasons, the adequacy of representation requirement has been satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

3.      Requirements of Fed. R. Civ. P. 23(b)(2)

a)      Legal Standards

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)); *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("As the Advisory Committee Notes explain, Rule 23(b)(2) was adopted in order to permit the prosecution of civil rights actions."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights.").

The requirement of Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *accord Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125.

b)      Application

As stated in the prior order as to the first motion for class certification in this action,

> Defendants do not argue that the standards of Fed. R. Civ. P. 23(b)(2) have not been satisfied. Plaintiffs challenge the policies and practices regarding identifying, locating and evaluating students with disabilities. These are issues that apply to all class members. Consequently, injunctive and/or declaratory relief can properly address them. *See Parsons*, 754 F.3d at 689 ("Contrary to the defendants' assertion that each inmate's alleged injury is amenable only to individualized remedy, every inmate in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in statewide [prison] policy and practice").

Dkt. 128 at 16. No aspect of this analysis has changed. Accordingly, the standards of Fed. R. Civ. P. 23(b)(2) have been satisfied.

\*          \*          \*

For the foregoing reasons, the Motion for Class Certification is **GRANTED**.[23]

---

[23] In their opposition to the Motion for Class Certification, Defendants also argue that "the proposed class representatives must first exhaust administrative remedies before asserting their claims in this court," and that "PLN lacks standing to assert claims for injunctive relief on behalf of the class." Dkt. 252 at 26-28. Because these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-04304 JAK (FFMx) | Date | July 30, 2019 |
|---|---|---|---|
| Title | J.R. v. Oxnard School District, et al. | | |

**V.**    __Conclusion__

For the reasons stated in this Order, the Motion for Class Certification is **GRANTED**, and the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.


**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    ak

_____

arguments were also raised in the briefing on the Motion to Dismiss, they have been discussed in the previous section. Neither changes the outcome as to class certification. As noted, there is a sufficient basis on which to excuse exhaustion of the class claims. In addition, because PLN is not a proposed class representative, and there is no dispute that the three proposed class representatives have Article III standing, the standing of PLN to bring class claims for injunctive relief is not material to the outcome of the Motion for Class Certification.