Shawna L. Parks (SBN 208301)
**DISABILITY RIGHTS ADVOCATES**
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
Tel: (510) 665-8644
Fax: (510) 665-8511
Emails: sparks@dralegal.org

Heather Zakson (SBN 225279)
**LEARNING RIGHTS LAW CENTER**
1625 W Olympic Boulevard,
Suite 500
Los Angeles, CA 90015-4684
Tel: (213) 489-4020
Fax: (323) 967-4279
Email: heather@learningrights.org

Attorneys for Plaintiffs (continued on the next page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R., a minor, by and through her guardian ad litem, JANELLE MCCAMMACK, et al., | Case No. 2:17-cv-04304-JAK-DTx |
| Plaintiffs, | **Joint Notice Of Motion and Motion For Order Preliminarily Approving Class Action Settlement; Memorandum Of Points And Authorities in Support Thereof** |
| v. | Judge: Hon. John A. Kronstadt<br>Date: August 25, 2025<br>Time: 8:30 a.m.<br>Courtroom: 10C |
| OXNARD SCHOOL DISTRICT, et al., | |
| Defendants. | |

Janeen Steel (SBN 211401)
**VANAMAN GERMAN LLP**
14001 Ventura Boulevard
Sherman Oaks, CA 91423-3511
Tel: (818) 990-7722
Email: jsteel@vanamangerman.com

Attorneys for Plaintiffs (continued from previous page)

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT ON August 25, 2025 at 8:30 a.m. or at such other date and time as the Court may set, Plaintiffs M.L., D.C., and PRIMERO LOS NINOS (collectively "Plaintiffs"), and Defendants OXNARD SCHOOL DISTRICT; ANA DEGENNA, in her official capacity as Superintendent of Oxnard School District; VERONICA ROBLES-SOLIS, in her official capacity as President of Board of Trustees; MONICA MADRIGAL LOPEZ, in her official capacity as Trustee Board of Trustees; BRIAN MELANEPHY, in his official capacity as Trustee of Board of Trustees; CYNTHIA SALAS, in her official capacity as Trustee of Board of Trustees; and ROSE GONZALES, in her official capacity as Trustee of Board of Trustees (collectively, "Defendants"), will jointly move the Court for relief as follows:

> 1. To preliminarily approve under Fed. R. Civ. P. 23 the Settlement Agreement and Release of Claims (the "Agreement") between Plaintiffs and Defendants;
>
> 2. To approve the proposed notice to be distributed to class members under Fed. R. Civ. P. 23(c)(2) and (e)(1), with a process to set the procedure for the finalization and distribution of the notice and a process for selecting a date for the final fairness hearing.

The hearing on this motion will take place before United States District Judge John A. Kronstadt, and will be conducted at First Street Courthouse, 350 W. First Street, Courtroom 10C, Los Angeles, CA 90012.

This motion is based on this Joint Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations, exhibits and stipulation, all pleadings and papers on file in this action, and any oral argument that may be presented.

1  DATED: July 28, 2025                    Respectfully Submitted,

2                                          DISABILITY RIGHTS ADVOCATES
3                                          LEARNING RIGHTS LAW CENTER
                                           VANAMAN GERMAN LLP
4
5
6                                          _____
                                           Shawna L. Parks
7                                          Attorneys for Plaintiffs

8
9  DATED: July 28, 2025                    GARCIA HERNÁNDEZ SAWNEY, LLP
10
11
                                           _____
12                                         Lawrence S. Joe
                                           Attorneys for Defendants
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................ 1

II.    BACKGROUND AND PROCEDURAL HISTORY ............................. 1

A.    Brief Background of Case ............................................... 2

B.    Procedural History ........................................................ 2

C.    History of Settlement Negotiations ................................ 4

III. SUMMARY OF PROPOSED SETTLEMENT ............................. 5

A.    Timely identification, referral, and assessment of students suspected of having disabilities. ......................... 6

B.    Tracking and management of special education requests, referrals, and assessments. .............................. 7

C.    Annual training of District staff regarding Child Find obligations. ........... 8

D.    District outreach regarding Child Find obligations and parent and student procedural safeguards. .................... 8

E.    Enforcement and Monitoring. ........................................ 9

F.    Dispute Resolution. ....................................................... 9

G.    Procedure for Resolving Attorneys' Fees and Costs. .............................. 10

H.    Release. ........................................................................ 10

IV. LEGAL STANDARD AND ARGUMENT ............................. 11

A.    The Proposed Settlement Should be Preliminarily Approved ................... 11

1.    Plaintiffs and Their Counsel Have Adequately Represented the Class ...... 11

2.    The Proposed Settlement Was Negotiated at Arm's Length ..................... 12

3.    The Relief Provided for the Class is Adequate. ............................... 14

a. Adequacy of Relief. ........................................... 14

b. Costs, Risks, and Delay of Trial and Appeal ................... 14

c. Proposed Procedure for Resolving Attorneys' Fees. ................... 15

    4.    The Proposed Agreement Treats Class Members Equitably.........................16

    5.    The Proposed Notice Form and Notice Plan Are Appropriate. ...................16

  B. Proposed Schedule and Deadlines.................................................................17

V. CONCLUSION....................................................................................................18

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ...............................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007).............................11

*Ahdoot v. Babolat v. North America*, No. CV 13-02823 GAF (VBKx), 2014 WL 12586114 (C.D. Cal. Oct. 7, 2014) ........................................................13

*Ayala v. AT&T Mobility Services, LLC*, No. 2:18-CV-08809-FLA (MRWx), 2023 WL 11944375 (C.D. Cal. June 20, 2023)..................................................11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...........................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............15

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............13

*Lane v. Facebook Inc.*, 696 F.3d 811 (9th Cir. 2012)..................................... 11, 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................................12

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ...................................................................................11

*Ohuche v. Autovest, L.L.C.*, No. LA CV 21-06376 JAK (PCVx), 2023 WL 8375213 (C.D. Cal. Mar. 8, 2023)................................................... 11, 13

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009).................... 13, 15, 16

**Statutes**

Americans with Disabilities Act ...............................................................................1

Individuals with Disabilities Education Act .............................................................1

Section 504 of the Rehabilitation Act .......................................................................1

20 U.S.C. § 1400.....................................................................................................15

20 U.S.C. § 1412(a)(1)..............................................................................................2

20 U.S.C. § 1412(a)(3)(A) .........................................................................................2

29 U.S.C. § 794 ...................................................................................................15

42 U.S.C. § 12205 ..............................................................................................15

**Federal Regulations**

34 C.F.R. § 300.301 .............................................................................................2

34 C.F.R. §§ 300.111 ...........................................................................................2

**Rules**

Fed. R. Civ. P. 23(c)(2) ................................................................................ 1, 17

Fed. R. Civ. P. 23(c)(2)(a) ...............................................................................16

Fed. R. Civ. P. 23(e) .................................................................................. 11, 13

Fed. R. Civ. P. 23(e)(1) .......................................................................... 1, 16, 17

Fed. R. Civ. P. 23(e)(2) .............................................................................. 11, 14

Fed. R. Civ. P. 23(e)(2)(C) ...............................................................................14

Under Fed. R. Civ. P. 23(e)(2)(D) ...................................................................16

**Other Authorities**

Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2) ..........13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This lawsuit and the proposed Class Action Settlement Agreement (the "Agreement") address Plaintiffs' allegations that Defendants systemically violated federal laws, which place specific obligations to timely locate, identify and evaluate students in the Oxnard School District (the "District") who may have disabilities that impact their education and/or that require special education services. The Agreement provides for significant injunctive relief that address the District's policies and procedures regarding the identification, referral, and evaluation of students for purposes of providing services or accommodations under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act ("ADA").

The Agreement is the product of extensive settlement negotiations between the Parties and achieved only after years of robust litigation. It is in the best interest of all, and satisfies the requirements of Federal Rule of Civil Procedure 23. The Parties respectfully request that the Court: (1) preliminarily approve the Agreement between Plaintiffs and Defendants; and (2) approve the proposed notice to be distributed to class members under Fed. R. Civ. P. 23(c)(2) and (e)(1), with a process to set the procedure for the finalization and distribution of the notice and a process for selecting a date for the final fairness hearing.

## II.    BACKGROUND AND PROCEDURAL HISTORY[1]

---

[1] The parties through this motion provide the Court with background information sufficient to inform the Court's analysis of the benefits to the class of the settlement. Nothing in the Agreement or this Motion concedes any liability on the part of the District, nor indicates an agreement between the parties regarding the merits of Plaintiffs' claims or Defendants' defenses. The parties further agree that the characterization of the facts contained herein shall not be binding on either party and shall not be construed as an admission of liability or wrongdoing by the District.

### A.    Brief Background of Case

Plaintiffs in this matter alleged that Defendants violated the Individuals with Disabilities Education Act, by failing to develop effective "child find" policies and procedures that ensure that "[a]ll children . . . , regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A); *see also* 20 U.S.C. § 1412(a)(1), 34 C.F.R. §§ 300.111, 300.301–11. Plaintiffs alleged that the District consequently failed to identify and evaluate "children who are suspected of being a child with a disability. . . and in need of special education, even though they are advancing from grade to grade," 34 CFR § 300.111(c)(1), and also failed to respond to parental requests for evaluation for special education services in a timely and legally required manner. 34 C.F.R. § 300.301; s*ee generally,* Plaintiffs' Fourth Amended Complaint (FAC) (Dkt. #232) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. 293). Plaintiffs also brought claims under the ADA and Section 504 of the Rehabilitation Act that flow from these violations. *Id.*

More specifically, Plaintiffs alleged that the District's standard policy when confronted with failing students who exhibited signs of possible disability, or otherwise indicated a need for assessment, was not to refer such students for special education assessments and/or to rely on an alternate system of using informal Student Success Teams ("SSTs"), either way denying students special education assessments. *See* FAC ¶¶3-6.

### B.    Procedural History

The initial administrative special education cases that precipitated this matter were originally filed with the Office of Administrative Hearings in the Fall of 2016.[2]

---

[2] In addition to the federal litigation, Class Counsel were involved in a total of six administrative special education cases over the course of the case that related to

Following decisions in those three initial cases, this matter was originally filed on June 9, 2017, with a first amended complaint filed July 26, 2017. (Dkt. #1 & 14). It has been extensively litigated since then. Plaintiffs filed their initial motion for class certification on November 22, 2017. (Dkt. #39). Beginning with the third amended complaint, Defendants filed a motion to dismiss on November 26, 2018. (Dkt. #163). In all, there were a total of three motions for class certification from Plaintiffs and two motions to dismiss from Defendants. (Dkt. #39 (first motion for class certification, 11/22/2017); Dkt. #150 (second motion for class certification, 11/26/2018); Dkt. #233 (third motion for class certification, 4/1/2019); Dkt. #163 (first motion to dismiss, 11/26/2018); Dkt. #245 (second motion to dismiss, 4/30/2019)).

Resolving the last of these motions, both Plaintiffs' third motion for class certification and Defendants' second motion to dismiss, this Court issued an order on July 30, 2019 certifying the plaintiff class and denying Defendants' motion to dismiss. (Dkt. #262). The Court certified the following class:

> [A]ll students in Oxnard School District who have or may have disabilities and who have been or will be subject to the District's policies and procedures regarding identification and evaluation of students for purposes of providing services or accommodations under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

(Dkt. #262 at 2, 22). Plaintiffs A.E., D.C., and M.L. were appointed class representatives. (Dkt. #262 at 34).[3] Disability Rights Advocates, Learning Rights Law

---

named plaintiffs and that proceeded to decision. Declaration of Shawna L. Parks ("Parks Decl.") Decl. ¶6.

[3] As noted in the accompanying stipulation, Plaintiff A.E., who was designated a class representative in the July 30, 2019 order on class certification, no longer resides in the United States. The parties stipulate that he need no longer be a class member, and thus

Center, and the Law Office of Shawna L. Parks were appointed as Class Counsel.[4] *Id.*

The parties engaged in discovery throughout the case, but most heavily in 2019. The parties engaged in written discovery, including interrogatories and document requests. Plaintiffs and Defendants took a total of nine and three fact depositions respectively. Parks Decl. ¶10.

The parties also produced expert reports and rebuttal expert reports in January of 2020. Parks Decl. ¶11. This included a cumulative total of twenty-two experts, including both retained and non-retained experts. Parks Decl. ¶11.

The Parties filed cross motions for summary judgment on March 13, 2020. (Dkt. #292, 293) Plaintiffs filed four motions to exclude certain expert opinions in June 2020 (Dkt. #316, 317, 318, 319), to which Defendant filed oppositions (Dkt. #322, 323, 324, 325) and Plaintiffs filed replies (Dkt. #326, 327, 328, 329). This Court issued its order on the cross motions for summary judgment on May 1, 2023. Dkt. #370. While neither party was granted summary judgment, the Court's twenty-five-page order addressed numerous factual and legal contentions of the parties.

## C.    History of Settlement Negotiations

The Parties' Agreement was reached after years of extensive arm's-length negotiations, including exchanges of written proposals, conferences among counsel, and

---

the class is represented by named Plaintiffs M.L. and D.C. Primero Los Ninos has also signed the agreement as the organizational plaintiff in the case. In addition, the identities of the District officials named in their official capacity have changed. The current board members and Superintendent signed the Agreement, and are substituted in per FRCP 25(d) (officer's successor is automatically substituted as a party).

[4] Janeen Steel moved from Learning Rights Law Center to Vanaman German LLP in May of 2021, and continues to both practice special education law, and to be involved in this matter. As such, the parties have agreed in the Agreement and have submitted a stipulation to allow Vanaman German LLP to be added as Class Counsel in this matter. Shawna L. Parks moved from the Law Office of Shawna L Parks to Disability Rights Advocates (both of which were named as class counsel) in February of 2024, and has remained on the case since its inception.

in-person and telephonic settlement discussions with three third-party mediators. Parks Decl. ¶¶13-14. The parties engaged in settlement discussions utilizing three different third-party mediators, and have met for settlement purposes, both with the third parties and without, scores of times. Parks Decl. ¶¶13-14. First, in 2018 the parties utilized Judge Margaret Nagle at JAMS, and had a total of two sessions in front of that mediator. (Dkt.# 106). Also in 2018, the parties used Magistrate Frederick Mumm, attending one settlement conference in his court. (Dkt.# 135, 137). Finally, in the latter part of 2019 the parties utilized Magistrate Patrick Walsh (prior to his retirement from the Court), attending multiple in person and telephonic conferences with him. (Dkt. # 204, 217, 247, 265, 270, 278, 279, 280, 284, 285, 286, 287). Parks Decl. ¶¶13-14.

The parties returned to Judge Patrick Walsh (Ret.), now with Signature Resolution, for two mediation sessions in 2023 and 2024. Parks Decl. ¶14. Between mediations, the Parties met over conference calls and email to discuss settlement provisions and exchanged numerous settlement drafts. Parks Decl. ¶14. The parties reached a final settlement agreement in Spring of 2025, which was approved by the Board of Education on May 21, 2025. Parks Decl. ¶14.

**III. SUMMARY OF PROPOSED SETTLEMENT**

The Agreement will be in effect upon final approval by this Court and will end two years thereafter. *See* Parks Decl., Ex. A (Class Settlement Agreement) at "Agreement" §3 (Settlement Term).

The settlement terms address the District's special education policies and procedures as they related to identification and evaluation of students. As an initial matter, the settlement documents that the enrollment numbers in the District have grown over the course of the litigation in this matter. While the percentage of students enrolled in special education was 8.86% in the school year prior to the litigation, data for the 2023-24 school year shows that enrollment had reached 17.84% percent of the school population. Parks Decl., Ex. A at sixth recital and Exhibit 1 to Agreement. The

parties have agreed through the settlement that enforcement procedures may be initiated

should the percentage enrollment drop one percent below the 2023-24 benchmark if

Class Counsel believe, based on the monitoring information provided, that Defendants

are in violation of the Agreement. Parks Decl., Ex. A at §5 (Monitoring) and §8

(Dispute Resolution).

With respect to policies and procedures, the Parties have agreed to terms in four

core areas. First, the District will have policies that will enable timely identification,

referral, and assessment of students suspected to have disabilities, including an

agreement not to use Student Success Team meetings in lieu of special education

referrals. Parks Decl., Ex. A at §4a (Referrals of Students for Special Education

Assessments). Second, the District will track and manage special education requests,

referrals, and assessments, which will be monitored by qualified District staff. Parks

Decl., Ex. A at §4b (Tracking). Third, the District will conduct annual "refresher"

training for District staff regarding Child Find obligations. Parks Decl., Ex. A at § 4c

(Training). Fourth, the District will conduct outreach to pertinent organizations,

institutions, and families regarding the District's Child Find obligations and parent and

student procedural safeguards with respect to special education. Parks Decl., Ex. A at

§4d (Outreach).

A.     **Timely identification, referral, and assessment of students suspected of
       having disabilities.**

Under the Agreement, the District agrees to: (i) immediately refer a student for

special education assessment if District staff have reason to suspect that a student may

have a disability and that special education services may be needed to address a

student's suspected disability, and (ii) document each request for a special education

assessment. Parks Decl., Ex. A at §4a(1).

The parties agree that any student, with or without a disability, may be referred to

a Student Success Team ("SST") meeting at any time to address any education or other

challenges, and the District will not use the SST meeting process in lieu of a referral for a special education evaluation. Parks Decl., Ex. A at §4a(2). In order to monitor the District's use of the SST process, the District will provide Class Counsel a random sample of 12% of SST files on a periodic basis. Parks Decl., Ex. A at §4a(2)(ii). The District's SST process will also utilize targeted, evidence-based interventions, with qualitative data tracking. Parks Decl., Ex. A at §4a(2).

The District will also adhere to legally required timelines, including providing parents or guardians with a written response within 15 days of referral by a District teacher/staff or an oral or written request by a parent or anyone on behalf of a parent for a special education assessment, and assessing students in all areas of suspected disability and will complete special education assessments within 60 days of receiving a parent or guardian's written consent to conduct the assessment(s).

**B.     Tracking and management of special education requests, referrals, and assessments.**

The Agreement requires the District to manage and track special education requests, referrals, and assessments via SIRAS, the web-based student information system adopted by the Ventura County Special Education Local Plan Area. The District's Director of Special Education, who is trained on Child Find, will monitor SIRAS with the support of the District's special education managers and data technicians regarding referral and assessment timelines. Parks Decl., Ex. A at §4b(1).

The District will also utilize SIRAS to manage and track students referred to the SST process. SIRAS will be used to track, among other data, the date of referral to SST, SST meeting dates (e.g., date of initial SST meeting, most recent SST meeting, and any upcoming SST meetings), and student outcomes. SST data will be monitored by a District Administrator, who is trained on Child Find obligations. Parks Decl., Ex. A at §4b(2).

*J.R. v. Oxnard School District*, Motion for Preliminary Approval of Class Settlement

**C.    Annual training of District staff regarding Child Find obligations.**

The District will provide annual "refresher" trainings for all general education teachers, special education teachers, school counselors, school psychologists, administrators, District occupational therapists, and District speech and language pathologists regarding their Child Find obligations. Parks Decl., Ex. A at §4c.

**D.    District outreach regarding Child Find obligations and parent and student procedural safeguards.**

Under the Agreement, the District will make information regarding Child Find available to the community through multiple means including: (i) reaching out to private schools and other institutions and organizations throughout the District ; (ii) sending all families, as part of their Annual Parents' Rights Notification, information related to Child Find and services for students with disabilities, including the screening and evaluation process for special education eligibility; and (iii) by posting on the District's Special Education Department webpage information regarding special education, including a link to the Ventura County SELPA's Notice of Parent and Adult Student Rights and Procedural Safeguards for Special Education in English and Spanish. Parks Decl., Ex. A at §4d(1).

In addition to the written Notice of Parent Rights and Procedural Safeguards, the District's Special Education Department website will contain a link to an audio recording of the Notice of Parent Rights and Procedural Safeguards in Mixteco.[5] Parks Decl., Ex. A at §4d(1)(iii). The District's Special Education Department webpage will also include specific language regarding parents' right to request a special education assessment at any time. Parks Decl., Ex. A at §4d(1)(iv). The District website will outline the process for requesting a special education assessment, the timeline the District has to respond to requests, and the right to and process for appealing a District

[5] Mixteco is an indigenous language from Mexico that is common among families in the District and is not a written language.

decision to decline to assess a student. Parks Decl., Ex. A at §4d(1)(iv). Further, the website will include contact information for local and state agencies that parents and adult students may contact for information regarding rights and procedural safeguards for special education. Parks Decl., Ex. A at §4d(1)(iv).

### E.    Enforcement and Monitoring.

The Court shall maintain jurisdiction to enforce the terms of the Agreement for the two-year time period following final approval of this Agreement. Class Counsel shall monitor the District's compliance with the Agreement. The District shall provide Class Counsel: (1) all revised written policies and procedures; (2) a random sample of SST files based on an unsorted master list of students with SSTs consisting of only student identification numbers; (3) aggregate data regarding the source and number of special education referrals; (4) aggregate data reflecting overall enrollment, special education enrollment, and enrollment by disability, grade, language status, and school; (5) aggregate data reflecting number of students in SSTs by grade, language status, and school; and (6) copies of any training materials used in connection with the Child Find training identified in the Agreement. Parks Decl., Ex. A at §5.

### F.    Dispute Resolution.

The Parties agree that, should the District's special education percentage drop below 16.84% (which is 1% below the percentage of the 2023-2024 school year) at any time within the two-year time period following Final Approval, Class Counsel may initiate dispute resolution procedures if Class Counsel believe, based on the monitoring information provided, that Defendants are violating the Agreement. Parks Decl., Ex. A at §8. All disputes concerning the interpretation, implementation, monitoring, and compliance with the Agreement, shall be resolved pursuant to a four-stage procedure that involves written notice of the dispute, a meet and confer process, mediation with Judge Walsh, and finally (if those prior measures do not resolve the dispute) submission to the Court. Parks Decl., Ex. A at §8.

*J.R. v. Oxnard School District*, Motion for Preliminary Approval of Class Settlement

### G. Procedure for Resolving Attorneys' Fees and Costs.

The parties did not agree on a number for attorneys' fees for Class Counsel, but rather agreed on a process for determining the amount of fees to be awarded. The Parties will begin negotiating attorneys' fees and costs after the order on preliminary approval is entered. Within 14 days of the Court's order on preliminary approval, the Parties will attempt to negotiate the amount of fees incurred. If the Parties are not able to amicably resolve Plaintiffs' counsel fee demand within 45 days of Class Counsel's service of its initial fee demand, the Parties agree to the following procedure. First, to refer the matter to Judge Walsh for a determination for resolution. Second, if either party disagrees with Judge Walsh's determination, and the Parties are unable to reach a final resolution within 21 days of Judge Walsh's determination, the Parties agree that either party may file a motion to review Judge Walsh's determination to the District Court. Parks Decl., Ex. A at §9.

The Parties agree to discuss a payment schedule for attorneys' fees and costs when negotiating the amount of fees incurred by Class Counsel.[6]

### H. Release.

The release is limited to: all claims for class-wide relief as certified by the Court with respect to claims arising from or related to the Fourth Amended Complaint through the time period governed by this Settlement Agreement. Nothing in the Agreement releases any individual claims. Parks Decl., Ex. A at §10.

The release does not waive a student's right to file a due process complaint for individual claims against the District on any matter under IDEA or related California Education codes, or Class Counsel's ability to represent any students in individual due

---

[6] Plaintiffs also are entitled to attorneys' fees for time spent monitoring the terms of this Agreement. The District agrees to pay Class Counsel up to $15,000 per six-month period and no more than $30,000 per year to monitor the District's compliance with the Agreement. Parks Decl., Ex. A at §9c.

process complaints. Parks Decl., Ex. A at §10.

## IV. LEGAL STANDARD AND ARGUMENT

"Settlement [is] the preferred means of dispute resolution[,] especially . . . in complex class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, a "strong judicial policy" favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement that is binding on absent class members requires court approval. Fed. R. Civ. P. 23(e). Approval is a two-step process: (1) preliminary approval of the settlement and (2) after a notice period, final determination that the settlement is fair, reasonable, and adequate. *See Ohuche v. Autovest, L.L.C.*, No. LA CV 21-06376 JAK (PCVx), 2023 WL 8375213, at *9 (C.D. Cal. Mar. 8, 2023) (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007)).

### A.    The Proposed Settlement Should be Preliminarily Approved.

In determining whether a class settlement is fair, Federal Rule of Civil Procedure Rule 23(e) requires courts to consider: (1) whether the class was adequately represented; (2) whether the proposed settlement was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the terms of any proposed award of attorneys' fees, and other facts; and (4) whether the proposal treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2); *see Ayala v. AT&T Mobility Services, LLC*, No. 2:18-CV-08809-FLA (MRWx), 2023 WL 11944375, at *4 (C.D. Cal. June 20, 2023). *See also Lane v. Facebook Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

### 1.    Plaintiffs and Their Counsel Have Adequately Represented the Class.

In determining whether a class has been adequately represented, courts consider the same "adequacy of representation" questions that are relevant to class certification. "Great weight is accorded to the recommendation of counsel, who are most closely

acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal quotations and citation omitted).

Here, the adequacy of representation element has already been determined. Dkt. #262. Class Counsel is comprised of law firms and legal organizations that have substantial experience in complex litigation, including litigation involving individuals with disabilities in public education settings. Parks Decl. ¶¶20-40; and *generally* Declaration of Janeen Steel. As described in detail in the Declaration of Shawna Parks, Class Counsel have extensive experience in special education and class action litigation. *Id.* at ¶¶20-40. Class Counsel has thoroughly investigated the claims prior to bringing this action, diligently litigated the case and have ample resources to actively pursue the case until resolution. Parks Decl. ¶42. Moreover, there still remains no conflicts of interest between Class Counsel and class members. Parks Decl. ¶43.

The class representatives have consistently represented the interests of the class and provided Class Counsel with valuable information and essential input. Parks Decl. ¶ 43. Class Representatives understand the obligations of a class representative and have adequately represented the interests of the class. Parks Decl. ¶43; *see also* Declarations of M.L. and D.C.

Together, Class Counsel and class representatives have adequately and effectively represented the interests of the Class. Their efforts and dedication have ensured such robust advocacy for the Class's needs and rights during the entirety of the case and legal proceedings.

2.      The Proposed Settlement Was Negotiated at Arm's Length.

As discussed above, in § II.C, the Parties' Agreement was reached after extensive arm's-length negotiations, including exchanges of written proposals, conferences

12

*J.R. v. Oxnard School District*, Motion for Preliminary Approval of Class Settlement

1   among counsel, and in-person and telephonic settlement discussions with a third-party

2   mediator – Judge Patrick Walsh (Ret.). Parks Decl. ¶¶13-14. Between settlement

3   conferences, the Parties met over Zoom and over conference calls to discuss settlement

4   provisions and exchanged numerous settlement drafts. Parks Decl. ¶14. One

5   consideration that comes into play in a court's analysis in making a fairness

6   determination on a class settlement is whether the settlement is the product of arms-

7   length negotiations. *Ohuche v. Autovest, L.L.C.*, No. LA CV 21-06376 JAK (PCVx),

8   2023 WL 8375213, at *10 (C.D. Cal. Mar. 8, 2023) (quoting *Rodriguez v. W. Publ'g

9   Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)), Fed. R. Civ. P. 23(e). Further, the Advisory

10  Committee has recognized, "the involvement of a neutral or court-affiliated mediator or

11  facilitator . . . may bear on whether [negotiations] were conducted in a manner that

12  would protect and further the class interests." Advisory Committee Notes to 2018

13  Amendments, Fed. R. Civ. P. 23(e)(2). Where, as here, an agreement is the product of

14  "serious, informed, non-collusive negotiations" conducted by experienced counsel over

15  an extended period of time, courts routinely find that preliminary approval is

16  appropriate. *See, e.g.*, *Ahdoot v. Babolat v. North America*, No. CV 13-02823 GAF

17  (VBKx), 2014 WL 12586114, at *8 (C.D. Cal. Oct. 7, 2014) (quoting *In re Tableware

18  Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007)). Here, Class Counsel

19  extensively investigated the facts and the claims against the District. Parks Decl. ¶¶6-

20  12, and 42. These efforts included extensive discovery and motion practice. Parks Decl.

21  ¶¶6-12. Class Counsel has thoroughly evaluated the strengths and weaknesses of the

22  claims against the District and the benefits offered by the proposed Settlement in the

23  context of this case. Parks Decl. ¶¶41-42.

24      Furthermore, Plaintiffs' counsel did not address attorneys' fees and costs until

25  agreement appeared to be reached on the substantive relief of the settlement. Parks

26  Decl. ¶15; *See, e.g.*, *Ahdoot v. Babolat v. North America*, No. CV 13-02823 GAF

27  (VBKx), 2014 WL 12586114, at *12 (C.D. Cal. Oct. 7, 2014) (holding settlement was

28   

negotiated at arm's length where, among other things, the parties did not discuss attorney's fees until after an agreement was reached on settlement claims). The Court should find that this Rule 23(e)(2) factor weighs in favor of approval.

3.    The Relief Provided for the Class is Adequate.

The third factor requires courts to determine if "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). They consider things like (i) the costs, risks, and delays of trial and appeal; (ii) how well the proposed method gives relief to the class, including processing class members' claims; (iii) when and how much the attorneys get paid; and (iv) any agreement needed under Rule 23(e)(3) of the Federal Rules of Civil Procedure.

a. Adequacy of Relief.

The proposed settlement fully addresses the issues raised on behalf of the class in the operative Complaint. For example, among other things, the Agreement requires the District to update its special education policies and procedures, provide annual trainings for District staff regarding Child Find obligations, and to timely identify and assess students with suspected disabilities, which will provide substantial relief to the Settlement Class. Parks Decl., Exh. A at §4. The agreed upon policies and practices outlined directly address the issues raised in the Complaint by ensuring that Class Members with disabilities attending District schools will be timely assessed and provided with pertinent services to guarantee access to a free appropriate public education (FAPE). Thus, this Agreement provides class-wide relief that, if approved, will provide significant benefits to all Class Members within the District.

b.    Costs, Risks, and Delay of Trial and Appeal.

In considering "the costs, risks, and delay of trial and appeal," courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Settlement is favored where a case is "complex and likely to be expensive and lengthy to try." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Continuing litigation in this case presents significant financial and strategic risks for all parties involved. To date, Plaintiffs' Counsel has invested significant hours and considerable expenses. Parks Decl. ¶42. The uncertainty of trial outcomes and potential additional costs, including legal fees, heightens the risks associated with continued litigation. *Id.*

Here, the balance of strengths and risks favors settlement. Continuing litigation presents significant strategic and financial risks for both parties. Settlement was reached after extensive motion practice from both parties, including cross-motions for summary judgment. *See* Dkt. #292, 293. There is no guarantee that either side would prevail, and any litigated result would require significant Court time and resources. Even if the Plaintiffs were to prevail, the relief included in the Agreement might not otherwise be available from a court. Parks Decl. ¶42. Based on these factors, the Parties made a considered decision that this settlement is in the best interests of the class and deserves judicial approval. Parks Decl. ¶44.

### c. Proposed Procedure for Resolving Attorneys' Fees.

The statutes at issue in this action allow prevailing plaintiffs to recover their reasonable fees and costs. *See* 42 U.S.C. § 12205, *et seq.* (ADA); 29 U.S.C. § 794, *et seq.* (Section 504); 20 U.S.C. § 1400, *et seq.* (IDEA). In the context of a class settlement, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

As described above in § II.C, the Parties did not negotiate an amount of attorneys' fees prior to reaching an agreement on injunctive relief for the class, eliminating any potential conflict between Plaintiffs' counsel and the Class. Parks Decl. ¶15. Accordingly, the Court should preliminarily approve the Parties' agreement on the

procedure for resolving fees, costs and expenses.

4.      The Proposed Agreement Treats Class Members Equitably.

Under Fed. R. Civ. P. 23(e)(2)(D), a settlement should treat plaintiffs and all other "class members equitably relative to each other." In the proposed Agreement, every class member, including the Plaintiffs, will receive identical equitable relief.

5.      The Proposed Notice Form and Notice Plan Are Appropriate.

The discretion to give notice to a settlement class certified under Rule 23(b)(2) rests with the Court, as outlined in Fed. R. Civ. P. 23(c)(2)(a) and (e)(1). The notice, as mandated by Rule 23(e), should "generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard," as emphasized in *Lane*, 696 F.3d at 826 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)). The Parties' proposed notice aligns with and satisfies this standard. Parks Decl. Ex. A, Proposed Notice (Exhibit 2 to Agreement). The proposed long and short form Notice includes, in plain language: (1) a summary of the substantive relief included in this agreement; (2) the date of the hearing on the final approval of the Agreement with a clear statement that the date may change without further notice to the Class; (3) the deadline for submitting objections to the Agreement; (4) contact information for Plaintiffs' counsel to answer questions; (5) the address for Plaintiffs' counsel's website; and (6) instructions on how to access the case docket via PACER or in person at the Court's locations. Parks Decl. Ex. A, Proposed Notice (Exhibit 2 to Agreement). A Short Form Notice highlighting the agreement and providing a link at which the full Notice and Agreement can be found will also be distributed. Parks Decl. Ex. A, Proposed Notice.

The Parties have agreed on a notice distribution plan that will effectively inform class members about the settlement and their right to object. Upon approval from the Court pursuant to the Parties' proposed plan outlined below, notice will be published in English and Spanish and will be distributed or posted as follows until the deadline for

16

submitting objections has passed: (1) for the parent of a class member for whom the District has an email address, Defendants will email copies of the Notice in English and Spanish; (2) Defendants will provide a copy of the Notice in English and Spanish through ParentSquare, the District's online communication application; (3) Defendants will post the Notice in English and Spanish on the District website; and (4) Plaintiffs' counsel will each post on their respective websites a copy of the Notice in English and Spanish and the proposed Agreement. *see* Parks Decl., Ex. A §6c. Distribution of the notice through the aforementioned means will ensure that the notice reaches the maximum number of class members in the most efficient and cost-effective manner.

In conclusion, the proposed notice effectively summarizes the basis of the lawsuit and describes the essential terms of the Agreement and a class member's right to object to the settlement. Both the proposed notice and plan satisfy Rules 23(c)(2) and (e)(1).

**B. Proposed Schedule and Deadlines.**

Should the Court preliminarily approve the settlement and notice, the Parties propose the following procedure for determining a final notice and fairness hearing date:

1.    The Settlement Agreement calls for negotiation of attorneys' fees and costs for Plaintiffs' Counsel to be negotiated after Preliminary Approval. The Agreement calls for Plaintiffs' Counsel to send a demand no later than fourteen (14) days after Preliminary Approval, and for the parties to negotiate for forty-five (45) days thereafter in an attempt to reach a resolution as to the amount. (Agreement at §9)

2.    Notice to the class in this matter will be issued after this negotiations period and will include either that the Parties have negotiated an amount, and that this amount will be approved by the Court, or that Magistrate Judge Walsh (Ret.) will resolve the attorneys' fee issue, with review, if a Party so chooses, by this Court.

3.    The Parties are directed to file a status report with the Court no later than sixty (60) days after the Court's order granting preliminary approval, informing the

Court whether the fees were successfully negotiated or will be decided by Judge Walsh, attaching an updated notice containing the required information, and proposing a deadline for objections, a hearing date for the final fairness hearing that includes sufficient time to receive objections and file a noticed motion for final approval.

4.      At that time, and upon review of the Parties' submission, the Court will determine the date for the final approval hearing, approve the final notice and direct that it be disseminated with the final hearing date and deadline for objections.

**V. CONCLUSION**

The Agreement ensures significant benefits for all members of the Class. The Parties respectfully urge the Court to approve the attached proposed order, providing preliminary approval for the Agreement and approval for the proposed notice form and notice plan.


Respectfully Submitted,

DATED: July 28, 2025

> DISABILITY RIGHTS ADVOCATES
> LEARNING RIGHTS LAW CENTER
> VANAMAN GERMAN LLP



> _____
> Shawna L. Parks
> Attorneys for Plaintiffs

DATED: July 28, 2025      GARCIA HERNÁNDEZ SAWNEY, LLP

> _____
> Lawrence S. Joe
> Attorneys for Defendants

Pursuant to L.R. 5-4.3.4(a)(2)(i) all signatories listed, and on whose behalf
the filing is submitted, concur in the filing's content and have authorized the filing.

By: _____

Attorneys for Plaintiffs

*J.R. v. Oxnard School District*, Motion for Preliminary Approval of Class Settlement

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5659 words which complies with the word limit of Local Rule 11-6.1.

DATED:  July 28, 2025

By:  Shawna L. Parks
Attorneys for Plaintiffs